## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MELISSA AND DANIEL WILLEY,** as | * | |
| Personal Representative of the Estate of | | |
| **JAELYNN WILLEY,** Deceased. | * | |
| 21514 Rominger Court | | |
| Lexington Park, MD 20653 | * | **Case No.** |
| | | |
| and | * | |
| | | |
| **MELISSA WILLEY** | * | |
| 21514 Rominger Court | | |
| Lexington Park, MD 20653 | * | **JURY TRIAL DEMANDED** |
| | | |
| and | * | |
| | | |
| **DANIEL WILLEY** | * | |
| 21514 Rominger Court | | |
| Lexington Park, MD 20653 | * | |
| | | |
| **Plaintiffs,** | * | |
| **vs.** | | |
| | * | |
| **BOARD OF EDUCATION OF ST.** | | |
| **MARY'S COUNTY** | * | |
| **SERVE ON:** Edmund W. Law, Esq. | | |
| 23160 Moakley Street, Suite 102 | * | |
| Leonardtown, Maryland 20650 | | |
| | * | |
| **Defendant.** | | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

Plaintiffs, Melissa and Daniel Willey, as Personal Representative of the Estate of Jaelynn Willey (hereinafter "Decedent"), Melissa Willey and Daniel Willey, by and through their attorneys, Lauren M. Geisser, Lauren M. Bell, and Gilman & Bedigian, LLC, Kathleen McClernan-Walz (pro hac vice to be submitted), and Williams, McClernan, & Stack LLC, hereby sue Board of Education of St. Mary's County (hereinafter "Defendant" or "St. Mary's BOE"), and state as follows:

## **INTRODUCTION**

This lawsuit is brought due to the unnecessary, tragic end to minor Jaelynn Willey's life on March 20, 2018.  For decades, school shootings have plagued our communities, the frequency of which is ever-increasing.[1]  Every year, in compliance with the law, children are sent to public schools by their parents, with an expectation that the school will undertake its duty and custody responsibilities seriously.  There is a contract and a commitment that when students are mandated to attend public schools, that the school will in turn appropriately and adequately care for its most precious resources – this nation's children.  Every year, schools fail to take this mandate and obligation seriously by failing to implement cost-effective and easy deterrent and protection devices to prevent school shootings.

In 2018, Great Mills High School educated students from the ninth through twelfth grades.  Jaelynn Willey was 15 years old and a sophomore in this school.  Prior to this subject incident, as more fully enumerated below, Great Mills High School knew that Austin Rollins, a fellow Great Mills High School student, was likely to commit an act of deadly violence against Jaelynn Willey.  In fact, less than twenty-four hours before the subject incident, a threat of mass violence at the school had been made.  Moreover, one month before this incident, another threat of mass violence at the school had been made.  Not only did Great Mills fail to protect Jaelynn Willey in any way, Great Mills High School made informed decisions and took steps which actively increased the danger to her and created new dangers Jaelynn had ability to abate.  As a result of Great Mills High's conduct, Jaelynn Willey was shot and killed by a fellow student on March 20, 2018.  Instead of creating this danger, Great Mills High School could have prevented this tragedy.

---

[1] https://www.cnn.com/interactive/2019/07/us/ten-years-of-school-shootings-trnd/ (stating since 2009, 177 of America's schools experienced a shooting , that 114 people were killed and 242 were injured in school shootings, and that school shootings are increasing).

## JURISDICTION AND VENUE

1.      Subject matter jurisdiction is invoked pursuant to 42 U.S.C. § 1983. The Court also has subject matter jurisdiction over Plaintiffs' federal civil rights claims pursuant to 28 U.S.C. §§ 1331, 1367, and 1343. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2.      Venue is properly set in this Court pursuant to 28 U.S.C. §1391. The causes of action alleged herein arose from occurrences at Great Mills High School in St. Mary's County, Maryland. Defendant is located in this judicial district. Plaintiffs reside in St. Mary's County, Maryland, located in this judicial district.

3.      This Court has personal jurisdiction over the parties and these actions.

## PARTIES

4.      The facts and allegations of Paragraphs 1 through 3 are incorporated by reference.

5.      Plaintiff, Melissa and Daniel Willey, as Personal Representative of the Estate of Jaelynn Willey, ("Mr. and Mrs. Willey "), at all times relevant to the allegations of this Complaint, was/is a resident of the St. Mary's County, Maryland.

6.      Plaintiff, Melissa Willey ("Mrs. Willey"), at all times relevant to the allegations of this Complaint, was/is a resident of St. Mary's County, Maryland.

7.      Plaintiff, Daniel Willey, at all times relevant to the allegations of this Complaint, was/is a resident of St. Mary's County, Maryland.  At all relevant times herein, Mr. Willey and Mrs. Willey were/are married.

8.      Defendant Board of Education of St. Mary's County is a body politic and corporate and may sue and be sued, pursuant to Md. Code Ann., Educ. §3-104.   Defendant's administrative office is located in St. Mary's County, Maryland.   Defendant Board of Education of St. Mary's County controls is subjects to intensive supervision by the State Board of Education in virtually

every aspect of its operations, which in turn affects the educational policy and administration of the entire public school system; yet, each county board is charged with maintaining and improving the local education system and "shall seek in every way to promote the interest of the schools in St. Mary's County". Md. Code Ann., Educ. § 4–101.

9.      Defendant Board of Education of St. Mary's County operates, manages, runs, and/or supervises Great Mills High School.

10.     Defendant is responsible for the operation, management, budgeting, and all other aspects of the St. Mary's County school system, including Great Mills High School.

## FACTS

11.     The facts and allegations of Paragraphs 1 through 10 are incorporated by reference.

12.     At Great Mills High School, the school promises that it "continually plans and prepares for events that would necessitate an emergency response" and that "students should be able to enjoy a school environment free from all forms of discrimination, including bullying, harassment, and sexual harassment."

13.     At all times prior to this incident, and relevant hereto, upon information and belief, Great Mills High School knew that it needed to employ safety vestibules, as well as metal detector devices and surveillance devices, among other safety protocols, to prevent and deter active shooter situations, as well as harassment of its students, and chose not to use them.

14.     At all times relevant hereto, Great Mills High School employees, agents, and actors, had an obligation to "promptly report all acts of violations of the law" to the school administrator such that existing laws and school policies can be enforced.

15.     At all times relevant hereto, "students in school, at school-sponsored activities, or traveling to and from school on school buses are the responsibility of the school, and school

personnel" assigned to them act in a "*loco parentis*" capacity, such that it must take measures to ensure "the safety and well-being of its students".

16.     At all times relevant hereto, minor Decedent, Jaelynn Willey, was a student in good standing at Great Mills High School and was a member of 10th grade.

17.     High school was compulsory in the state of Maryland for all St. Mary's County residents ages five (5) years or older to under the age of eighteen (18), including Jaelynn Willey, on March 20, 2018.

18.     Beginning in 2017, Decedent entered into a romantic relationship with fellow Great Mills High School student, Austin Rollins (hereinafter "Rollins").

19.     The relationship quickly soured due to, *inter alia*, Rollins physically and verbally pressuring Decedent to engage in behaviors, believed to be sexual in nature, that she did not want to participate in.

20.     At all times relevant hereto, Decedent was a member of the school's swim team.

21.     Upon information and belief, on a daily basis, Rollins would text, harass, and send social media requests to the Decedent during, before, and after school.

22.     Additionally, Rollins would frequently text, harass, and send social media requests to the Decedent's friends and social acquaintances to harass them.

23.     Rollins was physically abusive to Decedent in school.

24.     Rollins would grab, push, and yell at Decedent at school directly outside of classrooms during school hours on a repeated basis.  Rollins' actions were specifically observed by all around Decedent, including but not limited to, school personnel.

25.     Rollins would stalk Decedent around school, waiting for her directly outside of classrooms on a repeated basis.   Rollins' actions were specifically observed by all around Decedent, including but not limited to, school personnel.

26.     Repeatedly, Rollins would follow Decedent after school to the vehicle she would depart school in, despite Decedent not welcoming this. Rollins' actions were specifically observed by all around Decedent, including but not limited to, school personnel.

27.     Rollins would frequently grab Decedent by the wrists, in school, causing her excruciating pain.  Rollins' actions were specifically observed by all around Decedent, including but not limited to, school personnel.

28.     Decedent was repeatedly subjected to a series of threats, acts of intimidation, and physical assaults and attacks by Rollins.

29.     Defendant's employees were aware of the above mentioned incidents.

30.     In the months leading up to this incident, Decedent's parents warned the school by way of directly advising the school's swim coach that they were concerned about their daughter's well-being specifically directed to Rollins.

31.     As a result of the parents advising the swim coach, nothing was done nor escalated by the school.

32.     A threat of a shooter at the school was made on February 20, 2018, less than one month before Jaelynn Willey was shot and murdered on the school campus by Rollins.

33.     Upon information and belief, Defendant added additional security for the day of February 20, 2018 only.

34.     A threat of an incident of mass violence was also made less than 24 hours before Jaelynn Willey was shot and murdered on the school campus by Rollins.

35.     Upon information and belief, despite Rollins physically attacking a fellow student on several occasions, and otherwise threatening multiple students on several occasions, Great Mills High School did nothing to prevent the death of Decedent.

36.     Great Mills High School, upon information and belief, had metal detecting wands at its disposal, which it chose not to use, which would have prevented this incident.

37.     Great Mills High School, upon information and belief, had safety vestibules that it chose not to engage which would have prevented this incident.

38.     Great Mills High School, upon information and belief, had limited surveillance cameras that it chose not to watch nor pay attention to that would have prevented this incident, and otherwise failed to engage additional surveillance that it knew would have prevented and deterred such an incident.

39.     Defendant assumed the security obligation of surveilling and protecting the school and had measures, security equipment, and minimally burdensome options to surveil, protect, secure, and metal detect if necessary, and yet Defendant chose not to do so.

40.     Great Mills High School, upon information and belief, had actual knowledge that Rollins was a threat to Decedent and chose not to escalate the information or take the information seriously and, as a direct result, was a cause of this incident.

41.     Defendant has a school resource officer who was present at the school on the date of the shooting.

42.     On or about March 20, 2018, Rollins entered Great Mills High School with a 9mm handgun, proceeded all the way to hallway F, and shot Jaelynn in the head outside classroom F06.

43.     Desmond Barnes, another student who was located in that same hallway, was hit in the leg with the bullet that had hit and exited Jaelynn.

44.     Rollins was able to continue to walk around the school with the gun showing until he was confronted by a Deputy of the St. Mary's County Sheriff's Office assigned as a School Resource Officer in Hallway D near rooms D01 and D02.

45.     Upon information and belief, the School Resource Officer, got to Rollins long after he entered the school and after the shooting on March 20, 2018.

46.      Defendant is liable for injuries caused by the act and/or omission of its employees, agents, and/or servants acting within scope of their position.

## COUNT I
## Federal Civil Rights Violations 42 U.S.C. § 1983
## (Special Relationship)

47.     The facts and allegations of Paragraphs 1 through 46 are incorporated by reference.

48.     Decedent's freedom to act on her own behalf or the Plaintiffs' to act on her behalf to protect Decedent from Rollins was restricted by Defendant insomuch that only course of action was through school agents.

49.     Decedent had no freedom to act on her own behalf to ensure her safety while at school during school hours as mandated by Maryland law.

50.     At all times relevant and material hereto, Defendant had a duty to train and supervise any and all employees of Defendant, and further to establish and enforce rules concerning reasonable supervision for the protection of students, including the Decedent; and to provide sufficient and adequately trained personnel to facilitate the safety of the student.

51.      At all relevant and material times, Defendant had a duty to act reasonably to protect students who are in its care, custody and control by supervising and exercising control over its pupils with reasonable care so as to prevent harm to others, including the Decedent. Further, the

Defendant and its agents as employees, in their official and individual capacities, had the actual ability and authority to do.

52.     At Great Mills High School the school promises that it "continually plans and prepares for events that would necessitate an emergency response" and that "students should be able to enjoy a school environment free from all forms of discrimination, including bullying, harassment, and sexual harassment."

53.     At all times prior to this incident, and relevant hereto, upon information and belief, Great Mills High School knew that it needed to employ safety vestibules, as well as metal detector devices and surveillance devices, among other safety protocols, to prevent and deter active shooter situations, as well as harassment of its students, and chose not to use them.

54.     At all times relevant hereto, Great Mills High School employees, agents, and actors, had an obligation to "promptly report all acts of violations of the law" to the school administrator such that existing laws and school policies can be enforced.

55.     At all times relevant hereto, "students in school, at school-sponsored activities, or traveling to and from school on school buses are the responsibility of the school, and school personnel" assigned to them act in a "*loco parentis*" capacity, such that they must take measures to ensure "the safety and well-being of its students".

56.     At all times relevant hereto, minor Decedent, Jaelynn Willey, was a student in good standing at Great Mills High School and was a member of the 10th grade.

57.     High school was compulsory in the state of Maryland for all St. Mary's residents ages over five (5) and under eighteen (18) years old, including Jaelynn Willey on March 20, 2018.

58.     Plaintiffs nor Decedent had no legal or other authority to protect Decedent while on school grounds during the course of the school day.

59.     Plaintiff and Decedent were restricted and forced to rely on the Defendant to undertake this task.

60.     Defendant operates, supervises, and is otherwise responsible for Great Mills High School.

61.     Defendant knew and/or should have known of Rollins' dangerous behavior.

62.     Rollins' murderous actions were foreseeable to Defendant.

63.     Defendant acted in contravention to its mandate and frustrated the interests of Great Mills High School.

64.     Defendant decisively acted in contravention to its own policies, thereby increasing and/or creating the danger to Decedent posed by Rollins.

65.     From Fall 2005 through March 20, 2018, Jaelynn Willey occupied a special relationship with Defendant.

66.     Said special relationship results from the Minor Decedent being of school age and thus compelled by state law to attend said school. Defendant's restrictive custody of Decedent while in mandatory school attendance, combined with the Defendant's *loco parentis* status, handbook, guidelines, policies and procedures for protecting students, and knowledge and awareness that Rollins was a danger to Willey and other students.

67.     Defendant thus had a mandate, duty, and obligation to protect the Decedent from harm by Rollins, and to prevent Rollins from having harmful contact with the Decedent while the students were at school or attending school-related activities.

68.      Despite occupying said special relationship with the minor Decedent, the Defendant failed to prevent Rollins from contacting, harassing, injuring, and killing Decedent, and failed to protect her from the harmful acts of Rollins in general, and in the following particulars:

a.  The Defendant failed to protect the minor Decedent from bodily harm;

b.  The Defendant's actions, created the danger and risk of bodily harm to Decedent;

c.  The Defendant failed to protect the minor Decedent from threats of bodily harm;

d.  The Defendant's actions increased the danger and risk of bodily harm to Decedent;

e.  The Defendant failed to protect the minor Decedent from acts of intimidation;

f.  The Defendant's actions increased the danger and risk of acts of intimidation;

g.  Defendant failed to monitor the administrators who the School knew or should have known lacked the administrative skill and judgment to protect the minor Decedent;

h.  The Defendant failed to identify and to take remedial or disciplinary action against the administrators who were charged with the responsibility of protecting the safety of the minor Decedent;

i.  The Defendant failed to investigate the allegations of misconduct concerning Rollins, and to impose disciplinary and other remedial measures when its administrators were found to have violated established procedures and practices;

j.  The Defendant by and through it agents, servants, and/or employees failed to follow established policies, procedures, directives and instructions regarding the protection of students;

k.  The Defendant failed to properly sanction or discipline the School employees and all its administrators and other employees who were aware of and concealed and/or aided and abetted the violations of constitutional rights of the minor Decedent, thereby and causing and encouraging said administrators and employees to violate the rights of the students in general and the minor Decedent in particular.

WHEREFORE, Plaintiffs sue Defendant and demand judgment against Defendant for all damages recoverable under the laws of the United States and further demands a trial by jury on all issues so triable as of right by a jury.

## COUNT II
### Federal Civil Rights Violations 42 U.S.C. § 1983
### (State-Created Danger)

69.    The facts and allegations of Paragraphs 1 through 68 are incorporated by reference.

70.     The Defendant acted to place the Decedent in a dangerous position, increased the danger to Decedent and/or acted with willful disregard for the safety of the Decedent, which danger and lack of safety was foreseeable to the Defendant.

71.    The Defendant acted to permit Rollins to attend school and/or to return to school following his dangerous, violent, and harassing behavior to Decedent and other peers when the Defendant knew or in the exercise of reasonable care should have known that Rollins would continue his attacks and would increase and/or escalate his violence toward Decedent.

72.     The Defendant acted to permit Rollins to remain in school after he had acted in violation of the School Disciplinary Code, which mandates long-term suspension and/or expulsion.

73.     The Defendant acted to permit Rollins to return to school and to have contact with Decedent despite warnings and knowledge of Rollins' behavior.

74.     The Defendant, through its employees and agents, created the opportunity for harm which would otherwise not have existed.

75.     The Defendant, through its employees and agents, increased the opportunity for harm and danger which would otherwise not have existed.

76.     By the actions set forth in the paragraphs above, the Defendant deprived the Decedent of rights secured by the Fourteenth Amendment to the United States Constitution, and by a violation of 42 U.S.C. Section 1983.

77.     As a direct and proximate result of all of Defendant's conduct committed under color of state and federal law, the Decedent was deprived of her right to be free from threats of bodily harm, actual physical assaults and attacks, intimidation, harassment remarks, death, and other physical, psychological and emotional harm as set forth herein.

78.     In addition, the Decedent was deprived of her right to a free and appropriate public education as guaranteed to her under Maryland law.

79.     The minor Decedent suffered and lost her life in violation of her rights under the Constitution of the United States, in particular the Fourteenth Amendment thereof, and 42 U.S.C. §1983.

80.     As a direct and proximate result of the acts of Defendant, the minor Decedent sustained pain, suffering, physical injuries, emotional harm, loss of liberty, and death.

81.     Plaintiffs sustained financial losses and expenses as a result of the denial of a free and appropriate public education as guaranteed the decedent under the laws of the Maryland law, all to their detriment and harm.

82.     By taking affirmative action to create and/or increase danger and harm toward Decedent of the threats, physical assaults, attacks by one or more of its students, and ultimate death, Defendant acted with deliberate indifference to the rights and personal safety of the Decedent and disregarded a substantial risk of harm to the Decedent, namely that the decedent would be threatened, intimidated, physically assaulted, attacked, and ultimately murdered on school grounds during school hours by a fellow student.

83.     The injuries suffered by the Decedent and Plaintiffs were the foreseeable result of the deliberate indifference of the Defendant, through its agents, employees, and/or servants as set forth above, which constitutes a state-created danger that caused or was a substantial factor in causing and/or increasing the danger to Decedent to be deprived of her constitutional right to personal protection to which she is entitled under 42 U.S.C. Section 1983.

84.     The Defendant's action of mandating that Decedent continue to attend school when it was not safe to do so increased the danger to Decedent and rendered her more vulnerable, resulting in her death.

85.     The Defendant's actions increased and/or created the danger to Decedent which directly resulted in her harm and ultimate untimely death.

WHEREFORE, Plaintiffs sue Defendant and demand judgment against Defendant for all damages recoverable under the laws of the United States and further demands a trial by jury on all issues so triable as of right by a jury.

## COUNT III
## Federal Civil Rights Violations 42 U.S.C. § 1983
### (Arbitrary Or Conscience-Shocking Conduct)

86.     The facts and allegations of Paragraphs 1 through 85 are incorporated by reference.

87.     A state or local official is liable under 42 U.S.C. § 1983 if the acts that perpetrated a violation of a person's rights were arbitrary or conscience shocking.

88.     At all times relevant, Decedent had a clearly established right to liberty, including her rights to personal safety and bodily integrity pursuant to the Fourth Amendment to the United States Constitution.

89.     Decedent was seized in that she suffered harm, physical and/or emotional, by being shot at and ultimately murdered.

90.     Decedent was seized in that she was on school premises during school hours as mandated by Maryland law.

91.     At all times relevant to this complaint, Defendant's employees, servants, and/or agents acting under the color of law, had a duty to perform their jobs and obey the laws of Maryland and the United States.

92.     At all times prior to this incident, and relevant hereto, upon information and belief, Great Mills High School knew that it needed to employ safety vestibules, as well as metal detector devices and surveillance devices, among other safety protocols, to prevent and deter active shooter situations, as well as harassment of its students, and chose not to use them.

93.     At all times relevant hereto, Great Mills High School employees, agents, and actors, had an obligation to "promptly report all acts of violations of the law" to the school administrator such that existing laws and school policies can be enforced.

94.     At all times relevant hereto, "students in school, at school-sponsored activities, or traveling to and from school on school buses are the responsibility of the school, and school personnel" assigned to them act in a "*loco parentis*" capacity, such that they must take measures to ensure "the safety and well-being of its students".

95.     Great Mills High School, upon information and belief, had metal detecting wands at its disposal which it chose not to use which would have prevented this incident.

96.     Great Mills High School, upon information and belief, had safety vestibules that it chose not to engage which would have prevented this incident.

97.     Great Mills High School, upon information and belief, had limited surveillance cameras that it chose not to watch or pay attention to that would have prevented this incident, and otherwise failed to engage additional surveillance that it knew would have prevented and deterred such an incident.

98.     Great Mills High School, upon information and belief, had actual knowledge that Rollins was a threat to Decedent and chose not to escalate the information or take the information seriously, and as a direct result, was a cause of this incident.

99.     Upon information and belief, on a daily basis, Rollins would text, harass, and send social media requests to the Decedent during, before, and after school.

100.     Additionally, Rollins would frequently text, harass, and send social media requests to the Decedent's friends and social acquaintances to harass them.

101.     Rollins was physically abusive to Decedent in school.

102.     Rollins would grab, push, and yell at Decedent at school directly outside of classrooms during school hours on a repeated basis.  Rollins' actions were specifically observed by all around Decedent, including but not limited to, school personnel.

103.    Rollins would stalk Decedent around school, waiting for her directly outside of classrooms on a repeated basis.   Rollins' actions were specifically observed by all around Decedent, including but not limited to, school personnel.

104.    Repeatedly, Rollins would follow Decedent after school to the vehicle she would depart school in, despite Decedent not welcoming this. Rollins' actions were specifically observed by all around Decedent, including but not limited to, school personnel.

105.    Rollins would frequently grab Decedent by the wrists, in school, causing her excruciating pain.   Rollins' actions were specifically observed by all around Decedent, including but not limited to, school personnel.

106.    Decedent was repeatedly subjected to a series of threats, acts of intimidation, and physical assaults and attacks by Rollins.

107.    Defendant's employees were aware of the above mentioned incidents.

108.    In the months leading up to this incident, Decedent's parents warned the school by way of directly advising the school's swim coach that they were concerned about their daughter's well-being specifically directed to Rollins.

109.    As a result of the parents advising the swim coach, nothing was done nor escalated by the school.

110.    A threat of a shooter at the school was made on February 20, 2018, less than one month before Jaelynn Willey was shot and murdered on school campus by Rollins.

111.    A threat of an incident of mass violence was also made less than 24 hours before Jaelynn Willey was shot and murdered on school campus by Rollins.

112.    Upon information and belief, despite Rollins physically attacking a fellow student on several occasions, and otherwise threatening multiple students on several occasions, Great Mills High School did nothing to prevent the death of Decedent.

113.    Defendant's actions were arbitrary and/or conscience-shocking.

114.    Defendant's failure to detain and/or stop and/or engage with a known and recognized threat inside of a public high school shocks the conscience.

115.    Defendant's actions of not implementing security measures, devices, and/or metal detecting wands at its disposal despite the threats is conscious-shocking and arbitrary.

116.    Defendant's apathetic approach to dealing with known threats, instead of taking safety-measures where school shooting threats had recently been made, were arbitrary and conscience-shocking.

117.    Defendant, through its policymaker and decision-makers, enacted policies, both in the form of actual policy, and in the form of woefully inadequate training, that demonstrated deliberate indifference to the rights of Decedent and that deliberate indifference caused the death of Decedent.

118.    Defendant's actions and/or inactions were directly related to and a proximate cause of the death and injuries sustained by the Decedent and Plaintiffs.

119.    As a result of Defendant's actions and/or inactions, Decedent was murdered and Plaintiffs were injured and seek compensatory and punitive damages in addition to reasonable attorney's fees.

WHEREFORE, Plaintiffs sue Defendant and demand judgment against Defendant for all damages recoverable under the laws of the United States and further demands a trial by jury on all issues so triable as of right by a jury.

## COUNT IV
### (Negligence)

120.    The facts and allegations of Paragraphs 1 through 119 are incorporated by reference.

121.    Defendant is responsible for the operation, management, budgeting, and all other aspects of the St. Mary's County school system, including Great Mills High School.

122.    Defendant has a special relationship with students which gives rise to a duty of care.

123.    At all times relevant and material hereto, Defendant had a duty to train and supervise any and all employees of Defendant, and further to establish and enforce rules concerning reasonable supervision for the protection of students, including the Decedent; and to provide sufficient and adequately trained personnel to facilitate the safety of the students.

124.    At all relevant and material times, Defendant had a duty to act reasonably to protect students who are in its care, custody and control by supervising and exercising control over its pupils with reasonable care so as to prevent harm to others, including the plaintiff. Further, the Defendant and its agents as employees, in their official and individual capacities, had the actual ability and authority to do so.

125.    At all times relevant, Defendant through its agents, servants, and/or employees, owed a duty to its students and invitees, to exercise reasonable and ordinary care to maintain its premises, including Great Mills High School, in a condition reasonably safe for use by its students, including Decedent.

126.    The duty of care owed by the Defendant and school personnel incudes the duty to use reasonable measures to protect students from known threats of harm and foreseeable acts of violence.

127.    Furthermore, public school teachers and principals have a statutory duty to supervise students on school grounds.

128.    This duty to supervise includes enforcing the rules and regulations necessary for the protection of students.

129.    High school students who are statutorily-mandated to attend school have a right to a safe campus.

130.    School districts have an affirmative duty to devise and implement plans to address the threat of school crime.

131.    Defendant had a duty to take such precautions as were reasonably necessary to protect its students from reasonably foreseeable criminal attacks on school premises.

132.    Defendant knew or should have known a criminal attack was likely to occur.

133.    Prior to the incident, Defendant was aware of shooting threats, was warned specifically of Rollins' violent behavior, and/or had witnessed Rollins' violent behavior on and outside of school property.

134.    Despite Rollins' history of threats, warnings, and violent behavior, of which Defendant knew or should have known, Defendant failed to take reasonable measures to address the foreseeable risk that Rollins posed to students and others on the subject premises, including Decedent.

135.    At all times material, Defendant, through its agents, servants, and/or employees, knew or in the exercise of reasonable care should have known that there had been numerous criminal acts and attacks perpetrated on students and employees at numerous high schools, middle schools, and other schools throughout the United States, and that further criminal acts and attacks

were reasonably likely to be perpetrated on the Defendant's students, unless the Defendant took reasonable steps to provide proper security for such individuals.

136.     Specifically, Defendant knew of school shooting threats prior to the incident and knew or should have known of student Rollins' violent behavior.

137.     The Defendant, through its agents, servants and/or employees, was in an exclusively superior position to students such as Decedent, to take the measures necessary to provide for security on school premises.

138.     Defendant had the measures to provide for security on school premises but did not implement them.

139.     At the above mentioned time and place, Defendant, by and through its agents, servants, and/or employees, breached its duty to exercise ordinary and reasonable care for the safety and protection of the students, including Decedent, through the following acts of omission or commission:

a.  Failing to provide adequate security for its students, employees, licensees, and invitees, including Decedent;

b.  Failing to warn its students, parents of students, employees, licensees, and invitees, including Decedent, of the nature and character of the threat posed by Rollins, when it knew or in the exercise of reasonable care should have known that Rollins had a significant history of violence, making threats of violence, including threats of violence involving the use of firearms, at school;

c.  Failing to warn its students, parents of students, employees, licensees, and invitees, including Decedent, of the nature and character of the threat of a school shooting, when it knew or in the exercise of reasonable care should have known that there

were recent school shooting threats made;

d. Failing to adequately police, patrol, guard, deter, and otherwise provide reasonable protection for its students, employees, licensees, and invitees, when Defendant knew or should have known of foreseeable criminal acts;

e. Failing to reasonably hire and/or retain and/or supervise adequate security personnel to patrol and/or monitor the premises of Great Mills High School, thereby protecting its students, employees, licensees, and invitees, including Decedent;

f. Failing to have proper procedures in place for hiring, training, and/or supervising school resource officers, monitors, police officers, or other staff responsible for school security;

g. Failing to install and use security measures such as metal detectors, wands, and other security features;

h. Failing to have a sufficient number of security guards in visible areas to deter crime, thereby protecting its students, employees, licensees, and invitees, including Decedent;

i. Failing to have adequate mechanisms for security personnel, staff, employees, students and others within the school community to report real threats or other security concerns against themselves or others;

j. Failing to properly train employees, administrators, guards, and/or other employees to adequately supervise the campus in such a way that would prevent acts of violence;

k. Failing to implement or follow adequate security policies, security measures, and security procedures necessary to protect Decedent and other students, employees,

licensees, and invitees;

l.  Failing to take additional security measures after being put on notice that the security measures in force were inadequate;

m.  Failing to adequately provide an overall security plan that would meet the known industry standards and customs for safety in schools;

n.  Failing to adequately screen or monitor those entering the premises for the possession of weapons;

o.  Failing to implement reasonable crime prevention through environmental design concepts which would have hardened Great Mills High School against foreseeable violent crime such as the subject incident;

p.  Acting or failing to act consistently with the relevant policies, procedures, guidelines, and training relating to the protection of human life that were in effect at the time of the shooting.

140.   At the above mentioned time and place, Defendant, by and through its agents, servants, and/or employees, breached its duty to exercise ordinary and reasonable care for the safety and protection of the students, including Decedent, through the following acts of omission or commission:

a.  To train and supervise any and all employees to maintain student safety, including to prevent student-on-student assaults and bullying;

b.  To establish and enforce rules concerning reasonable supervision for the protection of the students;

c.   To use reasonable care to supervise and control the classrooms and students in order to prevent the students from being assaulted;

d.   To take precautions against creating unreasonable risks of injury to other persons and students;

e.   To maintain good order and discipline in the classroom and on school grounds;

f.   To investigate complaints from students, parents of students, and others;

g.   To take proper and reasonable precautions to provide protection for students when there is a reported risk to students on school grounds;

h.   To provide reasonable monitoring of areas outside of the classroom including but not limited to the hallways, bathrooms, gymnasiums, offices, and other school property; and

i.   To properly and reasonably respond to assaults and attacks on students including, but no limited to, proper investigation, separation, protection, and reporting of attacks and assaults.

141.   As a direct and proximate result of the negligence of Defendant, Decedent suffered bodily harm on March 20, 2018 from an assault and battery on the subject school premises which caused her death, and her personal representative and survivors have suffered and will continue to suffer damages into the future, including as the applicable law may provide:

a.   Past and future mental pain and suffering of Plaintiffs;

b.   Past and future loss of Decedent's support and services;

c.   The prospective net accumulations of the estate of Decedent;

d.   The expense of medical care and funeral arrangements due to the death Jaelynn Willey; and

e.   Any and all other damages which the applicable law allows.

WHEREFORE, Plaintiffs sue Defendant and demand judgment against Defendant for all

damages recoverable under the laws of Maryland and the United States and further demands a trial by jury on all issues so triable as of right by a jury.

## COUNT V
### (Premises Liability)

142.    The facts and allegations of Paragraphs 1 through 141 are incorporated by reference.

143.    Defendant is responsible for the operation, management, budgeting, and all other aspects of the St. Mary's County school system, including Great Mills High School.

144.    Defendant has a special relationship with students which gives rise to a duty of care.

145.    At all times relevant and material hereto, Defendant had a duty to train and supervise any and all employees of Defendant, and further to establish and enforce rules concerning reasonable supervision for the protection of students, including the Decedent; and to provide sufficient and adequately trained personnel to facilitate the safety of the students.

146.    At all relevant and material times, Defendant had a duty to act reasonably to protect students who are in its care, custody and control by supervising and exercising control over its pupils with reasonable care so as to prevent harm to others, including the plaintiff. Further, the Defendant and its agents as employees, in their official and individual capacities, had the actual ability and authority to do.

147.    At all times relevant, Defendant through its agents, servants, and/or employees, owed a duty to its students and invitees, to exercise reasonable and ordinary care to maintain its premises, including Great Mills High School, in a condition reasonably safe for use by its students, including Decedent.

148.    The duty of care owed by the Defendant and school personnel incudes the duty to use reasonable measures to protect students from known threats of harm and foreseeable acts of violence.

149.    Furthermore, public school teachers and principals have a statutory duty to supervise students on school grounds.

150.    This duty to supervise includes enforcing the rules and regulations necessary for the protection of students.

151.    High school students who are statutorily-mandated to attend school, have a right to a safe campus.

152.    School districts have an affirmative duty to devise and implement plans to address the threat of school crime.

153.    Defendant had a duty to take such precautions as were reasonably necessary to protect its students from reasonably foreseeable criminal attacks on school premises.

154.    Defendant knew or should have known a criminal attack was likely to occur.

155.    Prior to the incident, Defendant was aware of shooting threats, was warned specifically of Rollins' violent behavior, and/or had witnessed Rollins' violent behavior on and outside of school property.

156.    Despite Rollins' history of threats, warnings, and violent behavior, of which Defendant knew or should have known, Defendant failed to take reasonable measures to address the foreseeable risk that Rollins posed to students and others on the subject premises, including Decedent.

157.    At all times material, Defendant, through its agents, servants, and/or employees, knew or in the exercise of reasonable care should have known, that there had been numerous

criminal acts and attacks perpetrated on students and employees at numerous high schools, middle schools, and other schools throughout the United States, and that further criminal acts and attacks were reasonably likely to be perpetrated on the Defendant's students, unless the Defendant took reasonable steps to provide proper security for such individuals.

158.    Specifically, Defendant knew of school shooting threats prior to the incident and knew or should have known of student Rollins' violent behavior.

159.    The Defendant, through its agents, servants, and/or employees, was in an exclusively superior position to students such as Decedent, to take the measures necessary to provide for security on school premises.

160.    Defendant had the measures to provide for security on school premises but did not implement them.

161.    At the above mentioned time and place, Defendant, by and through its agents, servants and/or employees, breached its duty to exercise ordinary and reasonable care for the safety and protection of the students, including Decedent, through the following acts of omission or commission:

     a.   Failing to provide adequate security for its students, employees, licensees, and invitees, including Decedent;

     b.   Failing to warn its students, parents of students, employees, licensees, and invitees, including Decedent, of the nature and character of the threat posed by Rollins, when it knew or in the exercise of reasonable care should have known that Rollins had a significant history of violence, making threats of violence, including threats of violence involving the use of firearms, at school;

     c.   Failing to warn its students, parents of students, employees, licensees, and invitees,

including Decedent, of the nature and character of the threat of a school shooting, when it knew or in the exercise of reasonable care should have known that there were recent school shooting threats made;

d.  Failing to adequately police, patrol, guard, deter, and otherwise provide reasonable protection for its students, employees, licensees, and invitees, when Defendant knew or should have known of foreseeable criminal acts;

e.  Failing to reasonably hire and/or retain and/or supervise adequate security personnel to patrol and/or monitor the premises of Great Mills High School, thereby protecting its students, employees, licensees, and invitees, including Decedent;

f.  Failing to have proper procedures in place for hiring, training, and/or supervising school resource officers, monitors, police officers, or other staff responsible for school security;

g.  Failing to install and use security measures such as metal detectors, wands, and other security features;

h.  Failing to have a sufficient number of security guards in visible areas to deter crime, thereby protecting its students, employees, licensees, and invitees, including Decedent;

i.  Failing to have adequate mechanisms for security personnel, staff, employees, students and others within the school community to report real threats or other security concerns against themselves or others;

j.  Failing to properly train employees, administrators, guards, and/or other employees to adequately supervise the campus in such a way that would prevent acts of violence;

    k.  Failing to implement or follow adequate security policies, security measures, and security procedures necessary to protect Decedent and other students, employees, licensees, and invitees;

    l.  Failing to take additional security measures after being put on notice that the security measures in force were inadequate;

    m.  Failing to adequately provide an overall security plan that would meet the known industry standards and customs for safety in schools;

    n.  Failing to adequately screen or monitor those entering the premises for the possession of weapons;

    o.  Failing to implement reasonable crime prevention through environmental design concepts which would have hardened Great Mills High School against foreseeable violent crime such as the subject incident;

    p.  Acting or failing to act consistently with the relevant policies, procedures, guidelines, and training relating to the protection of human life that were in effect at the time of the shooting.

162.    At the above mentioned time and place, Defendant, by and through its agents, servants and/or employees, breached its duty to exercise ordinary and reasonable care for the safety and protection of the students, including Decedent, through the following acts of omission or commission:

    a.  To train and supervise any and all employees to maintain student safety, including to prevent student-on-student assaults and bullying;

    b.  To establish and enforce rules concerning reasonable supervision for the protection of the students;

c.   To use reasonable care to supervise and control the classrooms and students in order to prevent the students from being assaulted;

d.   To take precautions against creating unreasonable risks of injury to other persons and students;

e.   To maintain good order and discipline in the classroom and on school grounds;

f.   To investigate complaints from students, parents of students and others;

g.   To take proper and reasonable precautions to provide protection for students when there is a reported risk to students on school grounds;

h.   To provide reasonable monitoring of areas outside of the classroom including but not limited to the hallways, bathrooms, gymnasiums, offices and other school property; and

i.   To properly and reasonably respond to assaults and attacks on students including, but no limited to, proper investigation, separation, protection and reporting of attacks and assaults.

163.    As a direct and proximate result of the negligence of Defendant, Decedent suffered bodily harm on March 20, 2018 from an assault and battery on the subject school premises which caused her death, and her personal representative and survivors have suffered and will continue to suffer damages into the future, including as the applicable law may provide:

a.   Past and future mental pain and suffering of Plaintiffs;

b.   Past and future loss of Decedent's support and services;

c.   The prospective net accumulations of the estate of Decedent;

d.   The expense of medical care and funeral arrangements due to the death Jaelynn Willey; and

    e.   Any and all other damages which the applicable law allows.

WHEREFORE, Plaintiffs sue Defendant and demand judgment against Defendant for all damages recoverable under the laws of Maryland and the United States and further demands a trial by jury on all issues so triable as of right by a jury.

**COUNT VI**
**(Wrongful Death)**

164.    The facts and allegations of Paragraphs 1 through 163 are incorporated by reference.

165.    This claim for damages results from the wrongful death of Jaelynn Willey. This claim is based upon the facts and legal theories more fully set out herein.

166.    At the time of death, the decedent was otherwise in reasonably good health with a normal life expectancy.

167.    The decedent was a loving and dutiful child and provided reasonable services to her parents.

168.    As a direct and proximate result of the above-mentioned actions of Defendant, individually through its actual and/or apparent agents, servants, and employees, Plaintiffs lost their daughter prematurely, and they suffered and will continue to suffer mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, guidance, attention, and care, among other non-economic damages permitted in a wrongful death action.

WHEREFORE, Plaintiffs bring this action against the Defendant and seek damages that will adequately and fairly compensate them, plus costs, interest and such other and further relief as may be deemed appropriate.  The damages sought are in excess of the required jurisdictional amount.

## COUNT VII
### (Survival Action)

169.    The facts and allegations of Paragraphs 1 through 168 are incorporated by reference.

170.    Melissa and Daniel Willey, as Personal Representatives of the Estate of Jaelynn Willey, by and through their undersigned attorneys, hereby sues the Defendant and the Estate's cause of action states as follows:

171.    Defendant's actions, by and through its agents, employees, and/or servants, owed Decedent a duty and breached that duty as laid out in the preceding paragraphs.

172.    As a direct and proximate result of the above-mentioned breaches by Defendant, Decedent was shot and murdered by a fellow student during school hours on school property.  As a further direct and proximate cause, Decedent suffered physical, mental, and emotional pain and suffering, fear, anxiety, and anguish prior to her death. She also incurred medical expenses, and her Estate has also incurred funeral bills.

WHEREFORE, Melissa and Daniel Willey, as Personal Representatives of the Estate of Jaelynn Willey, by and through their undersigned counsel, bring this action against the Defendant and seek damages that will adequately and fairly compensate the Estate, plus costs, interest and such other further relief as may be deemed appropriate.   The damages sought are in excess of the required jurisdictional amount.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment and prays for the following relief against Defendant:

a. Full and fair compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Reasonable attorney's fees and costs of this action;

d. interest, costs; and

e. Any such other relief as appears just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all triable issues, per Fed. R. Civ. P. 38(b).


GILMAN & BEDIGIAN, L.L.C.


*/s/ Lauren M. Geisser*
Lauren M. Geisser, 29190
Lauren M. Bell, 19540
GILMAN & BEDIGIAN, L.L.C.
1954 Greenspring Drive, Suite 250
Timonium, Maryland 21093
lgeisser@gbletalteam.com
lbell@gblegalteam.com
(410) 560-4999


*/s/ Kathleen McClernan*
Kathleen McClernan, Esquire
(pro hac vice to be submitted)
Williams, McClernan, & Stack LLC
P. O. Box 188
Leonardtown, Maryland 20650
Phone: 240-309-4179
kathleen@wmslawyers.com

*Attorneys for Plaintiffs*


## DEMAND FOR JURY TRIAL

Plaintiffs request a jury on all issues herein.


*/s/ Lauren M. Geisser*
Lauren M. Geisser