<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF MARYLAND</u>

| | | |
|---|---|---|
| **MELISSA AND DANIEL WILLEY,** as | \* | |
| Personal Representative of the Estate of | | |
| **JAELYNN WILLEY,** Deceased. | \* | |
| 21514 Rominger Court | | |
| Lexington Park, MD 20653 | \* | **Case No. 8:20-cv-161** |
| | | |
| and | \* | |
| | | |
| **MELISSA WILLEY** | \* | |
| 21514 Rominger Court | | |
| Lexington Park, MD 20653 | \* | **JURY TRIAL DEMANDED** |
| | | |
| and | \* | |
| | | |
| **DANIEL WILLEY** | \* | |
| 21514 Rominger Court | | |
| Lexington Park, MD 20653 | \* | |
| | | |
| **Plaintiffs,** | \* | |
| vs. | | |
| | \* | |
| **BOARD OF EDUCATION OF ST.** | | |
| **MARY'S COUNTY** | \* | |
| **SERVE ON:** Edmund W. Law, Esq. | | |
| 23160 Moakley Street, Suite 102 | \* | |
| Leonardtown, Maryland 20650 | | |
| | \* | |
| <u>and</u> | | |
| | \* | |
| <u>**BOARD OF COUNTY COMMISSIONERS**</u> | | |
| <u>**OF ST. MARY'S COUNTY**</u> | \* | |
| <u>**SERVE ON:** David A. Weiskopf, County</u> | | |
| <u>Attorney</u> | \* | |
| <u>41770 Baldridge Street</u> | | |
| <u>P.O. Box 653</u> | \* | |
| <u>Leonardtown, Maryland 20650</u> | | |
| | \* | |
| <u>and</u> | | |
| | \* | |
| | | |
| | \* | |
| | | |
| | \* | |

JAKE HEIBEL, PH.D., in his Official and
Individual Capacities as Principal of                    *
Great Mills High School
21130 Great Mills Rd                                     *
Great Mills, Maryland 20634
                                                         *
and
                                                         *
JAMES SCOTT SMITH, PH.D., in his
Official and Individual Capacities as                    *
Superintendent of Great Mills High School
23160 Moakley Street                                     *
Leonardtown, Maryland 20650
                                                         *
and
                                                         *
TROY KROLL, in his Official and
Individual Capacities as a Teacher and                   *
Coach of Great Mills High School
21130 Great Mills Rd                                     *
Great Mills, Maryland 20634
                                                         *
and
                                                         *
F. MICHAEL WYANT, in his Official and
Individual Capacities as a Chief of Safety               *
and Security of Great Mills High School
23160 Moakley St.                                        *
Leonardtown, Maryland 20650
                                                         *
and
                                                         *
BLAINE GASKILL, in his Official and
Individual Capacities as Deputy Sheriff                  *
and School Resource Officer
23150 Leonard Hall Drive                                 *
Leonardtown, Maryland 20650
                                                         *
and
                                                         *
KARIN BAILEY, in her Official and
Individual Capacities as                                 *
Board of Education Board Member
23160 Moakley St.                                        *
Leonardtown, Maryland 20650
                                                         *

2

and

CATHY ALLEN, in her Official and
Individual Capacities as
Board of Education Board Member
23160 Moakley St.
Leonardtown, Maryland 20650

and

MARY WASHINGTON, in her Official and
Individual Capacities as
Board of Education Board Member
23160 Moakley St.
Leonardtown, Maryland 20650

and

JAMES DAVIS, in his Official and
Individual Capacities as
Board of Education Board Member
23160 Moakley St.
Leonardtown, Maryland 20650

and

RITA WEAVER, in her Official and
Individual Capacities as
Board of Education Board Member
23160 Moakley St.
Leonardtown, Maryland 20650

and

JANE/JOHN DOES 1-10

Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SECOND AMENDED COMPLAINT

Plaintiffs, Melissa and Daniel Willey, as Personal Representative of the Estate of Jaelynn

Willey (hereinafter "Decedent"), Melissa Willey and Daniel Willey, by and through their

attorneys, Lauren M. Geisser, Lauren M. Bell, and Gilman & Bedigian, LLC, and Williams,

McClernan, & Stack LLC, hereby sue Board of Education of St. Mary's County (hereinafter

3

"Defendant BOE" or "St. Mary's BOE" or "School"). Board of Commissioners of St. Mary's County (hereinafter "Defendant County"); Jake Heibel, Ph.D. (hereinafter "Defendant Heibel"); James Scott Smith, Ph.D. (hereinafter "Defendant Smith"); Troy Kroll (hereinafter "Defendant Kroll"); F. Michael Wyant (hereinafter "Defendant Wyant"); Blaine Gaskill (hereinafter "Defendant Gaskill"); Karin Bailey (hereinafter "Defendant Bailey"); Cathy Allen (hereinafter "Defendant Allen"); Mary Washington (hereinafter "Defendant Washington"); James Davis (hereinafter "Defendant Davis"); and Rita Weaver (hereinafter "Defendant Weaver"); and Jane/John Does 1-10 (hereinafter "Individual Defendants") (hereinafter collectively "Defendants") and state as follows:

### INTRODUCTION

This lawsuit is brought due to the unnecessary, tragic end to minor Jaelynn Willey's life on March 20, 2018.  For decades, school shootings have plagued our communities, the frequency of which is ever-increasing.[1]  Every year, in compliance with the law, children are sent to public schools by their parents, with an expectation that the school will undertake its duty and custody responsibilities seriously.  There is a contract and a commitment that when students are mandated to attend public schools, that the school will in turn appropriately and adequately care for its most precious resources -- this nation's children.  Every year, schools fail to take this mandate and obligation seriously by failing to implement cost-effective and easy deterrent and protection devices to prevent school shootings.

In 2018, Great Mills High School educated students from the ninth through twelfth grades. Jaelynn Willey was 15 years old and a sophomore in this school.  Prior to this subject incident, as more fully enumerated below, upon information and belief, Great Mills High School

---

[1]  https://www.cnn.com/interactive/2019/07/us/ten-years-of-school-shootings-trnd/  (stating since 2009, 177 of America's schools experienced a shooting , that 114 people were killed and 242 were injured in school shootings, and that school shootings are increasing).

representatives, including the Defendants, knew that Austin Rollins, a fellow Great Mills High School student, was likely to commit an act of deadly violence against Jaelynn Willey.  In fact, less than twenty-four hours before the subject incident, a threat of mass violence at the school had been made.  Moreover, one month before this incident, another threat of mass violence at the school had been made.  Not only did Great Mills and the Defendants fail to protect Jaelynn Willey in any way, Great Mills High School and the Defendants made informed decisions and took steps which actively increased the danger to her and created new dangers Jaelynn had ability to abate.  As a result of Great Mills High's and the Defendants conduct, Jaelynn Willey was shot and killed by a fellow student on March 20, 2018.  Instead of creating this danger, Defendants could have prevented this tragedy.

> **Deleted:** Great Mills High School

### JURISDICTION AND VENUE

1.      Subject matter jurisdiction is invoked pursuant to 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). The Court also has subject matter jurisdiction over Plaintiffs' federal civil rights claims pursuant to 28 U.S.C. §§ 1331, 1367, and 1343. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2.      Venue is properly set in this Court pursuant to 28 U.S.C. §1391. The causes of action alleged herein arose from occurrences at Great Mills High School in St. Mary's County, Maryland. Defendants are located in this judicial district. Plaintiffs reside in St. Mary's County, Maryland, located in this judicial district.

> **Deleted:** is

3.      This Court is authorized to award Plaintiffs reasonable costs of litigation, to include attorney's fees and expenses, pursuant to 42 U.S.C. § 1988.

4.      This Court has personal jurisdiction over the parties and these actions.

**PARTIES**

5.      The facts and allegations of Paragraphs 1 through 4 are incorporated by reference.

6.      Plaintiff, Melissa and Daniel Willey, as Personal Representative of the Estate of Jaelynn Willey, ("Mr. and Mrs. Willey"), at all times relevant to the allegations of this Complaint, was/is a resident of the St. Mary's County, Maryland.

7.      Plaintiff, Melissa Willey ("Mrs. Willey"), at all times relevant to the allegations of this Complaint, was/is a resident of St. Mary's County, Maryland.

8.      Plaintiff, Daniel Willey, at all times relevant to the allegations of this Complaint, was/is a resident of St. Mary's County, Maryland.  At all relevant times herein, Mr. Willey and Mrs. Willey were/are married.

9.      Defendant Board of Education of St. Mary's County is a body politic and corporate and may sue and be sued, pursuant to Md. Code Ann., Educ. §3-104.  Defendant's administrative office is located in St. Mary's County, Maryland.  Defendant Board of Education of St. Mary's County controls is subject to intensive supervision by the State Board of Education in virtually every aspect of its operations, which in turn affects the educational policy and administration of the entire public school system which includes: the power to hire, fire; control to create, dictate, and enforce policies and procedures for the safety and well-being of the children in its charge; and to create, dictate and enforce policies and procedures to comply with federal and states laws afforded to its students.  Further, each county board is charged with maintaining and improving the local education system and "shall seek in every way to promote the interest of the schools in St. Mary's County.", Md. Code Ann., Educ. § 4–101.

10.     Defendants, upon information and belief, operate, manage, run, and/or supervise, Great Mills High School.

6

11.     Defendants, upon information and belief, are also responsible for the operation, management, budgeting, and all other aspects of the St. Mary's County school system, including Great Mills High School.

12.     The Defendants receive federal funding and are therefore subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX").

13.     Defendant Jake Heibel, Ph. D., in his Official and Individual Capacities as Principal of Great Mills High School, is an adult individual who is and was at all times relevant hereto employed as Principal of the Great Mills High School, with his office at 1130 Great Mills Rd. Great Mills, Maryland 20634.

14.     At all relevant times hereto, Defendant Heibel was acting under color of state law and was engaged in the course and scope of his employment as an employee, servant, and/or agent of Defendant School Board and its members.

15.     Defendant James Scott Smith, Ph.D., in his Official and Individual Capacities as the Superintendent of Great Mills High School, is an adult individual who is and was at all times relevant hereto employed as the superintendent of Great Mills High School, and charged with the tasks of, among other things, ensuring the safety and well-being of the students, with his office at 23160 Moakley Street, Leonardtown, Maryland 20650

16.     At all relevant times hereto Defendant Smith was acting under color of state law and was engaged in the course and scope of his employment as an employee and/or agent of Defendant School Board and its members.

17.     Defendant Troy Kroll, in his Official and Individual Capacities as a Teacher and Coach of Great Mills High School, is an adult individual who is and was at all times relevant hereto

employed as a teacher and girls' swim coach at Great Mills High School, with his office at 21130 Great Mills Rd. Great Mills, Maryland 20634.

18.    At all relevant times hereto Defendant Knoll was acting under color of state law and was engaged in the course and scope of his employment as an employee, servant, and/or agent of Defendant School Board and its members.

19.    Defendant F. Michael Wyant, in his Official and Individual Capacities as Chief of Safety and Security of Great Mills High School, is an adult individual who is and was at all times relevant hereto employed as the Chief of Safety and Security for St. Mary's County Public Schools, including, the Great Mills High School, with his office at 23160 Moakley St. Leonardtown, Maryland 20650.

20.    At all relevant times hereto Defendant Wyant was acting under color of state law and was engaged in the course and scope of his employment as an employee and/or agent of Defendant School Board and its members.

21.    Defendant Blaine Gaskill, in his Official and Individual Capacity, as a School Resource Officer is an adult individual who is and was at all times relevant hereto a St. Mary's County Officer and a Great Mills High School School Resource Officer and was specifically tasked with protecting the Plaintiff and was assigned to mentor, communicate, interact, and keep watch over students at Great Mills High School, and, accordingly, all of his actions, described more fully below, were performed under the color of state and local law.

22.    Upon information and belief, Defendant Gaskill was/is an employee, agent, and/or servant of Defendant County and/or Defendant BOE as a deputy police officer and school resource officer in the Great Mills High School, and at all times relevant herein was acting under the color

8

of state law, and was engaged in the course and scope of his employment as an employee and/or agent of the Defendant County and/or Defendant BOE.

23.    Defendant Gaskill was at all pertinent times a Great Mills High School school resource officer, upon information and belief, tasked with decision making and intervention relating to: dating violence, peer violence, sexual harassment; threats of school violence; threats and attempts of mass shooting; school security; stalking, mentoring; student on student harassment, including of the sexual nature; student safety; and violence within the school.  This decision making extended to the deceased Plaintiff.

24.    Defendant Karin Bailey, in her Official and Individual Capacities as the Board Member of the St. Mary's Board of Education, is an adult individual who is and was at all times relevant hereto a Board Member of the Board of Education of St. Mary's for Great Mills High School, and charged with the tasks of, among other things, ensuring the safety and well-being of the students, with her office at 23160 Moakley Street, Leonardtown, Maryland 20650.

25.    At all relevant times hereto Defendant Bailey was acting under color of state law and was engaged in the course and scope of her employment as an employee and/or agent of Defendant School Board.

26.    Defendant Cathy Allen, in her Official and Individual Capacities as the Board Member of the St. Mary's Board of Education, is an adult individual who is and was at all times relevant hereto a Board Member of the Board of Education of St. Mary's for Great Mills High School, and charged with the tasks of, among other things, ensuring the safety and well-being of the students, with her office at 23160 Moakley Street, Leonardtown, Maryland 20650.

27.    At all relevant times hereto Defendant Allen was acting under color of state law and was engaged in the course and scope of her employment as an employee and/or agent of

Defendant School Board.

28.     Defendant Mary Washington, in her Official and Individual Capacities as the Board Member of the St. Mary's Board of Education, is an adult individual who is and was at all times relevant hereto a Board Member of the Board of Education of St. Mary's for Great Mills High School, and charged with the tasks of, among other things, ensuring the safety and well-being of the students, with her office at 23160 Moakley Street, Leonardtown, Maryland 20650.

29.     At all relevant times hereto Defendant Washington was acting under color of state law and was engaged in the course and scope of her employment as an employee and/or agent of Defendant School Board.

30.     Defendant James Davis, in his Official and Individual Capacities as the Board Member of the St. Mary's Board of Education, is an adult individual who is and was at all times relevant hereto a Board Member of the Board of Education of St. Mary's for Great Mills High School, and charged with the tasks of, among other things, ensuring the safety and well-being of the students, with his office at 23160 Moakley Street, Leonardtown, Maryland 20650.

31.     At all relevant times hereto Defendant Davis was acting under color of state law and was engaged in the course and scope of his employment as an employee and/or agent of Defendant School Board.

32.     Defendant Rita Weaver, in her Official and Individual Capacities as the Board Member of the St. Mary's Board of Education, is an adult individual who is and was at all times relevant hereto a Board Member of the Board of Education of St. Mary's for Great Mills High School, and charged with the tasks of, among other things, ensuring the safety and well-being of the students, with her office at 23160 Moakley Street, Leonardtown, Maryland 20650.

33.     At all relevant times hereto Defendant Weaver was acting under color of state law

and was engaged in the course and scope of her employment as an employee and/or agent of Defendant School Board.

34.     The above-Defendant individuals were tasked with policy making, decision-making, hiring/firing decisions, and also had the power to control and enforce policies and procedures made for the benefit of students at Great Mills High School.

35.     Defendant St. Mary's County is a local government, body politic, and corporate established under Maryland law that may sue and be sued.  Defendant St. Mary's County, is the duly elected body of five officials that governs the affairs of St. Mary's County under the power, duties, and restrictions set forth in Article 25 of the Annotated Code of Maryland.  Defendant St. Mary's County is in charge of the Sheriff's Department, the officers, deputies, policies, etc.

36.     Defendant Gaskill and other officers and school resource officers are, upon information and belief, subject to intensive supervision by the Defendant County in virtually every aspect of its operations, which in turn affects the policy and administration of the entire sheriff and law enforcement system.

37.     The sheriff duties as employees, agents, and/or servants of the Defendant County are tasked with safety of students, mentoring of students, and other various duties and protections.

38.     In the alternative, the sheriff duties as employees, agents, and/or servants of the Defendant BOE are tasked with safety of students, mentoring of students, and other various duties and protections.

39.     Defendant County is responsible for the operation, management, budgeting, and all other aspects of the Sheriff's Department and the employed officers, including Defendant Gaskill.

40.     Upon information and belief, Jane/John Does 1-10, are and were at all times relevant hereto employees, servants, and/or agents of Defendant BOE who reside in Maryland,

and who, upon information and belief, had relevant knowledge of the events and acts contained herein and had decision-making authority and or authority to act and/or respond.

41.     Pursuant to the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act"), 20 USC § 1092(f), "dating violence" is "committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim" to include sexual or physical abuse or the threat of such abuse. It also includes "stalking," which is defined as "a course of conduct directed at a specific person that would cause a reasonable person to—[f]ear for the person's safety or the safety of others; or [s]uffer substantial emotional distress." The Clery Act defines a "course of conduct" to "mean[] two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes. surveils, threatens, or communicates to or about a person, or interferes with a person's property."

42.     Domestic violence, dating violence and other forms of sexual harassment are widespread and serious problems at schools and throughout the United States, which disproportionately affect women and often have deadly consequences. For example, nationwide, 12% of 9th-12th grade girls have been physically forced to have sexual intercourse when they did not want to; one in six women was raped before the age of 25; 42% of female rape victims were first raped before the age of 18; 19% of young women report experiencing completed or attempted sexual assault since entering college; most of these victims are assaulted by someone they know, primarily an acquaintance or a fellow student: 43% of college women report experiencing violent and abusive dating behaviors including physical, sexual, verbal, and controlling abuse. 22% have been the victim of physical abuse, sexual abuse or threats of physical violence.[2]  Fifty women in

---

[2] U.S. Dept. of Education, https://www2.ed.gov/about/offices/list/oese/oshs/teendatingviolence-factsheet.html.

the United States are killed every month by gun violence alone at the hands of an intimate partner. Twenty people in the United States are assaulted by an intimate partner every minute.

43. Data from the Centers for Disease Control and Prevention Youth Risk Behavior Survey and the National Intimate Partner and Sexual Violence Survey indicates that nearly 1 in 11 high school females report having experienced physical dating violence in the last year; 1 in 9 female high school students report having experienced sexual dating violence in the last year; 26% of women who were victims of contact sexual violence, physical violence, and/or stalking by an intimate partner in their lifetime first experienced these or other forms of violence by that partner before age 18.[3]

44. According to a study funded by the National Institute of Justice, the numbers are even higher, finding that two-thirds of youths between ages 12-18 who were in a relationship or had been in one in the past year reported they had been victimized. There is also a close association between sexual harassment and psychological adolescent relationship abuse, suggesting that schools and other services may be able to integrate their relationship abuse and sexual harassment preventive efforts.[4]

45. Teen dating violence has serious consequences for victims and their schools. Witnessing violence has been associated with decreased school attendance and academic performance. Moreover, 20% of students with mostly D and F grades have engaged in dating violence in the last year, while only 6% of students with mostly A's have engaged in dating violence. Further, teenage victims of dating violence are more likely than their non-abused peers

---

[3] CDC, *Preventing Teen Dating Violence: Fact Sheet*, 2020 available at
https://www.cdc.gov/violenceprevention/intimatepartnerviolence/teendatingviolence/fastfact.html
[4] Bruce G. Taylor, et al., *The National Survey of Teen Relationships and Intimate Violence*, (2017), *available at* https://www.ncjrs.gov/pdffiles1/nij/grants/250292.pdf.

to smoke, use drugs, engage in unhealthy dieting (e.g., taking diet pills or laxatives, vomiting to lose weight), engage in risky sexual behaviors, and attempt or consider suicide. *Id.*

46.     A 2009 study of sixth-grade students found that 25% thought it was acceptable for boys to hit their girlfriends. More than one fourth of the boys with girlfriends said they had been physically aggressive (punching, slapping) with her.   Although all victims of gender-based violence are affected negatively, research reveals that female victims of dating violence often experience more severe and longer-lasting consequences than do male victims. *Id.*

47.     Nearly half of students who experience dating violence say some of the abuse took place on school grounds.  Relatively few schools, however, have written policies governing safety, security, and intervention with students experiencing dating violence.  Research shows that schools can make a difference in preventing teen violence and other forms of gender-based violence. *Id.*

48.     The U.S. Department of Education suggests the following for schools: (1) educate your community about prevention and identification; (2) develop locally tailored, appropriate responses to address teen dating violence; and (3) provide effective support to traumatized youth or to address the behavior and needs of perpetrators, adopt a comprehensive approach that takes into account the unique challenges that these offenses present (e.g. victim reluctance to report and trauma from sexual violence).

49.     Moreover, three quarters of the abusers who ultimately killed their intimate partners engaged in stalking of the intimate partners before killing them. In addition to stalking, several other factors are known to significantly increase the risk of violence or death at the hands of an intimate partner and such factors are commonly evaluated to assess the danger for those at risk. Such factors include, but are not limited to: a short courtship, extreme jealousy, isolation from

14

friends or family, attempts to monitor or control daily activities, stalking, substance abuse, chronic unemployment, access to a gun, prior instances of domestic violence or dating violence, threats to harm or kill the victim, threats of suicide from the abuser, forced sex, manipulative behavior, visions of grandiosity, profound narcissism, lies about military service, bravery or heroism, exaggerated fear of danger associated with the outside world or any attempt by the victim to end the relationship. In fact, danger to the victim *drastically* increases when a victim leaves an abuser, remains extremely high for three months, dips slightly for the next nine months and drops off precipitously after one year. Other warning signs of abusive behavior that are often evident with respect to the victim include, but are not limited to: unexplained bruising; depression; chronic fatigue; changes in personality or appearance; changes in eating or sleeping patterns; a decline in self-esteem; increased worry about pleasing, displeasing, or angering the other partner; and constantly checking in with the other partner.

50.     These facts and statistics are even more alarming when taken in conjunction with virtually 24-hour access to fellow students via cellphones, internet, social media etc. and the ever-increasing bullying and mass gun violence incidents in schools.

51.     In fact, a recent analysis of FBI data by the group Everytown for Gun Safety found that over a five-year period, 54 percent of mass shootings were related to domestic or family violence and included the killing of a partner or other family member.[5]

52.     According to findings published in JAMA Pediatrics, a study found that more than 2,000 adolescents killed between 2003 and 2016, nearly 7%—150 teens—were killed by their current or former intimate partners. Ninety percent of the victims were female, and their average age was around 17 years old and most were killed by a firearm, specifically a handgun. The most

---

[5] https://everytownresearch.org/massshootingsreports/mass-shootings-in-america-2009-2019/

common categories of adolescent homicides were when the victim broke up with the perpetrator or refusing to start a relationship with them.  Breakups were found to be dangerous periods for more likelihood of injury.[6]

53.      Too often, children and teens are the victims of domestic violence mass shootings. Of the 309 children and teens killed in all mass shootings in the past 10 years, nearly three in four (72 percent) died in an incident connected to intimate partner or family violence. Among other things, the Great Mills High School 2016-2017 Handbook recognizes that "sexual harassment" is a form of sexual discrimination in schools and is prohibited, and moreover does not "tolerate any form of harassment including, but not limited to, sexual [discrimination]." although upon information and belief, there is no training provided to its employees with [i]nformation on risk reduction to *recognize warning signs of abusive behavior* and how to avoid personal attacks. Accordingly, this Defendant acknowledged that sexual harassment is a form of sexual discrimination, and yet failed to ensure adequate training to recognize the warning signs associated with Rollins' abusive behavior and thus was not able to advise Jaelynn Willey on how to avoid personal attacks or otherwise intervene to prevent them on its property.

54.      Additionally, since 2016, Governor Hogan has created a workgroup to bring healthy teen dating education to all Maryland counties, issuing guides specifically to educators on teen dating violence prevention programs given that each year nearly 1.5 million high school students nationwide experience physical abuse from a dating partner and in 2014, more than 10 percent of Maryland high school students reported experiencing physical and/or sexual dating

---

[6]Avanti Adhia, et al., *Intimate Partner Homicide of Adolescents*, JAMA Pediatr. (2019), *available at* https://jamanetwork.com/journals/jamapediatrics/fullarticle/2730578?guestAccessKey=9f6da9e5-4348-47a4-8fb1-68076780e08e&utm_source=For_The_Media&utm_medium=referral&utm_campaign=ftm_links&utm_content=tfl &utm_term=041519.

violence.[7]  Per this council, Teen Dating Violence ("TDV") can including digital abuse such as texting, social networks and the like to harass, stalk, or intimidate a partner.  Furthermore, this council in Maryland finds that school-based violence prevention programs have shown to be effective in preventing physical, sexual, and emotional violence and that including TDV curriculums meets several of the Health Education standards provided by the Maryland State Board of Education.  Many of the resources proposed to educational facilities in Maryland are free or lost-cost solutions to maximize TDV prevention and, upon information and belief, little to none of these programs were utilized by the Defendants.

55.     Jaelynn's death arose from a set of circumstances that should have alerted the Defendants to the fact that one of their students was in extreme peril of being seriously harmed or killed as a result of dating violence. In addition to direct reports of dating violence, the classic warning signs of such behavior were repeatedly reported to the School, Defendants, and its agents and/or employees, but no investigation occurred, no plans were developed or implemented, and no effort was made to take any meaningful action reasonably calculated to end the harassment or to otherwise prohibit Rollins from having ongoing access to the school and Jaelynn.

## FACTS

56.     The facts and allegations of Paragraphs 1 through 55 are incorporated by reference.

57.     At Great Mills High School, the school promises, as part of its policy and procedure, that it "continually plans and prepares for events that would necessitate an emergency response" and that "students should be able to enjoy a school environment free from all forms of discrimination, including bullying, harassment, and sexual harassment."

---

[7] http://goccp.maryland.gov/wp-content/uploads/fvc-healthy-teen-dating-guide.pdf

17

58.     At all times prior to this incident, and relevant hereto, upon information and belief, Defendants knew that they needed to employ safety vestibules, as well as metal detector devices and surveillance devices, among other safety protocols, to prevent and deter active shooter situations, as well as harassment of its students, and chose not to implement said safety devices that they had purchased, or otherwise knew they needed, to deter violence in accordance with its own policies and procedures.

59.     At all times relevant hereto, school staff had an obligation, pursuant to their policies and procedures, to "promptly report to a school administrator all delinquent acts that come to their attention - whether occurring on or away from the school premises - which involve students in the school system. The school administrator must then promptly report all such acts to the responsible law enforcement agencies. School officials cannot ignore illegal substance abuse or other illegal activities. If a teacher, counselor, or principal finds a student" . . . "violating the law, the educator must observe the existing laws and enforce school policy. Once observed and reported to the school administrator, established procedures will be implemented. Each case must be handled on its own merits and as determined by its own circumstances, within school system policy."

60.     At all times relevant hereto, Defendants had an obligation to "promptly report all acts of violations of the law," including not but limited to, threats of mass violence, acts of sexual harassment, sexual assault, assault, violence, and intimidation to their superiors such that existing laws and school policies could be enforced.

61.     At all times relevant hereto, Defendants had an obligation to respond and intervene appropriately to all reported acts of violations of the law.

62.     At all times relevant hereto, "students in school, at school-sponsored activities, or traveling to and from school on school buses are the responsibility of the school, and school

**Deleted:** and Great Mills High School

**Deleted:** it

**Deleted:** and Great Mills High School employees, agents, and actors,

**Deleted:** to the school administrator

**Deleted:** can

personnel" assigned to them act in a *"loco parentis"* capacity, such that it must take measures to
ensure "the safety and well-being of its students,"

| | |
|---|---|
| **Deleted:** | |

63.    At all times relevant hereto, minor Decedent, Jaelynn Willey, was a student in good
standing at Great Mills High School and was a member of 10th grade.

64.    Under the Fourteenth Amendment to the Constitution of the United States of
America, Decedent had the right, as a public school student, to personal security, bodily integrity,
due process, and Equal Protection of Laws.

65.    High school was compulsory in the state of Maryland for all St. Mary's County
residents ages five (5) years or older to under the age of eighteen (18), including Jaelynn Willey,
on March 20, 2018.

66.    Beginning in 2017, Decedent entered into a romantic relationship with fellow Great
Mills High School student, Austin Rollins (hereinafter "Rollins").

67.    The relationship quickly soured due to, *inter alia*, Rollins physically and verbally
pressuring Decedent to engage in behaviors, believed to be sexual in nature, that she did not want
to participate in, during, before, and after school, including on school property and/or during
school events.

68.    Rollins was possessive, controlling, and manipulative, including accusing the
Decedent of lying and betrayal, texting her and using social media platforms to repeatedly contact
Decedent despite repeated requests to stop, during, before, and after school, including on school
property and/or during school events, and in the use of the Great Mills High School wireless
internet.

| | |
|---|---|
| **Deleted:** following her around on School property, and | |

69.    At all times relevant hereto, Decedent was a member of the school's swim team.

19

70.     Additionally, Rollins would frequently text, harass, and send social media requests to the Decedent's friends and social acquaintances to harass them, during, before, and after school, including on school property and/or during school events, and in the use of the Great Mills High School wireless internet.

71.     Prior to the death of Jaelynn, Rollins would: smash his hands against the walls to make his hands bleed; text friends of Jaelynn indicating that he was planning on killing himself; stalk Jaelynn on school property by following her to her vehicle after school, as well as by showing up after each class and following her around the hallways; and would frequently physically harm Jaelynn in school including, but not limited to, grabbing and squeezing her arms and wrists.

72.     Through information and belief, Rollins' electronic communications with Jaelynn originated on or within the immediate vicinity of the school, concerned events occurring on campus, specifically targeted a student on school campus, and upon information and belief, utilized the Great Mills High School wireless internet to conduct said electronic communications.

73.     Rollins was physically abusive to Decedent in school.

74.     Rollins would grab, push, and yell at Decedent at school directly outside of classrooms during school hours on a repeated basis and Rollins' actions were specifically observed by all around Decedent, including, upon information and belief, by the Defendants.

75.     Rollins would stalk Decedent around school, waiting for her directly outside of classrooms on a repeated basis and Rollins' actions were specifically observed by all around Decedent, including, upon information and belief, observed and/or known by the Defendants.

76.     Repeatedly, Rollins would stalk and follow Decedent after school to the vehicle she would depart school in, which was located on school property, despite Decedent not welcoming

Deleted: <#>Upon information and belief, on a daily basis, Rollins would text, harass, and send social media requests to the Decedent during, before, and after school ¶

Deleted: and

Deleted:

Deleted:

Deleted: , including but not limited to, school personnel

Deleted:  Rollins' actions were specifically observed by all around Decedent, including but not limited to, school personnel

this, and Rollins' actions were specifically observed by all around Decedent, including, upon information and belief, observed and or known the Defendants.

77.     Rollins would frequently grab Decedent by the wrists, in school, causing her excruciating pain and Rollins' actions were specifically observed by all around Decedent, including, upon information and belief, observed and/or known by the Defendants.

78.     Decedent was repeatedly subjected to a series of threats, acts of intimidation, and physical assaults and attacks by Rollins.

79.     Upon information and belief, Defendants observed or were aware of the above mentioned incidents, and thus had actual knowledge and notice that Rollins was increasingly violent in addition to committing dating violence, stalking, sexual harassment, and other abuse against Jaelynn.

80.     In the months leading up to this incident, Decedent's parents warned the school by way of directly advising the Defendant Kroll, who was both Decedent's swim coach and teacher who Decedent and her parents trusted immensely, that they were concerned about their daughter's well-being due to Rollins current and prior behavior both in and out of school.

81.     In the months leading up to this incident, Decedent would meet in the mornings with her friends in Defendant Kroll's classroom prior to the start of school and Decedent would frequently have conversations relative to Rollins and his described behavior, which upon information and belief, were heard by Defendant Kroll on multiple occasions.

82.     Upon information and belief, Defendant Kroll knew that the above-enumerated actions described to him were considered to be:

     a.   Sexual in nature;

     b.   Harassing in nature;

21

    c.  Violent;

    d.  Harmful to the Decedent and would interfere with her rights to educational opportunities and benefits; and

    e.  Discriminatory based upon the violence and harassment being a result of a sexual relationship, among other reasons.

83.   As a result of Decedents' parents advising Defendant Kroll, upon information and belief, Defendant Kroll promptly escalated the concerns in accordance with school reporting policies and requirements, to his superiors and those who could assist, who included Defendant Gaskill and Defendant Smith, who, upon information and belief and in accordance with reporting policies and requirements, escalated the concerns in accordance with school reporting policies and requirements to their superiors including the additional named Defendants.

84.   Upon information and belief, said Defendants failed to take said complaints seriously and disregarded the concerns lodged by the Decedent's mother, and in doing so, commenced with supervisory indifference to the constitutional violations and thus, tacitly authorized the ongoing constitutional violations of the Decedent arising from her status as a student and participant at Great Mills High School.

85.   In the alternative, as a result of the parents advising Defendant Kroll, upon information and belief, Defendant Kroll failed to appropriately escalate these threats and concerns through his chain of command and supervisory escalation policies and guidelines.

86.   Despite all of the above, upon information and belief, none of the Defendants nor any other School official or representative kept an eye on Jaelynn, reached out to Jaelynn to see if she needed help, no one confronted Jaelynn or Rollins about the situation, no one counseled Jaelynn with respect to her options, and no one otherwise investigated, stopped, intervened, or

Deleted: the

Deleted: the

Deleted: swim coach

Deleted: <#> nothing was done nor escalated by the school ¶

took a single step to ensure Jaelynn's safety and wellbeing at school despite the known threat and reported complaints.

87.     None of the Defendants nor any other school official or representative made any reports of the stalking, abuse, violence, threats, and/or sexual harassment of Rollins towards Jaelynn.

**Deleted:** St. Mary's BOE

88.     Defendants ignored Rollins stalking, harassment, abuse, control, and the warning signs and patterns of dating violence by turning a blind eye to Rollins' conduct on school grounds that, upon information and belief, was known to Defendants.

**Deleted:** St. Mary's BOE

**Deleted:** School's employee's, servants, and/or agents

89.     Jaelynn and Rollins' relationship and aftermath had all the typical patterns and signs of teen dating violence both inside and outside of School which was observable and/or known to Defendants.

**Deleted:** School personnel

90.     Defendants, upon information and belief, did nothing to protect Jaelynn or prevent further violence due to, *inter alia*, lack of training, programs, intervention, and prevention tools.

**Deleted:** St. Mary's BOE

91.     Defendants, upon information and belief, had actual knowledge that Rollins was a substantial risk to Jaelynn and other students on the school campus.

**Deleted:** St. Mary's BOE

92.     Defendants also had general knowledge of a serious and obvious risk of stalking, sexual harassment, threat of gun violence, threat of mass school violence, and/or teen dating violence on school grounds, but was deliberately indifferent to the need to implement policies and programs to address the risk, despite generally acknowledging the need for such policies, or, in the alternative, implemented said policies and chose not to utilize or enforce them.

**Deleted:** St. Mary's BOE

93.     Moreover, Defendants, upon information and belief, treated women differently based on irrational gender stereotypes; of acquiescing in sexual harassment; of failing to believe women who report stalking, dating violence, harassment, bullying, and/or sexual harassment; of

**Deleted:** St. Mary's BOE has an official policy or custom of treating

failing to investigate or otherwise respond reasonably to reports of stalking, dating violence, harassment, bullying, and/or sexual harassment against women; of being deliberately indifferent to reports of same against women; of otherwise failing to take reports of stalking, dating violence, harassment, bullying, and/or sexual harassment against women seriously; and of failing to implement appropriate policies and procedures intended to manage issues relating to stalking, dating violence, harassment, bullying, and/or sexual harassment. Upon information and belief, Defendant County had an official custom or policy of same.

94.     Defendants' acts or omissions were, upon information and belief, the result of willful and malicious conduct or conduct that manifested a knowing and reckless indifference toward, and a disregard of, Jaelynn's rights and were a cause of the injuries suffered and damages incurred by the Plaintiffs.

95.     A threat of a shooter at the school was made on February 20, 2018, less than one month before Jaelynn Willey was shot and murdered on the school campus by Rollins.

96.     Upon information and belief, Defendants added additional security for the day of February 20, 2018 only.

97.     A threat of an incident of mass violence was also made less than 24 hours before Jaelynn Willey was shot and murdered on the school campus by Rollins.

98.     Upon information and belief, Defendants did not even address additional security needs at any time prior to Rollins' school shooting.

99.     Upon information and belief, despite Rollins physically attacking a fellow student on several occasions, and otherwise threatening multiple students on several occasions, Defendants did nothing to prevent the death of Decedent.

> **Deleted:** Defendant County and Defendant Gaskill, in his official capacity, are "persons" for the within the meaning of 42 U.S.C. §1983 ¶
>
> **Deleted:** ¶

> **Deleted:** , Great Mills
>
> **Deleted:** High School

100.    Defendants, upon information and belief, had metal detecting wands at their disposal, which they chose not to use, or knew they otherwise needed, which would have prevented this incident.

101.    Defendants, upon information and belief, had safety vestibules that they chose not to engage, or knew they otherwise needed, which would have prevented this incident.

102.    Defendants, upon information and belief, had limited surveillance cameras that they chose not to watch nor pay attention to that would have prevented this incident, and otherwise failed to engage additional surveillance that they knew would have prevented and deterred such an incident.

103.    Defendants assumed the security obligation of surveilling and protecting the school and its students, and had measures, security equipment, and minimally burdensome options to surveil, protect, secure, and metal detect if necessary, and yet Defendants chose not to do so, despite multiple instances of safety threats at Great Mills High School.

104.    Defendants actions occurred despite their policy to "plan and prepare for events that would necessitate an emergency response" and allow their "students to enjoy a school environment free from discrimination, and harassment" as advised in their own handbooks distributed to students and parents.

105.    Defendants, upon information and belief, had actual knowledge that Rollins was a threat to Decedent and chose not to escalate the information or take the information seriously and, as a direct result, was a cause of this incident.

106.    Despite having actual knowledge that Rollins was harassing, abusing, threatening, and stalking Jaelynn, which are by definition offenses involving "violence or physical harm," and despite receiving other information sufficient to alert the Defendants to the possibility that Jaelynn

25

Deleted: Great Mills High School

Deleted: its

Deleted: it

Deleted: Great Mills High School

Deleted: it

Deleted: Great Mills High School

Deleted: it

Deleted: it

Deleted: Great Mills High School

Deleted: School

was otherwise a victim of dating violence and sexual harassment, the Defendants acted with deliberate indifference and conscious disregard of the deadly situation, and thus failed to take any meaningful action that was reasonably calculated to end such abuse or to otherwise investigate the matter. Consequently, the Defendants failed to meet their obligations and violated Title IX.

107.    Among other things, despite having the ability and authority to do so, the Defendants failed to contact or protect Jaelynn with regard to the allegations of harassment, stalking or the other warning signs of potential abuse; failed to otherwise investigate the matter or gather more information; failed to contact Jaelynn and provide her with safety options and resources; failed to contact or coordinate with other law enforcement or organizations; failed to take action required by the school's policies and procedures; and otherwise failed to take any meaningful action to address the situation and ultimately prevent Jaelynn's murder.

108.    The Defendants had substantial control over Jaelynn's perpetrator as Rollins was a fellow student at Great Mills High School and was required to attend school.

109.    Similarly, despite having actual knowledge that Rollins was harassing Jaelynn and stalking her, despite receiving other information sufficient to alert the Defendants to the possibility that Jaelynn was otherwise a victim of dating violence, and despite having actual knowledge that Rollins had committed or attempted to commit several other crimes that would be considered sexual harassment and sexual discrimination, including under Title IX, the Defendants acted with deliberate indifference and conscious disregard of the deadly situation, and thus failed to take any meaningful action that was reasonably calculated to end such abuse or to otherwise investigate the matter.

110.    Consequently, the Defendants failed to meet their obligations and violated Title IX.

26

111.    Among other things, despite having the ability and authority to do so, Defendants failed to investigate Rollins' physical abuse; failed to attempt to make contact with Rollins or with anyone students who might have information about his threatening behavior; failed to make any attempt to determine whether Rollins was harassing, stalking, and threatening Jaelynn and other students; failed to use any reasonable means to protect Jaelynn; failed to formulate or implement any plan to prevent further abuse; and failed to describe the rights and remedies available to Jaelynn.

112.    In fact, rather than investigating the allegations against Jaelynn and other students and treating them with the urgency that they deserved, in accordance with its own policies, Rollins went unchecked, unsupervised, and was permitted to freely enter the school with a gun and killed Jaelynn during school hours in a school hallway, despite the fact that Defendant Kroll, and upon information and belief, all other Defendants, knew of Rollins' behavior as, inter alia, Jaelynn's parents voiced concerns over Jaelynn's safety.

113.    Based on this lack of action, Defendants clearly failed to adequately train its employees to recognize the warning signs of abusive behavior, and in doing so, furthered a custom, practice, policy, and/or usage of the Defendants to ignore abusive and harassing behavior of a dating violence and sexual nature within Great Mills High School.

114.    St. Mary's BOE exercised a complete failure to train its agents/servants and/or in any capacity protect Jaelynn and its students, resulting in a violation of Jaelynn's constitutional rights.

115.    Similarly, upon information and belief, Defendant County exercised a complete failure to train its agents/servants and/or in any capacity protect victims of stalking, dating

Deleted: St. Mary's BOE

Deleted: the school personnel

Deleted: and

Deleted: St. Mary's BOE

Deleted: ¶

violence, harassment, sexual harassment, mass threats of violence, school shootings, including Jaelynn, students, and citizens, resulting in a violation of Jaelynn's constitutional rights.

116.    Upon information and belief, the Defendants failure to investigate or take any meaningful action was based on irrational gender stereotypes, which was a custom or usage of the Defendants.

117.    Upon information and belief, the Defendants dismissed their obligation to take any action based on the fact that Jaelynn had previously been in a consensual relationship. Thus, Defendants did not take Rollins' actions or Jaelynn and her parents' reported concerns seriously, thereby suggesting that Jaelynn, like most female high school students, likely exaggerated the circumstances and/or assumed that Jaelynn, like most female high school students, was unreasonable, hysterical, hypersensitive, paranoid, overreacting to the situation, and not being truthful.

118.    Upon information and belief, the Defendants refused to believe that Rollins was the culprit and failed to investigate the matter to determine whether Rollins was in fact the culprit based on the assumption that Jaelynn, like most women, was reporting the abuse out of spite or because she had ulterior motives. In basing their decision on these gender stereotypes and others, the Defendants violated Jaelynn's clearly established right to equal protection under the Fourteenth Amendment of the United States Constitution.

119.    Defendants' actions were intentional because of Jaelynn's status a female.

120.    Defendant Gaskill, a School Resource Officer, was present at the school on the date of the shooting, but at the time of the start of school, was nowhere to be found or otherwise available to screen students who were entering the school particularly in light of a threat of mass violence the day before. As a result, Defendants did not check any incoming school students for

**Deleted:** St. Mary's BOE's

**Deleted:** In fact
**Deleted:** ,
**Deleted:** St. Mary's BOE
**Deleted:** its
**Deleted:** the St. Mary's BOE
**Deleted:** or

**Deleted:**
**Deleted:** ers

**Deleted:** St. Mary's BOE

**Deleted:** its

**Deleted:** St. Mary's BOE

**Deleted:** <#>St. Mary's BOEDefendants had actual knowledge of Rollins' harassment and failed to take any action which amounted to deliberate indifference to known sexual harassment ¶
**Deleted:** <#>St. Mary's BOE's
**Deleted:** has a school resource officer who

weapons and specifically did not search, intercede, or take any precautionary actions toward Rollins.

121.   There was no school resource officer, metal detecting wand, or other deterrent preventing Rollins from walking into Great Mills High School with a gun despite threats of mass violence made just the day before this occurrence as well as one month before this occurrence despite policies to the contrary to keep students safe and free from these type of actions.

122.   On or about March 20, 2018, at the beginning of the school day, Rollins entered Great Mills High School with a 9mm handgun, proceeded all the way to hallway F, and shot Jaelynn in the head outside classroom F06.

123.   Desmond Barnes, another student who was located in that same hallway, was hit in the leg with the bullet that had hit and exited Jaelynn.

124.   Rollins was able to continue to walk around the school with the gun showing until he was confronted by Defendant Gaskill of the St. Mary's County Sheriff's Office assigned as a School Resource Officer in Hallway D near rooms D01 and D02.

125.   Upon information and belief, Defendant Gaskill reached Rollins long after he entered the school and after the shooting on March 20, 2018.

126.   At all times relevant, Defendants' conduct was committed under color of state and federal law.

127.   Defendants are liable for injuries caused by their own acts and/or omission and the acts and/or omissions of their employees, agents, and/or servants acting within scope of their position.

Deleted: a
Deleted: Deputy
Deleted: the
Deleted: School Resource Officer
Deleted: ,
Deleted: got to
Deleted: '
Deleted: is
Deleted: its

### COUNT I
**Federal Civil Rights Violations 42 U.S.C. § 1983**
**(Special Relationship)**

128.  The facts and allegations of Paragraphs 1 through 127 are incorporated by reference

129.  This count is brought against Defendants Jake Heibel, Ph.D.; James Scott Smith, Ph.D.; Troy Kroll; F. Michael Wyant; Blaine Gaskill; Karin Bailey; Cathy Allen; Mary Washington; James Davis; and Rita Weaver in their individual capacities, as upon information and belief, they are employed by the State of Maryland by virtue of their relationship to the Board of Education.

130.  This count is brought against Defendant Gaskill in his official capacity to the extent, and upon information and belief, that in performing his functions as a School Resource Officer, Defendant Gaskill was an employee of the Board of County Commissioners of St. Mary's County as interpreted by the State Finance and Procurement Article §9-108.

131.  This count is also brought against John/Jane Does who were administrators, teachers, counselors, and/or school employees with Defendant BOE, who upon information and belief, had knowledge of relevant issues hereto and/or had decision-making authority and/or authority to act and/or respond in their individual capacities.

132.  Defendants were state actors acting under the color of the law.

133.  Decedent's freedom to act on her own behalf or the Plaintiffs' to act on her behalf to protect Decedent from Rollins was restricted by Defendants insomuch that only course of action was through school agents.

134.  Decedent had no freedom to act on her own behalf to ensure her safety while at school during school hours as mandated by Maryland law.

30

**Deleted:** The facts and allegations of Paragraphs 1 through 85 are incorporated by reference

**Deleted:**

135.   At all times relevant and material hereto, Defendants had a duty to train and supervise any and all employees of Defendants, and further to establish and enforce rules concerning reasonable supervision for the protection of students, including the Decedent; and to provide sufficient and adequately trained personnel to facilitate the safety of the student.

136.   At all relevant and material times, Defendants had a duty to act reasonably to protect students who are in its care, custody and control by supervising and exercising control over its pupils with reasonable care so as to prevent harm to others, including the Decedent. Further, the Defendants, had the actual ability and authority to do.

137.   At Great Mills High School, the school promises and has policies indicating, it "continually plans and prepares for events that would necessitate an emergency response" and that "students should be able to enjoy a school environment free from all forms of discrimination, including bullying, harassment, and sexual harassment."

138.   At all times prior to this incident, and relevant hereto, upon information and belief, Defendants knew they needed to employ safety vestibules, as well as metal detector devices and surveillance devices, among other safety protocols, to prevent and deter active shooter situations, as well as harassment of its students, and chose not to use them.

139.   At all times relevant hereto, Defendants, had an obligation to "promptly report all acts of violations of the law" to the school administrator such that existing laws and school policies can be enforced.

140.   At all times relevant hereto, "students in school, at school-sponsored activities, or traveling to and from school on school buses are the responsibility of the school, and school personnel" assigned to them act in a "loco parentis" capacity, such that they must take measures to ensure "the safety and well-being of its students,".

31

141.   At all times relevant hereto, minor Decedent, Jaelynn Willey, was a student in good standing at Great Mills High School and was a member of the 10th grade.

142.   High school was compulsory in the state of Maryland for all St. Mary's residents ages over five (5) and under eighteen (18) years old, including Jaelynn Willey on March 20, 2018.

143.   Plaintiffs nor Decedent had no legal or other authority to protect Decedent while on school grounds during the course of the school day.

144.   Plaintiffs and Decedent were restricted and forced to rely on the Defendants to undertake this task.

145.   Defendants operate, supervise, and/or are otherwise responsible for Great Mills High School.

146.   Defendants knew and/or should have known of Rollins' dangerous behavior.

147.   Defendants knew that at least one of the prior threats of mass violence against students at Great Mills High School were, upon information and belief, performed by Rollins, or, in the alternative, given Rollins' dangerous behaviors and the likelihood of copycat violence, that Rollins would commit the aforementioned inhuman act of violence against the Decedent.

148.   Rollins' murderous actions were foreseeable to Defendants.

149.   Defendants acted in contravention to the School's mandate and frustrated the interests, policies, and procedures of Great Mills High School.

150.   Defendants decisively acted in contravention to the School's own policies, thereby increasing and/or creating the danger to Decedent posed by Rollins.

151.   From Fall 2005 through March 20, 2018, Jaelynn Willey occupied a special relationship with Defendants.

32

152.    Said special relationship results from the minor Decedent being of school age and thus compelled by state law to attend said school. Defendants' restrictive custody of Decedent while in mandatory school attendance, combined with the Defendants' loco parentis status, handbook, guidelines, policies and procedures for protecting students, and knowledge and awareness that Rollins was a danger to Willey and other students.

153.    Defendants thus had a mandate, duty, and obligation to protect the Decedent from harm by Rollins, and to prevent Rollins from having harmful contact with the Decedent while the students were at school or attending school-related activities.

154.    As a direct and proximate result of all of Defendants' conduct committed under color of state and federal law, the Decedent was deprived of her right to be free from threats of bodily harm, actual physical assaults and attacks, intimidation, harassment remarks, death, and other physical, psychological, and emotional harm as set forth herein.

155.    Despite occupying said special relationship with the minor Decedent, the Defendants failed to prevent Rollins from contacting, harassing, injuring, and killing Decedent, and failed to protect her from the harmful acts of Rollins in general, and in the following particulars:

      a.   The Defendants failed to protect the minor Decedent from bodily harm;

      b.   The Defendants' actions, created the danger and risk of bodily harm to Decedent;

      c.   The Defendants failed to protect the minor Decedent from threats of bodily harm;

      d.   The Defendants' actions increased the danger and risk of bodily harm to Decedent;

Deleted: M

Deleted:

Deleted:

Deleted:

Deleted: s

Deleted:

Deleted:

e.   The Defendants failed to protect the minor Decedent from acts of
     intimidation;

f.   The Defendants' actions increased the danger and risk of acts of
     intimidation;

g.   The Defendants failed to monitor the administrators who the School knew
     or should have known lacked the administrative skill and judgment to
     protect the minor Decedent;

h.   The Defendants failed to identify and to take remedial or disciplinary action
     against the administrators who were charged with the responsibility of
     protecting the safety of the minor Decedent;

i.   The Defendants failed to investigate the allegations of misconduct
     concerning Rollins, and to impose disciplinary and other remedial measures
     when their administrators were found to have violated established
     procedures and practices;

j.   The Defendants failed to follow established policies, procedures, directives
     and instructions regarding the protection of students;

k.   The Defendants failed to properly sanction or discipline the School
     employees and their administrators and other employees who were aware
     of and concealed and/or aided and abetted the violations of constitutional
     rights of the minor Decedent, thereby and causing and encouraging said
     administrators and employees to violate the rights of the students in general
     and the minor Decedent in particular.

Deleted:

Deleted:

Deleted: its

Deleted: by and through it agents, servants, and/or employees

Deleted: all

Deleted: its

34

156. By the actions set forth in the paragraphs above, the Defendants deprived the Decedent of rights secured by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. §1983.

WHEREFORE, Plaintiffs sue Defendants and demand judgment against Defendants for all damages recoverable, including attorney's fees, under the laws of the United States and further demands a trial by jury on all issues so triable as of right by a jury.

**COUNT II**
**Federal Civil Rights Violations 42 U.S.C. § 1983**
**(State-Created Danger)**

157. The facts and allegations of Paragraphs 1 through 156 are incorporated by reference.

158. This count is brought against Defendants Jake Heibel, Ph.D.; James Scott Smith, Ph.D.; Troy Kroll; F. Michael Wyant; Blaine Gaskill; Karin Bailey; Cathy Allen; Mary Washington; James Davis; and Rita Weaver in their individual capacities, as upon information and belief, they are employed by the State of Maryland by virtue of their relationship to the Board of Education.

159. This count is brought against Defendant Gaskill in his official capacity with the County to the extent, and upon information and belief, that in performing his functions as a School Resource Officer, Defendant Gaskill was an employee of the Board of County Commissioners of St. Mary's County as interpreted by the State Finance and Procurement Article §9-108.

160. This count is also brought against John/Jane Does who were administrators, teachers, counselors, and/or school employees with Defendant BOE, who upon information and belief, had knowledge of relevant issues hereto and/or had decision-making authority and/or authority to act and/or respond in their individual capacities.

161.    The Defendants acted to place the Decedent in a dangerous position, increased the danger to Decedent and/or acted with willful disregard for the safety of the Decedent, which danger and lack of safety was foreseeable to the Defendant.

162.    The Defendants acted to permit Rollins to attend school and/or to return to school following his dangerous, violent, and harassing behavior to Decedent and other peers when the Defendants knew or in the exercise of reasonable care should have known that Rollins would continue his attacks and would increase and/or escalate his violence toward Decedent.

163.    The Defendants acted to permit Rollins to remain in school after he had acted in violation of the School Disciplinary Code, which mandates long-term suspension and/or expulsion.

164.    The Defendants acted to permit Rollins to return to school and to have contact with Decedent despite warnings and knowledge of Rollins' behavior.

165.    The Defendants created the opportunity for harm which would otherwise not have existed.

166.    The Defendants increased the opportunity for harm and danger which would otherwise not have existed.

167.    By the actions set forth in the paragraphs above, the Defendants deprived the Decedent of rights secured by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. §1983.

168.    As a direct and proximate result of all of Defendants' conduct committed under color of state and federal law, the Decedent was deprived of her right to be free from threats of bodily harm, actual physical assaults and attacks, intimidation, harassment remarks, death, and other physical, psychological and emotional harm as set forth herein.

36

169.    In addition, the Decedent was deprived of her right to a free and appropriate public education as guaranteed to her under Maryland law.

170.    The minor Decedent suffered and lost her life in violation of her rights under the Constitution of the United States, in particular the Fourteenth Amendment thereof. and 42 U.S.C. §1983.

171.    As a direct and proximate result of the acts of Defendants, the minor Decedent sustained pain, suffering, physical injuries, emotional harm, loss of liberty, and death.

172.    Plaintiffs sustained financial losses and expenses as a result of the denial of a free and appropriate public education as guaranteed the decedent under the laws of the Maryland law, all to their detriment and harm.

173.    By taking affirmative action to create and/or increase danger and harm toward Decedent of the threats, physical assaults, attacks by one or more of their students, and ultimate death, Defendants acted with deliberate indifference to the rights and personal safety of the Decedent and disregarded a substantial risk of harm to the Decedent, namely that the decedent would be threatened, intimidated, physically assaulted, attacked, and ultimately murdered on school grounds during school hours by a fellow student.

174.    The injuries suffered by the Decedent and Plaintiffs were the foreseeable result of the deliberate indifference of the Defendants as set forth above, which constitutes a state-created danger that caused or was a substantial factor in causing and/or increasing the danger to Decedent to be deprived of her constitutional right to personal protection to which she is entitled under 42 U.S.C. §1983.

**Deleted:** its

**Deleted:** , through its agents, employees, and/or servants

**Deleted:** Section

175.   The Defendants' action of mandating that Decedent continue to attend school when it was not safe to do so increased the danger to Decedent and rendered her more vulnerable, resulting in her death.

Deleted:

176.   The Defendants' actions increased and/or created the danger to Decedent which directly resulted in her harm and ultimate untimely death.

Deleted:

WHEREFORE, Plaintiffs sue Defendants and demand judgment against Defendants for all damages recoverable, including attorney's fees, under the laws of the United States and further demands a trial by jury on all issues so triable as of right by a jury.

## COUNT III
### Federal Civil Rights Violations 42 U.S.C. § 1983
### (Arbitrary Or Conscience-Shocking Conduct)

177.   The facts and allegations of Paragraphs 1 through 176 are incorporated by reference.

Deleted: 125

178.   This count is brought against Defendants Jake Heibel, Ph.D.; James Scott Smith, Ph.D.; Troy Kroll; F. Michael Wyant; Blaine Gaskill; Karin Bailey; Cathy Allen; Mary Washington; James Davis; and Rita Weaver in their individual capacities, as upon information and belief, they are employed by the State of Maryland by virtue of their relationship to the Board of Education.

179.   This count is brought against Defendant Gaskill in his official capacity to the extent, and upon information and belief, that in performing his functions as a School Resource Officer, Defendant Gaskill was an employee of the Board of County Commissioners of St. Mary's County as interpreted by the State Finance and Procurement Article §9-108.

180.   This count is also brought against John/Jane Does who were administrators, teachers, counselors, and/or school employees with Defendant BOE, who upon information and

belief, had knowledge of relevant issues hereto and/or had decision-making authority and/or authority to act and/or respond in their individual capacities.

181.    A state or local official is liable under 42 U.S.C. §1983 if the acts that perpetrated a violation of a person's rights were arbitrary or conscience shocking.

182.    At all times relevant, Decedent had a clearly established right to liberty, including her rights to personal safety and bodily integrity pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

183.    Decedent was seized in that she suffered harm, physical and/or emotional, by being shot at and ultimately murdered.

184.    Decedent was seized in that she was on school premises during school hours as mandated by Maryland law.

185.    At all times relevant to this complaint, Defendants, acting under the color of law, had a duty to perform their jobs and obey the laws of Maryland and the United States.

186.    At all times prior to this incident, and relevant hereto, upon information and belief, Defendants' knew they needed to employ safety vestibules, as well as metal detector devices and surveillance devices, among other safety protocols, to prevent and deter active shooter situations, as well as harassment of its students, and chose not to use them.

187.    At all times relevant hereto, Defendants, had an obligation to "promptly report all acts of violations of the law" to the school administrator such that existing laws and school policies can be enforced.

188.    At all times relevant hereto, "students in school, at school-sponsored activities, or traveling to and from school on school buses are the responsibility of the school, and school

Deleted:

Deleted:

Deleted: '

Deleted:  employees, servants, and/or agents

Deleted: ,

Deleted: Great Mills High School knew that it

Deleted: ,

Deleted: Great Mills High School employees, agents, and actors,

personnel" assigned to them act in a "loco parentis" capacity, such that they must take measures to ensure "the safety and well-being of its students".

189.   Defendants and Great Mills High School, upon information and belief, had metal detecting wands at their disposal which they chose not to use which would have prevented this incident.

190.   Defendants and Great Mills High School, upon information and belief, had safety vestibules that they chose not to engage which would have prevented this incident.

191.   Defendants and Great Mills High School, upon information and belief, had limited surveillance cameras that they chose not to watch or pay attention to that would have prevented this incident, and otherwise failed to engage additional surveillance that they knew would have prevented and deterred such an incident.

192.   Defendants, upon information and belief, had actual knowledge that Rollins was a threat to Decedent and chose not to escalate the information or take the information seriously, and as a direct result, was a cause of this incident.

193.   Upon information and belief, on a daily basis, Rollins would text, harass, and send social media requests to the Decedent during, before, and after school.

194.   Additionally, Rollins would frequently text, harass, and send social media requests to the Decedent's friends and social acquaintances to harass them.

195.   Rollins was physically abusive to Decedent in school.

196.   Rollins would grab, push, and yell at Decedent at school directly outside of classrooms during school hours on a repeated basis.  Rollins' actions were specifically observed by all around Decedent, including but not limited to, school personnel.

| Deleted: its |
| Deleted: it |
| Deleted: it |
| Deleted: it |
| Deleted: it |
| Deleted: Great Mills High School |

197.    Rollins would stalk Decedent around school, waiting for her directly outside of classrooms on a repeated basis.   Rollins' actions were specifically observed by all around Decedent, including but not limited to, school personnel.

198.    Repeatedly, Rollins would follow Decedent after school to the vehicle she would depart school in, despite Decedent not welcoming this. Rollins' actions were specifically observed by all around Decedent, including but not limited to, school personnel.

199.    Rollins would frequently grab Decedent by the wrists, in school, causing her excruciating pain.   Rollins' actions were specifically observed by all around Decedent, including but not limited to, school personnel.

200.    Decedent was repeatedly subjected to a series of threats, acts of intimidation, and physical assaults and attacks by Rollins.

201.    Upon information and belief, Defendants were aware of the above mentioned incidents.

| | Deleted: Defendant's employees |

202.    In the months leading up to this incident, Decedent's parents warned the school by way of directly advising the Defendant Kroll that they were concerned about their daughter's well-being specifically directed to Rollins.

| | Deleted: school's swim |
| | Deleted: coach |

203.    As a result of the parents advising Defendant Kroll, nothing was done nor escalated by the school.

| | Deleted: the |
| | Deleted: swim coach |

204.    Further, upon information and belief, no other Defendants who were made aware of Jaelynn's parents' concerns via Defendant Kroll took any further action.

| | Deleted: ' |
| | Deleted: , |

205.    A threat of a shooter at the school was made on February 20, 2018, less than one month before Jaelynn Willey was shot and murdered on school campus by Rollins.

41

206. A threat of an incident of mass violence was also made less than 24 hours before Jaelynn Willey was shot and murdered on school campus by Rollins.

207. Upon information and belief, despite Rollins physically attacking a fellow student on several occasions, and otherwise threatening multiple students on several occasions, Defendants did nothing to prevent the death of Decedent.

208. Defendants' actions were arbitrary and/or conscience-shocking.

209. Defendants' failure to detain and/or stop and/or engage with a known and recognized threat inside of a public high school shocks the conscience.

210. Defendants' actions of not implementing security measures, devices, and/or metal detecting wands at their disposal despite the threats is conscious-shocking and arbitrary.

211. Defendants' apathetic approach to dealing with known threats, instead of taking safety-measures where school shooting threats had recently been made, were arbitrary and conscience-shocking.

212. Defendants, through their policymaker and decision-makers, enacted policies, both in the form of actual policy, and in the form of woefully inadequate training, that demonstrated deliberate indifference to the rights of Decedent and that deliberate indifference caused the death of Decedent.

213. Defendants' actions and/or inactions were directly related to and a proximate cause of the death and injuries sustained by the Decedent and Plaintiffs.

214. As a result of Defendants' actions and/or inactions, Decedent was murdered and Plaintiffs were injured and seek compensatory and punitive damages in addition to reasonable attorney's fees.

42

**Deleted:** Great Mills High School

**Deleted:** '

**Deleted:** '

**Deleted:** '

**Deleted:** its

**Deleted:** '

**Deleted:** its

**Deleted:** '

**Deleted:** '

WHEREFORE, Plaintiffs sue Defendants and demand judgment against Defendants for all damages recoverable, including attorney's fees, under the laws of the United States and further demands a trial by jury on all issues so triable as of right by a jury.

**COUNT IV**
**(Deliberate Indifference and/or Actual Knowledge Under Title IX)**

215.    The facts and allegations of Paragraphs 1 through 214 are incorporated by reference.

216.    This count is brought against Defendants Board of Education; Jake Heibel, Ph.D.; James Scott Smith, Ph.D.; Troy Kroll; Karin Bailey; Cathy Allen; Mary Washington; Wyant; James Davis; and Rita Weaver in their official capacities, as upon information and belief, they are employed by the State of Maryland by virtue of their relationship to the Board of Education.

217.    To the extent Defendant Gaskill is employed by Defendant Board of Education, this count is brought against him in his official capacity.

218.    This count is also brought against John/Jane Does who were administrators, teachers, counselors, and/or school employees with Defendant BOE or Defendant County, who upon information and belief, had knowledge of relevant issues hereto and/or had decision-making authority and/or authority to act and/or respond in their official capacities.

219.    Defendant Board of Education receives federal funding and is therefore subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), and therefore, the above named Defendants also receive federal funding in their official capacities.

220.    Defendants, upon information and belief, had "actual knowledge" that Rollins was stalking, sexually harassing, abusing, intimidating, and otherwise harming and threatening Jaelynn on the basis of her sex and information sufficient to alert that Jaelynn was a victim of dating violence as stated above.

221.   Upon information and belief, this knowledge included prior threats to the Great Mills High School of mass violence, including one within 24 hours.

222.   The vast majority of stalking, abuse, intimidation, dating violence, sexual harassment, and other abuse committed by Rollins occurred on school grounds before, during, and after school hours including, upon information and belief, through the use of wireless internet at school.

223.   Actual knowledge of the stalking, abuse, intimidation, dating violence, sexual harassment, and gender based discrimination at issue, from Rollins, was obtained by the appropriate persons at St. Mary's BOE by virtue of, upon information and belief, Defendant Kroll and Defendant individuals properly reporting same, and also, upon information and belief, discovering the person committing the threats of mass violence prior to this incident.

224.   These named Defendants individually and jointly exercised substantial control over activities occurring on school grounds and over the school's students, and upon information and belief, had authority to address the alleged discrimination and institute corrective measures.

225.   Despite this authority, St. Mary's BOE, and named Defendants, took no action constituting deliberate indifference, and further permitted Rollins to enter school with a gun, and left Jaelynn to be murdered on school grounds, in a school hallway, while school was in session.

226.   These named Defendants individually and jointly exercised substantial control over activities occurring on school grounds and over its students such as Rollins including policies regarding sexual harassment and/or harassment, including violence, extending to students, as well as timely remediating harassment, including violence, and/or sexual harassment, and accordingly, these officials had the authority and ability to take appropriate and timely remedial action to end the harassment by, among other things:

44

Deleted: teachers, coaches, representatives, and/or employees

Deleted: <#>Accordingly, St. Mary's BOE had the authority and ability to take appropriate and timely remedial action to end the harassment by, among other things:¶
<#> ¶
<#>a. enforcing St. Mary BOE's policies and procedures;¶
<#> ¶
<#>b. investigating the allegations against Rollins;¶
<#> ¶
<#>c. banning Rollins from campus;¶
<#> ¶
<#>d. contacting and coordinating with local police authorities;¶
<#> ¶
<#>e contacting and coordinating with school counseling and security personnel;¶
<#> ¶
<#>f. providing referrals to victim advocacy and/or counseling services;¶
<#> ¶
<#>g. providing classroom/protection adjustments;¶
<#> ¶
<#>h. providing academic adjustments;¶
<#> ¶
<#>i imposing no-contact directives;¶
<#> ¶
<#>j. providing security escorts;¶
<#> ¶
<#>k. providing other safety and protective measures;¶
<#> ¶
<#>l. providing educational training;¶
<#> ¶
<#>m. reviewing or revising St. Mary's BOE policies or practices; and/or¶
<#> ¶
<#>n. considering broader remedial action.¶

Deleted: <#>Moreover, actual knowledge of the stalking, abuse, intimidation, dating violence, sexual harassment, and gender based discrimination at issue was obtained by the appropriate persons from St. Mary's BOE, including but not limited to various teachers, students, coaches, and/or other St. Mary's BOE officials at the school.¶

Deleted: <#>School agents, employees, and/or servants

Deleted: <#> Again, the St. Mary's BOE's

Deleted: <#> A

a. enforcing St. Mary's BOE's policies and procedures;

b. investigating the allegations against Rollins;

c. contacting and coordinating with Rollins and his parents and relevant security and/or police authority;

d. detaining, suspending, expelling and/or arresting Rollins for suspected criminal activity;

e. arranging, facilitating or providing immediate and adequate notice of the rights of victims and of the remedies and services available to victims of stalking and/or domestic violence, including but not limited to information sufficient to obtain an order of protection or a stalking injunction from the courts;

f. banning Rollins from school grounds;

g. contacting and coordinating with local police authorities;

h. contacting and coordinating with school counseling and security personnel;

i. providing referrals to victim advocacy and/or counseling services;

j. providing classroom/protection adjustments;

k. providing academic adjustments;

l. imposing no-contact directives

m. providing security escorts;

n. providing other safety and protective measures;

o. providing educational training;

p. reviewing or revising St. Mary's BOE policies or practices; and/or

q. considering broader remedial action.

227.   Despite this authority, Defendants took no action to remedy this severe, pervasive and objectively offense hostile and abusive educational environment, constituting deliberate indifference, permitted Rollins to enter school with a gun, and left Jaelynn to be murdered on school grounds, in a school hallway, while school was in session.

**Deleted:** St. Mary's BOE

228.  Defendants, upon information and belief, were deliberately indifferent to the ongoing stalking, abuse, intimidation, dating violence, sexual harassment, and gender based discrimination occurring on their campus and specifically directed towards one of their female students, and their response to the information that they had received about Jaelynn's situation was clearly unreasonable in light of the known circumstances, ultimately resulting in Jaelynn's brutal murder.

229.  Indeed, despite having the ability and authority to do so, Defendants, upon information and belief, consciously failed to investigate the allegations against Rollins and deliberately failed to take any action that was reasonably calculated to end the stalking, abuse, intimidation, dating violence, sexual harassment, or gender based discrimination, thereby exposing Jaelynn and making her more vulnerable to ongoing stalking, abuse, intimidation, domestic violence, dating violence, sexual harassment, and gender based discrimination and creating a hostile educational environment in which Jaelynn felt unsafe and was in fact unsafe on school grounds, which ultimately resulted in her brutal murder.

230.  The stalking, abuse, intimidation, dating violence, sexual harassment, and gender based discrimination, along with the failure to properly protect Decedent despite knowledge of threats of mass violence, was so severe, pervasive, and objectively offensive that it deprived Jaelynn of access to educational opportunities and benefits during her life and upon her murder.

231.  To the extent that St. Mary's BOE officials, representatives, teachers, administrators, coaches, employees, agents, servants, or other appropriate persons who had the ability and authority to take remedial action obtained knowledge within the course and scope of their employment or agency relationship with St. Mary's BOE, such knowledge is imputed to the

St. Mary's BOE and to other St. Mary's BOE officials or other appropriate persons at the St. Mary's BOE who had the ability and authority to take remedial action.

232.    St. Mary's BOE is independently liable for action that it took or failed to take in light of the knowledge that was imputed to it through its administrators, teachers, employees, coaches, agents and/or through the appropriate persons who had the ability and authority to take remedial action.

WHEREFORE, Plaintiffs sue Defendants and demand judgment against Defendants for all damages recoverable, including attorney's fees, under the laws of the United States and further demands a trial by jury on all issues so triable as of right by a jury.

**COUNT V**
**(Failure to Train – Violation of Equal Protection Under Fourteenth Amendment – 42 U.S.C. § 1983)**

233.    The facts and allegations of Paragraphs 1 through 232 are incorporated by reference.

234.    This count is brought against Defendant County and Defendant Blaine Gaskill, in his official capacity with the County to the extent, and upon information and belief, that in performing his functions as a School Resource Officer, Defendant Gaskill was an employee of the Board of County Commissioners of St. Mary's County as interpreted by the State Finance and Procurement Article §9-108.

235.    This count is also brought against John/Jane Does who were employed by Defendant County, who upon information and belief, had knowledge of relevant issues hereto and/or had decision-making authority and/or authority to act and/or respond in their official capacities.

| Deleted: 175 |

47

236.    The Fourteenth Amendment of the United States Constitution guarantees equal protection and Due Process under the laws to all citizens of the United States.

237.    Under the Fourteenth Amendment, Plaintiff had the right, as a public school student, to personal security, bodily integrity, Due Process and Equal Protection of Laws.

238.    Defendant County executed all policies and procedures that were relevant at the time of all incidents and is responsible for training and supervising all employees to perform their jobs.

239.    Defendant Gaskill was and is an employee of Defendant County and at all times relevant was working on behalf of the Defendant County.

240.    Upon information and belief, at all times hereto, Defendant was under the direct supervision, employment, and control of Defendant County.

241.    Defendants were state actors acting under the color of law.

242.    At all times relevant hereto, the Defendant County was a local governing body and administrator with final policy making authority who was acting under color of state law and, on information and belief, engaged in policy making to supervise and control all policies, practices, rules, guidelines, customs, and regulations regarding the school and its students.

243.    At all times relevant hereto, Defendant County's administrators, agents, employees, and/or servants, including Defendant Gaskill, individually and jointly, had final policymaking authority by way of their official capacity with the Defendant County, who were acting under color of state law and who, on information and belief, engaged in policy making to supervise and control all policies practices, rules, guidelines, customs, and regulations regarding the school security and its interaction with students.

| Deleted: St. Mary's BOE |

| Deleted: St. Mary's BOE's |

| Deleted: St. Mary's BOE |

48

244.    At all times relevant hereto. Defendants, individually and jointly. had duties to train. but failed to properly or sufficiently train their officers with regard to, among other things. mass violence. shootings. copy-cat attacks. threats of mass violence. stalking. abuse. TDV. intimidation. domestic violence. dating violence. intimate partner violence, sexual misconduct, sexual harassment, or gender based discrimination; rights, remedies, duties, requirements, and obligations under Title IX; recognizing and identifying the warning signs of abusive behavior, mass violence threats; school shooting threats. investigating, reporting, and remedying the effects of sexual harassment and gender based discrimination against students like Jaelynn; properly responding to and remediating continued sexual harassment and gender based discrimination occurring on its campus and specifically directed towards students like Jaelynn after such has been reported; gender based stereotypes and the rights, remedies, duties, requirements, and obligations under the equal protection clause of the Fourteenth Amendment.

245.    Based on this lack of action. Defendants clearly failed to adequately train their employees to recognize the warning signs of abusive behavior. and in doing so. furthered a custom. practice. policy. and/or usage of the Defendants to ignore abusive and harassing behavior of a dating violence and sexual nature within the Sheriff's Department and Great Mills High School.

246.    Defendant County, failed to train officers. including Defendant Gaskill. despite the plainly obvious need for training with regard to, among other things, mass shootings. threats of school violence. copy-cat school shootings, stalking, abuse, intimidation, domestic violence, TDV, intimate partner violence, sexual misconduct, sexual harassment, or gender based discrimination; rights, remedies, duties, requirements, and obligations under Title IX; recognizing and identifying the warning signs of mass shooting. school shooter violence. school shooting threats. abusive behavior; investigating, reporting, and remedying the effects of sexual harassment and gender

49

Deleted: St. Mary's BOE's administrators, agents, employees, and/or servants

Deleted: officials, administrators, employees, agents, staff, students, and parents

Deleted: discrimination; rights

Deleted: St. Mary's BOE's administrators, agents, employees, and/or servants, individually and jointly

Deleted: ,

Deleted: their officials, administrators, employees, agents, staff, students, and parents

Deleted: discrimination; rights

based discrimination against students like Jaelynn; properly responding to and remediating continued sexual harassment and gender based discrimination occurring on its campus and specifically directed towards students like Jaelynn after such has been reported; gender based stereotypes and the rights, remedies, duties, requirements, and obligations under the equal protection clause of the Fourteenth Amendment.

247.   Defendant St. Mary's County failed to adequately train, supervise, and discipline County officers, sheriffs, and deputies, including Defendant Gaskill, to protect students from threats of physical violence, shootings, and/or dating violence in general, not only in schools or when confronting minors specifically.

248.   Defendants each subjected Plaintiff to violations of her rights to personal security, bodily integrity, Due Process and Equal Protection of Laws by exposing Plaintiff to an armed student, after knowledge of a mass threat shooting, prior instances of teen dating violence, stalking, sexual harassment, willfully disregarding the Plaintiff's safety, failing to establish and follow proper security, domestic violence, and mass shooting policies, failing to adequately supervise Defendant Gaskill, and manifesting deliberate indifference to the sexual harassment, violence, and death by not having and implementing proper policies.

249.   Defendant's failure to train effectively denied Jaelynn's clearly established federal rights and Constitutional rights.  Defendant's failure to train officers was deliberate, reckless and in callous indifference to Jaelynn's federally protected rights.

250.   Numerous authorities, including the U.S. Supreme Court, U.S. Department of Education, and the State of Maryland made clear and gave notice to Defendants to confront mass shootings, copy-cat violence, school shootings, sexual harassment and abuse directed toward students with regularity, given the high predictability, recurrence, and prevalence of sexual assault,

harassment, and abuse on school grounds and at school. Thus, it was foreseeable and inevitable that Defendant Gaskill would encounter recurrent situations involving sexual abuse that implicated students' Constitutional and federal rights, and it did, in fact, encounter those recurring situations.

251.    The lack of training left Defendant's officers, including Defendant Gaskill, unequipped to prohibit or discourage readily foreseeable conduct, despite the clearly established and well known dangers of mass violence, copy-cat shooters, school shooting threats, sexual harassment, teen dating violence on school grounds and on the Great Mills High School campus in particular. As a result, Defendants, individually and jointly, subjected Jaelynn to the deprivation of her constitutional right to equal protection under the Fourteenth Amendment and of her federal civil rights under Title IX.

252.    Upon information and belief, Defendant County's actual and/or constructive knowledge and deliberate policy and custom of maintaining the bare minimum standards for protecting students from threats of mass violence, copy-cat school shootings, and deliberate indifference to these threats has resulted in a string of violent assaults against students who are put in their care and who are guaranteed the right to be safe in their school. As a result of this negligence, the Plaintiff suffered direct harm in violation of her Constitutional Rights.

253.    Upon information and belief, Defendant County's actual and/or constructive knowledge and deliberate policy and custom of not taking actual acts of and women's claims/reports of domestic and/or dating violence seriously has resulted in a string of violent acts against women as a result of teen and dating violence. As a result of this negligence, the Plaintiff suffered direct harm in violation of her Constitutional Rights.

254.    Upon information and belief, Defendants were deliberately indifferent to threats of mass violence, copy-cat school shootings, and student on student gun and teen dating violence,

255.   Upon information and belief, Defendants had a custom, policy, and/or practice not to utilize the tools available to prevent such actions via screening, metal detectors, wands, etc.

256.   Upon information and belief, Defendants had a custom, policy, and/or practice of not taking threats of domestic violence seriously, which resulted in the direct harm and death of Decedent.

257.   Upon information and belief, Defendant County failed to adequately train and supervise its officers on domestic and dating violence, which manifested deliberate indifference to the rights of citizens.

258.   Upon information and belief, Defendants had a custom, policy, and/or practice not to take appropriate security measures when threats of gun and mass violence, and domestic violence existed, showing deliberate indifference to life, specifically Decedent, in violation of her Constitutional Rights.

259.   Upon information and belief, Defendants with actual and/or constructive knowledge and deliberate indifference and manifested through failure to train and a persistent and wide spread practice, incorporated a policy and/or custom of permitting its law enforcement officers to improperly act in violation of Plaintiff's constitutional rights.

260.   Upon information and belief, Defendants had actual knowledge of the custom and usage by their policymakers, the Defendants failed to correct or terminate these improper customs and usage.

261.   Upon information and belief, Defendant Gaskill's actual knowledge and deliberate indifference and his actions were in furtherance of the above stated policies, customs, and procedures.

262.   Upon information and belief, Defendant County promulgated and/or sanctioned these unconstitutional practices and/or was indifferent to the development of the unconstitutional customs.

263.   Defendant County failed to adequately train its officers, and thereby prohibit or discourage foreseeable conduct, despite the clearly established and well-known known dangers of mass violence, shooting violence, stalking, abuse, intimidation, domestic violence, dating violence, intimate partner violence, sexual misconduct, sexual harassment, and gender based discrimination faced by students on school grounds in the United States, and thereby was deliberately indifferent.

264.   Defendant County had general knowledge of a serious and obvious risk of stalking, sexual harassment, and teen dating violence and domestic violence, but was deliberately indifferent to the need to implement policies and programs to address the risk, despite generally acknowledging the need for such policies, or, in the alternative, implemented said policies and chose not to utilize or enforce them.

265.   Moreover, Defendants, upon information and belief, had a policy and/or custom of treating women differently based on irrational gender stereotypes; of acquiescing in sexual harassment; of failing to believe women who report stalking, dating violence, harassment, bullying, and/or sexual harassment; of failing to investigate or otherwise respond reasonably to reports of stalking, dating violence, harassment, bullying, and/or sexual harassment against women; of being deliberately indifferent to reports of same against women; of otherwise failing to take reports of stalking, domestic violence, dating violence, harassment, bullying, and/or sexual harassment against women seriously; and of failing to implement appropriate policies and

procedures intended to manage issues relating to stalking, dating violence, harassment, bullying, and/or sexual harassment.

266.    Jaelynn's death arose from a set of circumstances that should have alerted the Defendants to the fact that one of their students was in extreme peril of being seriously harmed or killed as a result of dating violence. In addition to direct reports of dating violence, the classic warning signs of such behavior were repeatedly reported to the School, Defendants, and their agents and/or employees, but no investigation occurred, no plans were developed or implemented, and no effort was made to take any meaningful action reasonably calculated to end the harassment or to otherwise prohibit Rollins from having ongoing access to the school and Jaelynn.

267.    Said Defendants failed to take said complaints seriously and disregarded the concerns lodged by the Decedent's mother, and in doing so, commenced with actual knowledge and indifference to the constitutional violations and thus, tacitly authorized the ongoing constitutional violations of the Decedent.

268.    Upon information and belief, the Defendants dismissed their obligation to take any action based on the fact that Jaelynn had previously been in a consensual relationship. Thus, Defendants did not take Rollins' actions or Jaelynn or her parents' reported concerns seriously, thereby suggesting that Jaelynn, like most female high school students, likely exaggerated the circumstances and/or assumed that Jaelynn, like most female high school students, was unreasonable, hysterical, hypersensitive, paranoid, overreacting to the situation, and not being truthful.

269.    Defendants, upon information and belief, had actual knowledge that Rollins was a threat to Decedent and chose not to escalate the information or take the information seriously and, as a direct result, was a cause of this incident.

270. Defendants have and/or had unconstitutional customs or policies of (a) failing to prepare for, intervene, prevent mass school violence, weapons in school and copy-cat attacks (b) failing to protect women as victims of dating violence, sexual harassment, and/stalking; (c) failing to investigate, prevent, intervene, and protect students and Jaelynn from known threats of mass school violence, (d) failing to adequately train and supervise employees with maintaining, preserving, and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

271. This has resulted in the violation of the Decedent's right to be free from sex-based harassment, sex-based violence, sexual assault, and thus impaired her access to educational opportunities and the right to be safe in a public school environment.

272. Defendants' policy, custom, and/or practices played a direct part in the deprivation of Plaintiff's rights resulting in her attack and death.

273. On information and belief, the Defendants have followed these unconstitutional customs and policies not only with regard to Plaintiff but also with regard to criminal and tortuous misconduct against other students and female victims of dating violence, sexual harassment, stalking, and/or domestic violence.

274. As a direct and proximate result of Defendants, individually and jointly, actions, inactions, deliberate indifference to and violation of Jaelynn's clearly established Constitutional and federal rights, Jaelynn suffered injuries, including but not limited to emotional distress, psychological trauma, severe physical harm, and death.

WHEREFORE, Plaintiffs sue Defendants and demand judgment against Defendants for all damages recoverable, including attorney's fees, under the laws of the United States and further demands a trial by jury on all issues so triable as of right by a jury.

**COUNT VI**
**(Negligence)**

275.   The facts and allegations of Paragraphs 1 through 274 are incorporated by reference.

276.   Defendants are responsible for the operation, security, management, budgeting, and all other aspects of the St. Mary's County school system, including Great Mills High School.

277.   Defendants are separately and jointly responsible for the safety, security, and other protective operations with respect to students at Great Mills High School.

278.   Defendants had a special relationship with students which gives rise to a duty of care.

279.   At all times relevant and material hereto, Defendant County had a duty to train and supervise any and all employees of Defendant County, and further to establish and enforce rules concerning reasonable supervision for the protection of students, including the Decedent; and to provide sufficient and adequately trained personnel to facilitate the safety of the students.

280.   At all relevant and material times, Defendants had a duty to act reasonably to protect students who are in their care, custody and control by supervising and exercising control over its pupils with reasonable care so as to prevent harm to others, including the Plaintiff. Further, the Defendants and their agents as employees, in their official and individual capacities, had the actual ability and authority to do so.

281.   At all times relevant, Defendants through their agents, servants, and/or employees, owed a duty to their students and invitees, to exercise reasonable and ordinary care to maintain its premises, including Great Mills High School, in a condition reasonably safe for use by their students, including Decedent.

56

---

Deleted: 187

Deleted: is

Deleted: s

Deleted: its

Deleted: p

Deleted: its

Deleted: its

Deleted: its

Deleted: its

282.    The duty of care owed by the Defendants and school personnel incudes the duty to use reasonable measures to protect students from known threats of harm and foreseeable acts of violence.

283.    Furthermore, public school teachers and principals have a statutory duty to supervise students on school grounds.

284.    This duty to supervise includes enforcing the rules and regulations necessary for the protection of students.

285.    High school students who are statutorily-mandated to attend school have a right to a safe campus.

286.    School districts have an affirmative duty to devise and implement plans to address the threat of school crime.

287.    Defendants had a duty to take such precautions as were reasonably necessary to protect its students from reasonably foreseeable criminal attacks on school premises.

288.    Defendants knew or should have known a criminal attack was likely to occur.

289.    Prior to the incident, Defendants was aware of shooting threats, were warned specifically of Rollins' violent behavior, and/or had witnessed Rollins' violent behavior on and outside of school property.

**Deleted: was**

290.    Despite Rollins' history of threats, warnings, and violent behavior, of which Defendants knew or should have known, Defendants failed to take reasonable measures to address the foreseeable risk that Rollins posed to students and others on the subject premises, including Decedent.

291.    At all times material, Defendants, through their agents, servants, and/or employees, knew or in the exercise of reasonable care should have known that there had been numerous

**Deleted: its**

criminal acts and attacks perpetrated on students and employees at numerous high schools, middle schools, and other schools throughout the United States, and that further criminal acts and attacks were reasonably likely to be perpetrated on the Defendants' students, unless the Defendants took reasonable steps to provide proper security for such individuals.

292.   Specifically, Defendants knew of school shooting threats prior to the incident and knew or should have known of student Rollins' violent behavior.

293.   The Defendants, through their agents, servants and/or employees, were in an exclusively superior position to students such as Decedent, to take the measures necessary to provide for security on school premises.

294.   Defendants had the measures to provide for security on school premises but did not implement them.

295.   At the above mentioned time and place, Defendants, by and through their agents, servants, and/or employees, breached their duty to exercise ordinary and reasonable care for the safety and protection of the students, including Decedent, through the following acts of omission or commission:

   a.   Failing to provide adequate security for their students, employees, licensees, and invitees, including Decedent;

   b.   Failing to warn their students, parents of students, employees, licensees, and invitees, including Decedent, of the nature and character of the threat posed by Rollins, when they knew or in the exercise of reasonable care should have known that Rollins had a significant history of violence, making threats of violence, including threats of violence involving the use of firearms, at school;

   c.   Failing to warn their students, parents of students, employees, licensees, and

58

invitees, including Decedent, of the nature and character of the threat of a school

shooting, when they knew or in the exercise of reasonable care should have known

that there were recent school shooting threats made;

d.  Failing to adequately police, patrol, guard, deter, and otherwise provide reasonable

protection for their students, employees, licensees, and invitees, when Defendants

knew or should have known of foreseeable criminal acts;

e.  Failing to reasonably hire and/or retain and/or supervise adequate security

personnel to patrol and/or monitor the premises of Great Mills High School, thereby

protecting their students, employees, licensees, and invitees, including Decedent;

f.  Failing to have proper procedures in place for hiring, training, and/or supervising

school resource officers, monitors, police officers, or other staff responsible for

school security;

g.  Failing to install and use security measures such as metal detectors, wands, and

other security features;

h.  Failing to have a sufficient number of security guards in visible areas to deter crime,

thereby protecting their students, employees, licensees, and invitees, including

Decedent;

i.  Failing to have adequate mechanisms for security personnel, staff, employees,

students and others within the school community to report real threats or other

security concerns against themselves or others;

j.  Failing to properly train employees, administrators, guards, and/or other employees

to adequately supervise the campus in such a way that would prevent acts of

violence;

**Deleted:** it

**Deleted:** its

**Deleted:** its

**Deleted:** its

k.  Failing to implement or follow adequate security policies, security measures, and security procedures necessary to protect Decedent and other students, employees, licensees, and invitees;

l.  Failing to take additional security measures after being put on notice that the security measures in force were inadequate;

m.  Failing to adequately provide an overall security plan that would meet the known industry standards and customs for safety in schools;

n.  Failing to adequately screen or monitor those entering the premises for the possession of weapons;

o.  Failing to implement reasonable crime prevention through environmental design concepts which would have hardened Great Mills High School against foreseeable violent crime such as the subject incident;

p.  Acting or failing to act consistently with the relevant policies, procedures, guidelines, and training relating to the protection of human life that were in effect at the time of the shooting.

296.  At the above mentioned time and place, Defendants, by and through their agents, servants, and/or employees, breached their duty to exercise ordinary and reasonable care for the safety and protection of the students, including Decedent, through the following acts of omission or commission:

a.  To train and supervise any and all employees to maintain student safety, including to prevent student-on-student assaults and bullying;

b.  To establish and enforce rules concerning reasonable supervision for the protection of the students;

| Deleted: its |
| Deleted: its |

60

c.  To use reasonable care to supervise and control the classrooms and students in order to prevent the students from being assaulted;

d.  To take precautions against creating unreasonable risks of injury to other persons and students;

e.  To maintain good order and discipline in the classroom and on school grounds;

f.  To investigate complaints from students, parents of students, and others;

g.  To take proper and reasonable precautions to provide protection for students when there is a reported risk to students on school grounds;

h.  To provide reasonable monitoring of areas outside of the classroom including but not limited to the hallways, bathrooms, gymnasiums, offices, and other school property; and

i.  To properly and reasonably respond to assaults and attacks on students including, but no limited to, proper investigation, separation, protection, and reporting of attacks and assaults.

297.  As a direct and proximate result of the negligence of Defendants, Decedent suffered bodily harm on March 20, 2018 from an assault and battery on the subject school premises which caused her death, and her personal representative and survivors have suffered and will continue to suffer damages into the future, including as the applicable law may provide:

a.  Past and future mental pain and suffering of Plaintiffs;

b.  Past and future loss of Decedent's support and services;

c.  The prospective net accumulations of the estate of Decedent;

d.  The expense of medical care and funeral arrangements due to the death Jaelynn Willey; and

e.   Any and all other damages which the applicable law allows.

298.   Decedent was not contributorily negligent.

WHEREFORE, Plaintiffs sue Defendants and demand judgment against Defendants for all

damages recoverable under the laws of Maryland and the United States and further demands a trial

by jury on all issues so triable as of right by a jury.

| Deleted: s |

### COUNT VII
**(Premises Liability)**

299.   The facts and allegations of Paragraphs 1 through 298 are incorporated by

reference.

| Deleted: 209 |

300.   Defendant Board of Education is responsible for the operation, management,

budgeting, and all other aspects of the St. Mary's County school system, including Great Mills

High School.

301.   Defendants are separately and jointly responsible for the safety, security, and other

protective operations with respect to students at Great Mills High School.

302.   Defendants have a special relationship with students which gives rise to a duty of

care.

| Deleted: s |

303.   At all times relevant and material hereto, Defendants had a duty to train and

supervise any and all employees of Defendants, and further to establish and enforce rules

concerning reasonable supervision for the protection of students, including the Decedent; and to

provide sufficient and adequately trained personnel to facilitate the safety of the students.

304.   At all relevant and material times, Defendants had a duty to act reasonably to

protect students who are in their care, custody and control by supervising and exercising control

| Deleted: its |

over its pupils with reasonable care so as to prevent harm to others, including the plaintiff. Further,

the Defendants and their agents as employees, in their official and individual capacities, had the actual ability and authority to do.

305.    At all times relevant, Defendants through their agents, servants, and/or employees, owed a duty to their students and invitees, to exercise reasonable and ordinary care to maintain their premises, including Great Mills High School, in a condition reasonably safe for use by their students, including Decedent.

306.    The duty of care owed by the Defendants includes the duty to use reasonable measures to protect students from known threats of harm and foreseeable acts of violence.

307.    Furthermore, public school teachers and principals have a statutory duty to supervise students on school grounds.

308.    This duty to supervise includes enforcing the rules and regulations necessary for the protection of students.

309.    High school students who are statutorily-mandated to attend school, have a right to a safe campus.

310.    School districts and Sheriff's Departments have an affirmative duty to devise and implement plans to address the threat of school crime.

311.    Defendants had a duty to take such precautions as were reasonably necessary to protect their students from reasonably foreseeable criminal attacks on school premises.

312.    Defendants knew or should have known a criminal attack was likely to occur.

313.    Prior to the incident, Defendants were aware of shooting threats, were warned specifically of Rollins' violent behavior, and/or had witnessed Rollins' violent behavior on and outside of school property.

63

| Deleted: its |
| Deleted: its |
| Deleted: its |
| Deleted: its |
| Deleted: its |
| Deleted: and school personnel |
| Deleted: its |
| Deleted: as |
| Deleted: as |

314.    Despite Rollins' history of threats, warnings, and violent behavior, of which Defendants knew or should have known, Defendants failed to take reasonable measures to address the foreseeable risk that Rollins posed to students and others on the subject premises, including Decedent.

315.    At all times material, Defendants, through their agents, servants, and/or employees, knew or in the exercise of reasonable care should have known, that there had been numerous criminal acts and attacks perpetrated on students and employees at numerous high schools, middle schools, and other schools throughout the United States, and that further criminal acts and attacks were reasonably likely to be perpetrated on the students, unless the Defendant took reasonable steps to provide proper security for such individuals.

316.    Specifically, Defendants knew of school shooting threats prior to the incident and knew or should have known of student Rollins' violent behavior.

317.    The Defendants, through their agents, servants, and/or employees, were in an exclusively superior position to students such as Decedent, to take the measures necessary to provide for security on school premises.

318.    Defendants had the measures to provide for security on school premises but did not implement them.

319.    At the above mentioned time and place, Defendants, by and through their agents, servants and/or employees, breached their duty to exercise ordinary and reasonable care for the safety and protection of the students, including Decedent, through the following acts of omission or commission:

      a.  Failing to provide adequate security for their students, employees, licensees, and invitees, including Decedent;

64

Deleted: its

Deleted: Defendant's

Deleted: its
Deleted: as

Deleted: its

Deleted: its

Deleted: its

b. Failing to warn their students, parents of students, employees, licensees, and invitees, including Decedent, of the nature and character of the threat posed by Rollins, when they knew or in the exercise of reasonable care should have known that Rollins had a significant history of violence, making threats of violence, including threats of violence involving the use of firearms, at school;

c. Failing to warn their students, parents of students, employees, licensees, and invitees, including Decedent, of the nature and character of the threat of a school shooting, when they knew or in the exercise of reasonable care should have known that there were recent school shooting threats made;

d. Failing to adequately police, patrol, guard, deter, and otherwise provide reasonable protection for their students, employees, licensees, and invitees, when Defendant knew or should have known of foreseeable criminal acts;

e. Failing to reasonably hire and/or retain and/or supervise adequate security personnel to patrol and/or monitor the premises of Great Mills High School, thereby protecting their students, employees, licensees, and invitees, including Decedent;

f. Failing to have proper procedures in place for hiring, training, and/or supervising school resource officers, monitors, police officers, or other staff responsible for school security;

g. Failing to install and use security measures such as metal detectors, wands, and other security features;

h. Failing to have a sufficient number of security guards in visible areas to deter crime, thereby protecting their students, employees, licensees, and invitees, including Decedent;

i.  Failing to have adequate mechanisms for security personnel, staff, employees, students and others within the school community to report real threats or other security concerns against themselves or others;

j.  Failing to properly train employees, administrators, guards, and/or other employees to adequately supervise the campus in such a way that would prevent acts of violence;

k.  Failing to implement or follow adequate security policies, security measures, and security procedures necessary to protect Decedent and other students, employees, licensees, and invitees;

l.  Failing to take additional security measures after being put on notice that the security measures in force were inadequate;

m.  Failing to adequately provide an overall security plan that would meet the known industry standards and customs for safety in schools;

n.  Failing to adequately screen or monitor those entering the premises for the possession of weapons;

o.  Failing to implement reasonable crime prevention through environmental design concepts which would have hardened Great Mills High School against foreseeable violent crime such as the subject incident;

p.  Acting or failing to act consistently with the relevant policies, procedures, guidelines, and training relating to the protection of human life that were in effect at the time of the shooting.

320.  At the above mentioned time and place, Defendants, by and through their agents, servants and/or employees, breached their duty to exercise ordinary and reasonable care for the

| Deleted: its |
| Deleted: its |

66

safety and protection of the students, including Decedent, through the following acts of omission or commission:

    f.    To train and supervise any and all employees to maintain student safety, including to prevent student-on-student assaults and bullying;

    g.    To establish and enforce rules concerning reasonable supervision for the protection of the students;

    h.    To use reasonable care to supervise and control the classrooms and students in order to prevent the students from being assaulted;

    i.    To take precautions against creating unreasonable risks of injury to other persons and students;

    j.    To maintain good order and discipline in the classroom and on school grounds;

    k.    To investigate complaints from students, parents of students and others;

    l.    To take proper and reasonable precautions to provide protection for students when there is a reported risk to students on school grounds;

    m.    To provide reasonable monitoring of areas outside of the classroom including but not limited to the hallways, bathrooms, gymnasiums, offices and other school property; and

    n.    To properly and reasonably respond to assaults and attacks on students including, but no limited to, proper investigation, separation, protection and reporting of attacks and assaults.

    321.    As a direct and proximate result of the negligence of Defendants, Decedent suffered bodily harm on March 20, 2018 from an assault and battery on the subject school premises which

caused her death, and her personal representative and survivors have suffered and will continue to

suffer damages into the future, including as the applicable law may provide:

> o.   Past and future mental pain and suffering of Plaintiffs;
>
> p.   Past and future loss of Decedent's support and services;
>
> q.   The prospective net accumulations of the estate of Decedent;
>
> r.   The expense of medical care and funeral arrangements due to the death
>      Jaelynn Willey; and
>
> s.   Any and all other damages which the applicable law allows.

WHEREFORE, Plaintiffs sue Defendants and demand judgment against Defendants for all

damages recoverable under the laws of Maryland and the United States and further demands a trial

by jury on all issues so triable as of right by a jury.

**COUNT VIII**
**(Wrongful Death)**

322.   The facts and allegations of Paragraphs 1 through 321 are incorporated by

reference.

| Deleted: 231 |
| --- |

323.   This claim for damages results from the wrongful death of Jaelynn Willey. This

claim is based upon the facts and legal theories more fully set out herein.

324.   At the time of death, the decedent was otherwise in reasonably good health with a

normal life expectancy.

325.   The decedent was a loving and dutiful child and provided reasonable services to

her parents.

326.   As a direct and proximate result of the above-mentioned actions of Defendants,

individually through their actual and/or apparent agents, servants, and employees, Plaintiffs lost

| Deleted: its |
| --- |

their daughter prematurely, and they suffered and will continue to suffer mental anguish, emotional

pain and suffering, loss of society, companionship, comfort, protection, guidance, attention, and

care, among other non-economic damages permitted in a wrongful death action.

WHEREFORE, Plaintiffs bring this action against the Defendants and seek damages that

will adequately and fairly compensate them, plus costs, interest and such other and further relief

as may be deemed appropriate.   The damages sought are in excess of the required jurisdictional

amount.

## COUNT IX
### (Survival Action)

327.    The facts and allegations of Paragraphs 1 through 326 are incorporated by

reference.

328.    Melissa and Daniel Willey, as Personal Representatives of the Estate of Jaelynn

Willey, by and through their undersigned attorneys, hereby sues the Defendant and the Estate's

cause of action states as follows:

329.    Defendants' actions, by and through their agents, employees, and/or servants, owed

Decedent a duty and breached that duty as laid out in the preceding paragraphs.

330.    As a direct and proximate result of the above-mentioned breaches by Defendants,

Decedent was shot and murdered by a fellow student during school hours on school property.   As

a further direct and proximate cause, Decedent suffered physical, mental, and emotional pain and

suffering, fear, anxiety, and anguish prior to her death. She also incurred medical expenses, and

her Estate has also incurred funeral bills.

WHEREFORE, Melissa and Daniel Willey, as Personal Representatives of the Estate of

Jaelynn Willey, by and through their undersigned counsel, bring this action against the Defendants

69

and seek damages that will adequately and fairly compensate the Estate, plus costs, interest and such other further relief as may be deemed appropriate.   The damages sought are in excess of the required jurisdictional amount.

### COUNT X
### (Respondent Superior)

331.   Plaintiffs adopt by reference the allegations contained in paragraphs 1 through 330, and all other counts of this Complaint with the same effect as if herein fully set forth.

332.   At all times relevant hereto Defendant Board of Education and Board of Commissioners' agents, employees, servants, and/or contractors were acting in the scope of their employment for these Defendants.

333.   As a result, Defendants are responsible for the aforementioned actionable conduct and acts and omissions of said employees, agents, servants, and/or contractors.

WHEREFORE, Plaintiffs sue Defendants and demand judgment against Defendants for all damages recoverable under the laws of Maryland and the United States and further demands a trial by jury on all issues so triable as of right by a jury.

### COUNT XI
### (Violation of Maryland Declaration of Rights Articles 24 and 26)

334.   Plaintiffs reassert the allegations contained in paragraphs 1 through 333 as if the same were fully set forth herein.

335.   The acts of all Defendants alleged herein constituted violations of rights guaranteed to Plaintiff under Articles 24 and 26 of the Maryland Declaration of Rights.

336.   Article 24 is *in pari material* with the Fourteenth Amendment to the United States Constitution.

70

**Deleted:** – against Defendant

**Deleted:** 240

**Deleted:** s

**Deleted:** is

337.   Article 26 protects the same rights as those protected under the Fourth Amendment to the United States Constitution and is *in pari material* with the Fourth Amendment.

338.   Defendants' actions, upon information and belief, towards Plaintiff were committed with actual malice and with deliberate indifference.

339.   Defendants' conduct and actions as fully described above and incorporated herein, violated Decedent's rights under the Maryland Declaration of Rights.

340.   At all times relevant hereto, Defendants were assigned by Defendant BOE to keep the students safe and protected while attending school at Great Mills High School and had the authority to intervene, make safety and policy decision regarding safety to individual and all students, and had the decision-making authority to take appropriate steps to not increase dangers to the students, specifically Jaelynn, when there were known threats.

341.   At all times relevant hereto, Defendant Gaskill was assigned by the Defendants BOE and Defendant County to communicate, interact, and keep watch and safety over the Students at Great Mills High.  Defendant Gaskill's actions were conducted during the school day, while operating as School Resource Office, and all of his actions were done under the color of state and/or local law.

342.   As a direct consequence of Defendants' gross negligence, malice, and deliberate or callous indifference, Defendants violated Plaintiff's rights under the Maryland constitution, causing Decedent to suffer injuries and death.

343.   Defendant BOE and County's official policies, procedures and practices permitted and/or authorized remaining Defendants to Plaintiff, in violation of Plaintiff's rights.

344.   Specifically, as referenced above, the Defendants engaged in this egregious behavior resulting in an on-campus shooting during school hours resulting in the death of Jaelynn,

345.   Defendants BOE and County allowed an atmosphere of deliberate indifference towards mass shootings, on campus mass violence, stalking, sexual harassment, dating violence, etc., despite known threats, which manifested itself in the brutal assault and death of Plaintiff by Rollins.

346.   As such, Defendants deprived Decedent, a minor student, of her Maryland constitutional rights.

347.   As a direct and proximate result of the conduct alleged herein, all of the Defendants deprived Plaintiff of the following clearly established rights the Maryland Constitution, which include, the right to be free from the deprivation of life and liberty without due process of law; the right to be free from deliberate indifference to threats of mass violence, school shootings, sexual harassment, stalking, assault, and dating violence, when there are known threats to Plaintiff; and all other rights described more fully above and incorporated herein.

348.   As a direct and proximate result of Defendants' violations of Plaintiff's Constitutional rights, as set forth above, Plaintiff suffered and was killed.

349.   Due to the severity of Defendants' conduct, Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiffs sue Defendants and demand judgment against Defendants for all damages recoverable, including attorney's fees, under the laws of the Maryland and further demands a trial by jury on all issues so triable as of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment and prays for the following relief against Defendants:

   a. Full and fair compensatory damages in an amount to be determined by a jury;

   b. Punitive damages in an amount to be determined by a jury;

   c. Reasonable attorney's fees and costs of this action;

d. interest, costs;

e. pre-judgment interest; and

f. Any such other relief as appears just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all triable issues, per Fed. R. Civ. P. 38(b).

GILMAN & BEDIGIAN, L.L.C.

*/s/ Lauren M. Geisser*
Lauren M. Geisser, 29190
Lauren M. Bell, 19540
GILMAN & BEDIGIAN, L.L.C.
1954 Greenspring Drive, Suite 250
Timonium, Maryland 21093
lgeisser@gbletalteam.com
lbell@gblegalteam.com
(410) 560-4999
*Attorneys for Plaintiffs*

**Deleted:** ¶
    *s/ Kathleen McClernan*¶
Kathleen McClernan, Esquire¶
(pro hac vice to be submitted)¶
Williams, McClernan, & Stack LLC¶
P. O. Box 188¶
Leonardtown, Maryland 20650¶
Phone: 240-309-4179¶
kathleen@wmslawyers.com¶

**Deleted:** ¶
¶
¶
**DEMAND FOR JURY TRIAL**¶
¶
Plaintiffs request a jury on all issues herein.¶
¶
¶
    *s/ Lauren M. Geisser*¶
    Lauren M. Geisser