IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

|  |  |  |
|---|---|---|
| MELISSA AND DANIEL WILLEY, *et al.* | * | |
|  | * | |
| v. | * | Case No. 8:20-cv-00161-PWG |
|  | * | |
| BOARD OF EDUCATION OF ST. MARY'S COUNTY, *et al.* | * | |
|  | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN REPLY TO OPPOSITION TO MOTION TO DISMISS BY JAKE HEIBEL AND TROY KROLL

Defendants Dr. Jake Heibel, individually and in his official capacity as the Principal of Great Mills High School ("GHMS"), Mr. Troy Kroll, individually and in his official capacity as a Teacher and Coach at GMHS (collectively, the "Individual GMHS Defendants"), by their attorneys, Edmund J. O'Meally, Adam E. Konstas, and Pessin Katz Law, P.A., respectfully submit this Memorandum in Reply to the Opposition to their Motion to Dismiss (the "Motion") in accordance with Fed. R. Civ. P. 12(b) (6) and Local Rule 105.1. For the reasons discussed in their Motion, and as further stated below, Plaintiffs fail to state any claims upon which relief may be granted against the Individual GMHS Defendants.

**I.   OVERVIEW.**

In an attempt to survive dismissal, Plaintiffs merely point back to the same conclusory allegations in their Second Amended Complaint to support their Section 1983 claims, provide no compelling justification to maintain a superfluous Title IX "official capacity" claim against the Individual GMHS Defendants, and overlook key provisions of the Paul D. Coverdell Teachers' Protection Act which apply in this case. Plaintiffs fail to overcome the arguments raised by the Board in its Motion, and the Second Amended Complaint should be dismissed accordingly

1

**II.    ARGUMENT.**

      **A.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 1983.**

In their Motion, the Individual GMHS Defendants argued that Plaintiffs failed to state a claim under Section 1983 because: 1) there are no specific allegations that either of them committed any constitutional harms; 2) there can be no respondeat superior liability under Section 1983; 3) Plaintiffs have failed to plead substantive due process claims that meet any of the *DeShaney* exceptions; 4) Plaintiffs have failed to adequately plead a supervisory liability claim under *Monell*. *See* Defs.' Mem., ECF No. 24-1.

Preliminarily, Plaintiffs suggest that the Section 1983 claims should be brought against the Individual GMHS Defendants in their official capacity. *See* Pls.' Mem. at 2 fn. 1, ECF NO. 27-1. To the extent Plaintiffs seek leave to amend Counts I-III to assert the Section 1983 claims against the Individual GMHS Defendants in their official capacity, such an attempt would be futile because state officials acting in their official capacity are not "persons" subject to suit for damages under Section 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

Turning to the substance of their Opposition, Plaintiffs largely point back to the same vague and conclusory allegations in the Second Amended Complaint which, for the reasons stated in the Motion, are insufficient to overcome dismissal.[1] Additionally, while Plaintiffs point to the Fourth

---

[1] To be sure, the only specific allegation that any report was made to either Individual GMHS Defendant is in Paragraph 80 where Plaintiffs allege that they "directly advis[ed] Defendant Kroll . . . that they were concerned about their daughter's well-being due to Rollins current and prior behavior both in and out of school." This allegation has been specifically refuted by Defendant Kroll in his affidavit, to which Mrs. Willey has not responded, and is severely

Circuit's recent holding that "a victim of student-on-student sexual harassment can pursue an equal protection claim predicated on a school administrator's deliberate indifference to such harassment[,]" *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 702 (4th Cir. 2018), unlike the Plaintiff's in *Feminist Majority Foundation*, the instant Plaintiffs failed to come forward with any specific factual allegations sufficient to state such a claim against the Individual GMHS Defendants.

The Fourth Circuit in *Feminist Majority Foundation* listed the following elements of such a claim:

> To state an equal protection claim for deliberate indifference to known student-on-student sexual harassment, a plaintiff must first allege that she "was subjected to discriminatory peer harassment." Secondly, the plaintiff must allege that the school administrator "responded to the discriminatory peer harassment with deliberate indifference, i.e. in a manner clearly unreasonable in light of known circumstances." In other words, the plaintiff must allege that the school administrator knew about harassment of the plaintiff "and acquiesced in that conduct by refusing to reasonably respond to it." Third, the plaintiff must allege that the school administrator's deliberate indifference was motivated by a discriminatory intent.

*Id.* at 702–03 (internal citations omitted).[2] There, the court found that the plaintiffs sufficiently alleged an equal protection claim against the university president based upon the same reasons the

---

undermined by the additional information supplied in Plaintiffs' Opposition, including the audio recording of Olivia and Jessica Mesmer (ECF No. 25-4) as well as the investigative report of law enforcement in the aftermath of the March 20, 2018 school shooting (ECF No. 25-1).

[2] In particular, this Court recently explained the "discriminatory intent" element as follows: "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'" *Borkowski v. Baltimore Cty., Maryland*, 414 F. Supp. 3d 788, 809 (D. Md. 2019) (finding that plaintiffs failed to sufficiently allege discriminatory intent to support equal protection claim where "Plaintiffs do not allege, in a non-conclusory manner, a history of invidious decision-making, departures from the normal sequence, substantive departures, or contemporary statements that reveal a discriminatory motive") (citing *Hernandez v. New York*, 500 U.S. 352, 360, (1991)). There are no specific factual allegations in the instant Second Amended Complaint that the Individual Defendants harbored any discriminatory animus against Decedent based upon her sex.

Court found a viable Title IX claim against the University itself – i.e., the numerous direct reports by Feminist United Members by way of email communications with the President as well as in-person meetings held with the President and other university administrators during which the Feminist United Members reported in detail the specific instances of sex-based harassment and threats directed at them by other students. *See id*. at 682-84.  In response, the President and other administrators held two listening circles, sent a generic campus-wide email, and sent a campus police officer to accompany one of the threatened Feminist United Members one evening, but otherwise claimed that they were powerless to take any other remedial action to address the offending conduct directly brought to their attention. *See id*. at 688-89.[3]

This Court recently examined the Fourth Circuit's decision in *Feminist Majority Foundation* and found that similarly vague and conclusory allegations of a university's deliberate indifference to sexual harassment "lack the specificity and force of the *Feminist Majority Foundation* Second Amended Complaint" as described above. *See Borkowski*, 414 F. Supp. 3d at 818 (reasoning that conclusory allegations of deliberate indifference without sufficient specificity were insufficient where Plaintiffs alleged that "Defendants were deliberately indifferent to Plaintiffs' suffering" and that "[n]o reasonable official in [Defendant's] position would have believed doing nothing to reform [UMBC's] sexual harassment policies was lawful" and that "Defendants did not work to reform their policies until they got sued, despite several news articles exposing their practices.").  The lack of specificity and detail in Plaintiffs' Section 1983 claims herein as to the Individual GMHS Defendants similarly warrants dismissal.

---

[3] In *Feminist Majority Foundation*, the court found that the President was entitled to qualified immunity as to the equal protection claim under Section 1983 because he "did not have fair warning that his conduct in this case gave rise to such a claim . . . because neither controlling authority nor a robust consensus of persuasive authority clearly established the pertinent right at the time of the wrongful conduct alleged in the Second Amended Complaint." *Id*. at 704.  The Individual GMHS Defendants respectfully submit that even if Plaintiffs are able to state a claim under Section 1983, they too are entitled to qualified immunity for the same reasons.

Plaintiffs also attempt to establish a claim for supervisory liability under Section 1983. In their Motion, the Individual GMHS Defendants note that Defendant Kroll is not a supervisor because he is a classroom teacher. *See* Defs.' Mem. at 5, ECF No. 24-1.  Plaintiffs gloss over this important point. Thus, a supervisory liability claim cannot be asserted against Defendant Kroll.

With respect to Defendant Heibel, as in *Borkowski*, "Plaintiffs' claims of supervisory liability do not withstand Defendants' motions to dismiss" because "Plaintiffs make no specific allegations that" Defendant Heibel had knowledge of any conduct of Defendant Kroll that allegedly "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff[,]" do not allege that Defendant Heibel "had any specific response to [Defendant Kroll's] conduct[,]" and "do not show how [Defendant Heibel]'s failure to respond resulted in Plaintiffs' injuries." *Id*. at 813-14.  Not only does the Second Amended Complaint fail to set forth any specific allegations of conduct directly attributable to Defendant Heibel, the Plaintiffs have utterly failed to refute Defendant Kroll's sworn affidavit with any statement under oath from Mrs. Willey. Accordingly, the Plaintiffs have failed to allege, much less prove, any underlying constitutional violations for which Defendant Heibel could be held liable as a supervisor under Section 1983. For these reasons, and the reasons stated in the Individual GMHS Defendants' Motion, Counts I – III should be dismissed.

### B. The Title IX Claim against the Individual GMHS Defendants is Redundant.

The Individual GMHS Defendants incorporated the Board's arguments that Plaintiffs' Title IX claim should either be dismissed for failure to state a claim, or summary judgment should be entered in the Board's favor. *See* Defs.' Mem. at 6-7, ECF No. 24-1.  In addition, the Individual GMHS Defendants argued in their Motion that the Title IX claim asserted against them in their "official capacities" should also be dismissed because the claim is already asserted against the

Board, and Title IX claims cannot be brought against individuals who are not direct recipients of federal funds. *See id.*

In their Opposition, Plaintiffs argue that the "official capacity" Title IX claims against the GMHS Defendants should not be dismissed because this Court has recognized that "[w]hile a Title IX claim may not be brought against [an individual] in [their] individual capacity, a claim can be brought against [an individual] in [their] official capacity." *J.G. by & through Gusman v. Prince George's Cty. Bd. of Educ.*, No. PWG-16-1008, 2017 WL 930130, at *6 (D. Md. Mar. 8, 2017); *see also Pavlovic v. Univ. of Maryland Baltimore Cty.*, No. MJG-13-983, 2013 WL 4775530, at *4 (D. Md. Sept. 4, 2013) (dismissing Title IX claim against school director in his individual capacity).

Plaintiffs do not dispute that there is no individual liability under Title IX and that they ultimately cannot recover against the Individual GMHS Defendants. *See Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (explaining that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and that "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."). Yet, Plaintiffs attempt to maintain both their Title IX claim against the Individual GMHS Defendants in their official capacity as well as their Title IX claim against the Board as the recipient of federal funds. For support, Plaintiffs point to *J.G.,* and *Pavlovic*, two unpublished decisions of this Court which allow, without substantive discussion of the issue, official capacity claims to proceed under Title IX. However, since Plaintiffs asserted their Title IX claim against the Board, their Title IX Claim against the Individual GMHS Defendants is redundant, superfluous, and unnecessary.

Turning to how this Court views other Spending Clause legislation, there is ample authority that "official capacity" claims asserted under Spending Clause statutes should be dismissed as redundant. *See, e.g., Windsor v. Bd. of Educ. of Prince George's Cty.*, 2016 WL 4939294, at *9 (D. Md. Sept. 13, 2016) ("The Title VI claims against the Individual Defendants in their official capacities are redundant of the claims against the Board and are thus also subject to dismissal. The Title VI claims may therefore proceed against the Board only.") (internal citations omitted); *Innes v. Bd. of Regents of Univ. Sys. of Maryland*, 29 F. Supp. 3d 566, 575 (D. Md. 2014) (dismissing "official capacity" claims under Section 504 and the ADA against university president on the grounds of redundancy) (citing *Munoz v. Balt. Cnty., Md.,* 2012 WL 3038602, at *5 (D. Md. July 25, 2012) (dismissing plaintiff's ADA and Rehabilitation Act claims against each individual defendant in his official capacity because "[p]laintiff has filed claims against Baltimore County, [thus] his claims against the individual supervisors employed by the County in their official capacities are redundant")); *S.B. v. Bd. of Educ. of Harford Cty.*, 2013 WL 12187482, at *1 (D. Md. Sept. 30, 2013), *aff'd* 819 F.3d 69 (4th Cir. 2016) (dismissing "official capacity" Section 504 and ADA claims against local superintendent as "entirely redundant" since those claims were also asserted against the local board); *Harrison–Khatana v. Cannon,* 2012 WL 5383314, at *2 (D. Md. Oct. 31, 2012) ("Because Harrison–Kathana is also pursuing relief against WMATA under ... the ADA, any claims against Cannon in his official capacity would subject to dismissal as redundant."); *Bradley v. Balt. Police Dep't,* 2012 WL 4321738, at *2 (D. Md. Sept. 19, 2012) (dismissing claims against individual defendants because "it would be pointless to [sue them in their official capacities] since a suit brought in that manner would still be, in effect, a suit against the Baltimore Police Department, which is already a defendant").

7

Other courts have also held that official capacity claims under Spending Clause statutes are redundant. *See, e.g.*, *Foster v. Michigan*, 573 F. App'x 377, 389–90 (6th Cir. 2014) (recognizing that in a Title VI claim "[w]here the entity is named as a defendant, an official-capacity claim is redundant" and further characterizing official capacity claim as "superfluous"); *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1020 (7th Cir. 1997) (concluding that principals and assistant principals are not federal funding recipients under Indiana law and therefore Title IX claims against them are not viable; holding alternatively that even if they constituted recipients, to permit "official capacity" claims would be redundant); *Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 206 n.18 (E.D.N.Y. 2018) (dismissing Section 504 and ADA "official capacity" claims as "wholly redundant" where same claims were asserted against governmental employer); *Latson v. Clarke*, 249 F. Supp. 3d 838, 856 (W.D. Va. 2017) ("Where a plaintiff has named the entity as well, an official-capacity claim can be dismissed as duplicative."); *Hofschneider v. City of Vancouver*, 182 F. Supp. 3d 1145, 1150 (W.D. Wash. 2016) (recognizing that a court may dismiss an "official capacity" claim as redundant "even if there was a question as to whether these "official capacity" claims would be viable if the entities were not also defendants"); *Gohl v. Livonia Pub. Sch.*, 134 F. Supp. 3d 1066, 1073 (E.D. Mich. 2015) ("Because LPS—the municipal entity—is named as a defendant in this case, and because Plaintiff has asserted ADA and RA claims against LPS, claims against individual Defendants in their official capacities would be redundant and unnecessary.").

### C. THE COURT SHOULD APPLY COVERDELL IMMUNITY AT THE MOTION TO DISMISS STAGE.

In their Motion, the Individual GMHS Defendants argue that they are immune from liability under the Paul D. Coverdell Teacher's Protection Act, which protects school officials from state tort claims arising out of their allegedly wrongful acts or omissions in disciplining students

8

or maintaining order in the school environment – the exact focus of Plaintiffs' state law tort claims against the Individual GMHS Defendants. In their Opposition, Plaintiffs argue: 1) the Coverdell Act does not pre-empt Plaintiffs' state law claims; 2) the Individual GMHS Defendants' Coverdell argument is premature; 3) the Individual GMHS Defendants actions were not carried out in conformity with Federal, State, and local laws; and 4) an educator's inaction or omission is not protected by the Coverdell Act.

First, the Coverdell Act itself states that it "preempts the laws of any State to the extent that such laws are inconsistent with this subpart, except that this subpart shall not preempt any State law that provides additional protection from liability relating to teachers." 20 U.S.C. § 7945(a). Thus, Plaintiffs' preemption argument is clearly without merit.

Secondly, this Court has previously applied Coverdell immunity at the motion to dismiss stage. *See Doe v. Bd. of Educ. of Washington Cty.*, No. CIV. JFM-15-00074, 2015 WL 4716065, at *5 (D. Md. Aug. 6, 2015) (recognizing that there are "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the Second Amended Complaint" and, therefore, a court can rule on an affirmative defense at the Rule 12(b)(6) stage" and finding that "[t]his case is one of those situations, as evidenced by other courts which have addressed a Coverdell Act defense while ruling on a motion to dismiss.") (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). Here, as in *Doe*, the allegations in the case broadly concern an alleged failure by educators "to maintain good order and discipline in the classroom and on school grounds." Compl. at ¶ 296, ECF No. 15; *see also Doe*, 2015 WL 4716065, at *5 (concluding that the Coverdell Act is "sufficiently broadly worded to also encompass the facts here" wherein the "alleged acts and omissions only concerned [student's] safety and [educator's] ultimate failure

to protect [student] from the bullying which culminated in his severe injuries" and recognizing that "[c]onduct designed to prevent bullying is certainly tied to the overall goal of maintaining order and control."). Thus, the allegations in the Second Amended Complaint reveal that Coverdell applies to this case.

Third, Plaintiffs point back to the allegations in their Second Amended Complaint as support for their argument that the Individual GMHS Defendants' actions were not carried out in conformity with applicable law. For the reasons discussed in the Defendants' Motions, since Plaintiffs fail to state claims against the Individual GMHS Defendants under Title IX or Section 1983, they cannot rely upon those allegations "to prevent immunizing [the Individual GMHS Defendants] under the Coverdell Act." *Doe*, 2015 WL 4716065, at *6; *see also Dennis v. Bd. of Educ. of Talbot Cty.*, 21 F. Supp. 3d 497, 502 (D. Md. 2014) (recognizing that "[t]he Coverdell Act is designed to target tort or statutory causes of action that may, for whatever reason, find their way into federal court").

Finally, Plaintiffs' argument that the Coverdell Act does not apply to "omissions" is without merit. The precise language of the "liability protection" section of the Coverdell Act is: "Except as provided in subsection (b), no teacher in a school shall be liable for harm caused by an act or ***omission*** of the teacher on behalf of the school if-- . . . ." 20 U.S.C.A. § 7946 (a) (emphasis added). Thus, this Court in *Doe* did not read additional language into the statute as Plaintiffs argue. *See Doe*, 2015 WL 4716065, at *5 (recognizing that the Coverdell Act "clearly encompasses acts *and* omissions" and explaining that the "legal question here is whether the *type* of actions [the educator] did or did not take were done 'in furtherance' of maintaining order and discipline" and holding that the Coverdell Act applied where the educator's "alleged acts and omissions only

concerned [student's] safety and [educator's] ultimate failure to protect [student] from the bullying which culminated in his severe injuries").

In short, this is exactly the sort of case where Coverdell protects the alleged acts or omissions of educators because Plaintiffs broadly allege that the Defendants failed to maintain good order and discipline in the school, and Plaintiffs have failed to sufficiently allege that any of the Coverdell exceptions apply.

### III. CONCLUSION

Wherefore, for the reasons stated in their Motion, and as further stated above, the Individual GMHS Defendants respectfully pray that this Honorable Court dismiss the Second Amended Second Amended Complaint filed against them with prejudice and that it grant such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

/s/
Edmund J. O'Meally, Fed. Bar No. 04910
Adam E. Konstas, Fed. Bar No. 18957
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland  21204
(410) 339-6757; Fax:  (410) 832-5654
eomeally@pklaw.com
akonstas@pklaw.com

**Attorneys for the Individual GMHS Defendants**

3134183_1.docx

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 6th day of November, 2020, a copy of the foregoing Memorandum in Reply to the Opposition to its Motion to Dismiss, was electronically served upon all counsel of record via this Court's CM/ECF system.

                                                    /s/ (filed electronically)

                                                    Edmund J. O'Meally