**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **MELISSA AND DANIEL WILLEY**, *et al.*, | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Case No.: PWG-20-161** |
| **BOARD OF EDUCATION OF** | * | |
| **ST. MARY'S COUNTY**, *et al.*, | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

**MEMORANDUM OPINION AND ORDER**

On March 20, 2018, Austin Rollins, a student at Great Mills High School ("GMHS") in St. Mary's County, Maryland, shot and killed a fellow student, Jaelynn Willey. Her parents, Melissa and Daniel Willey, individually, and as Personal Representative of the Estate of Jaelynn Willey ("the Estate"), bring multiple claims against Defendants: Board of Education of St. Mary's County ("Board"); Board of County Commissioners of St. Mary's County ("County"); Board individual members Karin Bailey, Cathy Allen, Mary Washington, James Davis, Rita Weaver ("Individual Board Members"); Jane/John Does 1-10 (administrators, teachers, counselors, and/or school employees); James Scott Smith, Ph.D., Superintendent of St. Mary's County Public Schools; F. Michael Wyant, Chief of Safety and Security of St. Mary's County Public Schools ("Central Office Defendants"); Jake Heibel, Ph.D., GMHS Principal; Troy Kroll, GMHS teacher and girls' swim coach ("GMHS Defendants"); and Blaine Gaskill, Deputy Sheriff and School Resource Officer.[1] Am. Compl., ECF No. 15.  Plaintiffs allege that Defendants failed to take meaningful action to protect Jaelynn and prevent her murder, and they bring claims of federal civil rights violations

---

[1]       The individuals were generally sued in both their individual and official capacities.

under 42 U.S.C. § 1983; violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a); state-law tort claims of Negligence, Premises Liability, Wrongful Death, Survival Action, and Respondeat Superior; and violations of Maryland Declaration of Rights Articles 24 and 26. *Id.*

Defendants move to dismiss the Plaintiffs' claims: (1) Motion to Dismiss or, in the Alternative, for Summary Judgment by the Board of Education of St. Mary's County ("Mot. I"), ECF No. 22; (2) Motion to Dismiss by Karin Bailey, Cathy Allen, Mary Washington, James Davis, and Rita Weaver ("Individual Board Members"), and J. Scott Smith and F. Michael Wyant (Central Office Defendants") ("Mot. II"), ECF No. 23; (3) Motion to Dismiss by Jake Heibel and Troy Kroll ("GMHS Defendants") ("Mot. III"), ECF No. 24; and (4) a letter request by Board of County Commissioners of St. Mary's County and Blaine Gaskill to join their Co-Defendants' motions, ECF No. 32.  I have reviewed the filings[2] and find a hearing unnecessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons stated below, the Board's motion to dismiss is GRANTED IN PART and DENIED IN PART; the Individual Board Members and Central Office Defendants' motion to dismiss is GRANTED, and the GMHS Defendants' motion to dismiss is GRANTED.  Count IV (the Title IX claim) may proceed against the Board, and Counts VI, VII, VIII, and IX (state-law tort claims) may proceed against the Board and the County.

---

[2]     Mot. I, ECF No. 22; Resp. I, ECF No. 25; Reply I, ECF No. 29; Mot. II, ECF No. 23; Resp. II, ECF No. 26; Reply II, ECF No. 31; Mot. III, ECF No. 24, Resp. III, ECF No. 27, Reply III, ECF No. 30; the accompanying memorandums; exhibits as discussed below; and Amended Complaint, ECF No. 15.

## BACKGROUND[3]

Jaelynn Willey and Austin Rollins both attended Great Mills High School in St. Mary's County, Maryland.  Am. Compl. 4-5.  Beginning in 2017, they entered a romantic relationship.  *Id.* at ¶ 66.  But Rollins began to physically and verbally pressure Jaelynn to engage in sexual activity, which she did not want; he became possessive, controlling, and manipulative, and the relationship quickly soured. *Id.* at ¶¶ 67-68.  At school, after school, and during school events, Rollins would text Jaelynn and contact her over social media even though she repeatedly requested that he stop contacting her. *Id.* He also texted and harassed her friends at school.  *Id.* at ¶ 70.

Rollins' behavior escalated. He grabbed, pushed, and yelled at Jaelynn outside her classrooms, and stalked her on school property by following her to her vehicle after school, and by showing up after each class, and following her around the hallways.  *Id.* at ¶¶ 71-76.  He frequently harmed her physically, causing pain by grabbing and squeezing her arms and wrists. *Id.* at ¶¶ 71, 77. Rollins also smashed his hands against the walls to make his hands bleed.  *Id.*  And he texted Jaelynn's friends indicating that he was planning on killing himself. *Id.*

Jaelynn's parents advised her swim coach and teacher, Mr. Kroll, whom they trusted, that they were concerned about their daughter's well-being because of Rollins' behavior.  *Id.* at ¶ 80. In the mornings at school, Jaelynn and her friends would meet in Mr. Kroll's classroom, frequently discussing Rollins and his behavior.  *Id.* at ¶ 81.  Plaintiffs allege that they believe Mr. Kroll heard Jaelynn's conversations and was aware not only that Rollins was sexually harassing Jaelynn but also that Rollins was becoming increasingly violent.  *Id.* at ¶¶ 81-82.  Plaintiffs believe that Mr. Kroll followed the school's reporting policies and requirements and reported these concerns to his

---

[3]     For purposes of considering a motion to dismiss, this Court accepts the facts that Plaintiffs alleged in their Complaint as true.  *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011).

superiors.  *Id.* at ¶ 83.  However, no one reached out to Jaelynn to see if she needed help or advise her, and no one confronted Rollins or took any steps to stop the stalking, harassment, abuse, and violent behaviors.  *Id.* at ¶¶ 86-90, 111-12.  Plaintiffs allege that on several occasions, Rollins physically attacked a fellow student and threatened multiple students.  *Id.* at ¶ 99.

On February 20, 2018, a month before Jaelynn was killed, GMHS had a threat of a shooter at the school.  *Id.* at ¶ 95.  Additional security was added for that day only.  *Id.* at ¶ 96.  A day before Jaelynn was killed, the school again received a threat of mass violence. *Id.* at ¶ 97.  Plaintiffs allege that no additional security was added as a result of the threat, despite the school having available to it metal detecting wands as well as safety vestibules and surveillance cameras.  *Id.* at ¶¶ 98, 100-103.  On March 20, 2018, Blaine Gaskill, Deputy Sheriff and School Resource Officer, was present at the school but did not screen the students entering the school, even though there had been a threat the day before.  *Id.* at ¶¶ 120-21.  Incoming students were not checked for weapons, and no precautionary actions were taken regarding Rollins.  *Id.*

On March 20, 2018, "at the beginning of the school day, Rollins entered Great Mills High School with a 9mm handgun, proceeded all the way to hallway F, and shot Jaelynn in the head outside classroom F06."  *Id.* at ¶ 122.  The bullet exited Jaelynn and hit another student in the leg.  *Id.* at ¶ 123. Rollins then continued to walk around the school with the gun.  *Id.* at ¶ 124.  Rollins was ultimately confronted by Deputy Gaskill in Hallway D near rooms D01 and D02.  *Id.*

Plaintiffs assert that "[t]here is a contract and a commitment that when students are mandated to attend public schools, that the school will in turn appropriately and adequately care for its most precious resources – this nation's children."  *Id.*  at 4. One of those children, Jaelynn, was harassed and murdered at her school by a fellow student.  Plaintiffs allege that Defendants

were aware of the risks, took no actions to prevent this loss of life, and actively increased the

danger to her.

Plaintiffs assert eleven causes of action against Defendants, as follows:

- Count I – Federal Civil Rights Violations 42 U.S.C. § 1983 (Special Relationship) – against Individual Board Members, GMHS Defendants, and John/Jane Does in their individual capacities; and against Deputy Gaskill in his individual capacity and in his official capacity with the County.

- Count II – Federal Civil Rights Violations 42 U.S.C. § 1983 (State-Created Danger) – against Individual Board Members, GMHS Defendants, and John/Jane Does in their individual capacities; and against Deputy Gaskill in his individual capacity and in his official capacity with the County.

- Count III – Federal Civil Rights Violations 42 U.S.C. § 1983 (Arbitrary or Conscience-Shocking Conduct) – against Individual Board Members, GMHS Defendants, and John/Jane Does in their individual capacities; and against Deputy Gaskill in his individual capacity and in his official capacity with the County.

- Count IV – Deliberate Indifference and/or Actual Knowledge Under Title IX – by the Estate against Board of Education; Individual Board Members, GMHS Defendants, and John/Jane Does in their official capacities; and Deputy Gaskill in his official capacity with the Board.

- Count V – Failure to Train – Violation of Equal Protection Under Fourteenth Amendment – 42 U.S.C. § 1983 – against the County; Deputy Gaskill in his official capacity with the County; and John/Jane Does in their official capacities with the County.

- Count VI – Negligence – against all Defendants (Individual Board Members and Central Office Defendants in individual capacities).

- Count VII – Premises Liability – against all Defendants (Individual Board Members and Central Office Defendants in individual capacities).

- Count VIII – Wrongful Death – by Daniel Willey and Melissa Willey against all Defendants (Individual Board Members and Central Office Defendants in individual capacities).

- Count IX – Survival Action – by the Estate against all Defendants (Individual Board Members and Central Office Defendants in individual capacities).

- Count X – Respondeat Superior – against Board of Education and County.

- Count XI – Violation of Maryland Declaration of Rights Articles 24 and 26 – against all Defendants (Individual Board Members and Central Office Defendants in individual capacities).

Am. Compl.; *see also* Mot. Mem. II, ECF No. 23-1, at 3 n.4.[4]

Defendants, by their motions, seek to dismiss the complaint in its entirety with prejudice, for failure to state any claims upon which relief can be granted, or in the alternative, for summary judgment in Defendants' favor.

<b>STANDARD OF REVIEW</b>

## I.   Dismissal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).[5] To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ.

---

[4]    Not all Counts contain clear statements, so this summary is based not only on the Amended Complaint, but statements made in the motions as well as my interpretation based on the underlying law.

[5]    Generally, a Rule 12(b)(6) motion to dismiss does not "permit an analysis of potential defenses a defendant may have to the asserted claims." J&J Sports Prods., Inc. v. Pro Street Shop, LLC, t/a Pro St. Cafe*, No. DKC 18-1000, 2019 WL 3290161, at *2 (D. Md. July 22, 2019). Nonetheless, dismissal may be appropriate when a meritorious affirmative defense is clear from the face of the complaint. *Brooks v. City of Winston–Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 250 (4th Cir. 1993)).

P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at

678–79.  *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 663.

## II.     Rule 12(d) Conversion

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the

complaint, as well as documents attached to the motion to dismiss, if they are integral to the

complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB–12–

1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire &

Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009).  However, if the Court considers matters

outside the pleadings, the Court must treat the motion as a motion for summary judgment under

Rule 56. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.*, 916 F.

Supp. 2d 620, 622-23 (D. Md. 2013).

Under Fourth Circuit law, proper conversion under Rule 12(d) requires two things: (1) that

all parties "be given some indication by the court that it is treating the 12(b)(6) motion as a motion

for summary judgment;" and (2) that all parties "be afforded a reasonable opportunity for

discovery."  *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).  Notably, "the Federal Rules do not

prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56

motion." *Ridgell v. Astrue*, DKC–10–3280, 2012 WL 707008, at *7 (D. Md. Mar.2, 2012). Thus,

this requirement "can be satisfied when a party is 'aware that material outside the pleadings is

before the court.'" *Walker v. Univ. of Md. Med. Sys. Corp.*, No. CCB-12-3151, 2013 WL 2370442,

at *3 (D. Md. May 30, 2013) (quoting *Gay*, 761 F.2d at 177). Indeed, while the Court "clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, [it] does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Here, the title of the motion itself, "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," makes it obvious that the Court might construe it as seeking summary judgment, and thereby provides sufficient notice to Plaintiff. *See Ridgell*, 2012 WL 707008, at *7; *see Laughlin*, 149 F.2d at 260-61.

Generally, however, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 639-40 (4th Cir. 2016) (per curiam); *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). Certainly, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To that end, Federal Rule of Civil Procedure 56(d) unambiguously provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Here, Plaintiffs filed a declaration pursuant to Federal Rule of Civil Procedure 56(d) and identified discovery needed to fully respond to a summary judgment motion. Pls.' Resp. I Ex. B,

Decl., ECF No. 25-2; Pls.' Resp. III, Ex. B, Decl., ECF No. 27-3.  There has not yet been an opportunity for discovery in this case, and Plaintiffs declare that "Defendants' Counsel specifically instructed Plaintiffs' counsel to refrain from communicating with 'the Board [of Education], its members, administrators, or any other school system employees regarding your clients' claims, the unfortunate occurrence of March 20, 2018, or any other related matters.'" *Id.* ¶ 3 (citing Ex. E: Correspondence Feb. 25, 2019, ECF Nos. 25-5, 27-4).  Plaintiffs also declare that they require statements from individuals represented by Defendants' counsel, *id.* ¶ 5, and much of the documentation required is in the exclusive control of Defendants, *id.* ¶ 6.  Although Plaintiffs have copies of criminal investigation reports, many of the individual's names and contact information is redacted, and subpoenas will be required. *Id.* ¶¶ 12, 15-16.  Plaintiffs also believe Defendants possess digital evidence that they cannot seek until discovery has commenced. *Id.* ¶¶ 17-18 20.  A list of topics was identified on which Plaintiffs require information.  *Id.* ¶ 21.

Defendants argue that Mrs. Willey has personal knowledge of specific facts that could be pleaded to state a Title IX claim, but she did not provide an affidavit in response to Mr. Kroll's affidavit.  Reply I, ECF No. 29, at 3, 6-7, 9.  Defendants also note that Plaintiffs have access to student files, have demonstrated the ability to obtain police investigation reports and conduct interviews with Jaelynn's friends, and they have access to Jaelynn's social media posts and text messages.  *Id.* at 10-11.  And Defendants argue that Plaintiffs' claims of cameras and digital evidence is speculative.  *Id.* at 11-12.  Defendants assert that the evidence Plaintiffs seek would not create a genuine dispute of material fact sufficient to defeat summary judgment.  *Id.*

However, a formal request for discovery is "broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Greater Balt. Center for Pregnancy Concerns, Inc.*

*v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)).  Therefore, I shall not convert any of the motions to a summary judgment motion, and I will not consider any documents or exhibits that are not explicitly incorporated into the complaint by reference or relied on in the complaint.  *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see also Sposato*, 2013 WL 1308582, at *2 ("The court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed."); *CACI Int'l*, 566 F.3d at 154; Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").[6]

The Amended Complaint has no attached exhibits, and the only exhibit attached to a motion is Mr. Kroll's affidavit, which I will not consider.  The Amended Complaint references the GMHS 2016-17 Handbook, which Plaintiffs attached to a response in opposition, but it is not integral to their complaint, and I did not find it necessary to consider it.  Am. Compl. ¶¶ 53, 104, 152; Resp. I, Ex. C, ECF No. 25-3.  The Amended Complaint did not contain references to, nor did it rely on, the St. Mary's County Sheriff's Office Incident Reports that Plaintiffs attached to a response.  Resp. I, Ex. A, ECF No. 25-1.  Therefore, although I may consider the Handbook but not the Incident Reports, I have not considered either exhibit.

---

[6]     Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011).

## ANALYSIS

### I.     Title IX Claim (Count IV)

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . [stating exceptions].

20 U.S.C. § 1681(a).  The Supreme Court has held that for purposes of Title IX, unlawful sex discrimination includes sexual harassment and sexual assault. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281-82 (1998); *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 75 (1992). And relevant to this matter, "student-on-student sexual harassment, if sufficiently severe, can . . . rise to the level of discrimination actionable under" Title IX. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

To state a Title IX claim based on student-on-student sexual harassment, a plaintiff must plausibly allege that:

> (1) they were a student at an educational institution receiving federal funds;
>
> (2) they suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived them of equal access to the educational opportunities or benefits provided by their school;
>
> (3) the school, through an official who has authority to address the alleged harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment; and
>
> (4) the school acted with deliberate indifference to the alleged harassment.

*Doe v. Fairfax Cty. Sch. Bd.*, 1 F.4th 257, 263-64 (4th Cir. 2021) (citations omitted).   All Defendants contend that Plaintiffs have failed to state a claim in Count IV under Title IX.[7] I shall address each element in turn.

### A.    Receipt of Federal Funds

The Board of Education has not disputed that it is an educational institution receiving federal funds or that Jaelynn was a student.  But the individual Defendants contend that even if this claim arguably survives against the Board of Education as a recipient of federal funds, it is improperly brought against the Individual Board Members and the Central Office Defendants who are not recipients of federal funds, and they cannot be held in the case for duplicative recovery against them even in their official capacities.  Mot. II Mem., ECF No. 23-1, at 2 n.2; Mot. III Mem., ECF No. 24-1, at 6-7; Reply III, ECF No. 30, at 5-6.

Title IX claims can be brought only against institutions and programs that are the recipients of federal funds, "but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."  *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257 (2009); *see also Feminist Majority Foundation v. Hurley*, 911 F.3d 674, 700 (4th Cir. 2018) ("Title IX allows for lawsuits against only educational institutions and programs.").  Plaintiffs argue that "Title IX claims are actionable against individual defendants in their official capacities," Resp. III Mem., ECF No. 27-1, at 5, but even if the individuals were subject to suit in their official capacities, such suits "generally represent only another way of pleading an action against an entity of which an officer is an agent," *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)

---

[7]     Defendants also note that Jaelynn's parents do not have standing to assert a personal claim under Title IX.  Mot. I Mem., ECF No. 22-1, at 4 n. 1.  The Title IX claim can be asserted only by the Estate.  *See Dunlap v. Monroe Cty. Bd. of Educ.*, CIVIL ACTION NO. 1:16-11535, 2017 WL 4684181, at *5 (S.D.W. Va. Oct. 18, 2017) (citing cases).

(quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[T]he real party in interest is the entity." *Id.* at 166. Since Plaintiffs have sued the entity, the claims against individuals in their official capacities are redundant. Therefore, the Title IX claim against all the individual Defendants shall be dismissed with prejudice.

B.      **Severe, Pervasive, and Objectively Offensive Sexual Harassment**

The Board argued that Plaintiffs failed to plead facts that Rollins' harassment was sufficient to create a hostile or abusive educational environment.  Mot. I Mem., ECF No. 22-1, at 11 n.7 (citing *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 699 (4th Cir. 2007)).  In *Jennings*, the Fourth Circuit reviewed the evidence needed to show sexual harassment at the summary judgment stage, stating that

> a sexual harassment victim "can be said" to have been deprived of access to educational opportunities or benefits in several circumstances, including when the harassment (1) results in the physical exclusion of the victim from an educational program or activity; (2) "so undermines and detracts from the victim['s] educational experience" as to "effectively den[y her] equal access to an institution's resources and opportunities"; or (3) has "a concrete, negative effect on [the victim's] ability" to participate in an educational program or activity.

482 F.3d at 699 (citing *Davis,* 526 U.S. at 650-51, 654).

Here, Plaintiffs allege that Rollins sexually harassed Jaelynn, which created a "hostile and abusive education environment," and ultimately, Rollins killed her, which unarguably denied her equal access to the school's resources and opportunities.  Resp. I Mem., ECF No. 25-6, at 9 n.7 (citing *Davis*, 526 U.S. 651, 653-54). Under the facts as pleaded, there is no credible basis for disputing that the Plaintiffs' allegations demonstrate a concrete, negative, and substantial effect on the victim's ability to participate in a program or activity. *See, e.g.*, Am. Compl. ¶¶ 67-68, 70-78. Therefore, Plaintiffs have sufficiently alleged the sexual harassment element of a Title IX claim.

C.      **Actual Notice or Knowledge**

The Board argues that no "appropriate person" had actual notice or knowledge of the alleged harassment.  Mot. I Mem. at 4-11.  More specifically, the Board asserts that the most specific factual allegation of notice is that Plaintiffs informed Mr. Kroll, Jaelynn's teacher and swim coach, but it argues that a classroom teacher is not an appropriate person under Title IX.  *Id.* at 8-9; Reply I at 4-5.  The Board also asserts that Mr. Kroll refutes the allegation that he was notified.  Mot. I Mem. at 10-11; Reply I at 2-3.

The Fourth Circuit recently addressed and clarified "[w]hat establishes a school's actual notice in Title IX cases."  *Fairfax*, 1 F.4th at 264.[8]  The Court held "that when a school official with authority to address complaints of sexual harassment and to institute corrective measures receives a report that can objectively be construed as alleging sexual harassment, that receipt establishes actual notice of such harassment for Title IX purposes." *Id.* at 265.  Constructive notice is not sufficient.  *Id.*

"[A] school has actual notice or knowledge when it is informed or notified of the alleged harassment." *Id.* at 266 (citing *Gebser*, 524 U.S. at 290).  This may include being "'alerted' to the 'possibility' of sexual harassment occurring," *id.* (citing *Gebser*, 524 U.S. at 291), "complaints, allegations, or reports" of harassment, *id.* at 267 (citing *Davis*, 526 at 649, 653-54), or by witnessing it or receiving a report of it, *id.* (citing *Doe v Galster*, 768 F.3d 611, 614 (7th Cir. 2014)), but it does not require receipt of "a clearly credible report of sexual abuse from the plaintiff-student," *id.*   The Court further stated that "common sense and public policy considerations further counsel us to hold that a school's receipt of a report or complaint alleging

---

[8]      The Board submitted a letter of supplemental authority informing the Court about this case and the impact to its argument regarding actual notice.  ECF No. 35.

sexual harassment is sufficient to satisfy the actual-notice requirement." *Id.* Actual notice does not mean that a claim has been accepted as credible or substantiated, but rather, it is an objective inquiry that asks whether an appropriate official in fact received a report or complaint and whether a reasonable official would determine that the report alleges misconduct. *Id.* at 268.

An appropriate official is described as "a school official with authority to address complaints of sexual harassment and to institute corrective measures." *Id.* at 265; *see also Gebser*, 524 U.S. at 290 ("An 'appropriate person' . . . is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination."). Certainly, principals and assistant principals are considered appropriate officials. *See Fairfax*, 1 F.4th at 270-72. In the context of peer-on-peer sexual harassment, informing a classroom teacher or physical education teacher also may be considered adequate notice. *See Davis*, 526 U.S. at 634, 646-47 (observing the ability to control and influence behavior that exists in the classroom and commenting on notice to district employees).[9]

Here, Plaintiffs allege that Jaelynn's parents warned the school by directly advising Mr. Kroll, Jaelynn's teacher and swim coach, that they were concerned about Jaelynn because of Rollins' behavior both in and out of school, and they also expressed concerned about her safety. Am. Compl. ¶¶ 80, 112. Plaintiffs also allege that Mr. Kroll overheard conversations between Jaelynn and her friends in his classroom prior to the start of school that related to Rollins'

---

[9] The Board cites Md. Code Ann., Educ. § 7-305(a) to assert that a teacher lacks the power to impose formal student discipline. Mot. I Mem. at 8. However, particular "remedies," such as expulsion, are not required on notification of harassment. *Davis*, 526 U.S. at 648-49. Rather, a response needs to be "reasonable" under the circumstances, and certainly the cited Maryland statute does not divest teachers of the authority to report harassment to higher-ups in the school, or to request that an investigation be initiated. *See id.* at 649-50; *Fairfax*, 1 F.4th at 268 (noting that actual notice is what triggers a duty to investigate).

harassment and violent behavior, such that they believe Mr. Kroll knew that Rollins was violent and sexually harassing Jaelynn. *Id.* at ¶¶ 81-82, 202. That Mr. Kroll denies that he was advised or that he overheard or observed any harassment is not relevant at this stage, particularly as I am declining to accept evidence outside the Amended Complaint or convert the motion to dismiss into a motion for summary judgment; Plaintiffs' allegations are accepted as true for purposes of considering a motion to dismiss.

Plaintiffs further allege that Mr. Kroll passed on this information to his superiors, including the Deputy Sheriff and School Resource Officer as well as the GMHS Superintendent, pursuant to school reporting policy, and they, in turn, passed it on to their superiors. *Id.* at ¶¶ 59-60, 83. Plaintiffs also allege that Defendants would have specifically observed Rollins' harassment, stalking, and increasing violence. *Id.* at ¶¶ 74-79, 89, 196-201. Jaelynn's tragic death renders her unable to verify or provide further factual details, so Plaintiffs are left with little recourse except to plead their allegations "on information and belief," which they are permitted to do if they are likely to obtain evidentiary support for them upon being afforded an opportunity for further investigation or discovery. *See, e.g.*, Fed. R. Civ. P. 11(b)(3). I am satisfied that the facts alleged by Plaintiffs—a report and witnessing the behavior—are sufficient to support Plaintiffs' claim that at least one "appropriate" school official had actual notice that Jaelynn was sexually harassed by Rollins, a fellow student, and that they should be afforded the opportunity for further investigation and discovery to buttress these allegations.

### D.    Deliberate Indifference

The Board also contends that Plaintiffs have failed to allege that it acted with deliberate indifference even assuming it had actual notice. Mot. I Mem. at 4. But this is an empty contention

because the Board does not claim that it took *any* action, since it relies on not having actual notice of any misconduct.

"Under Title IX, a school acts with deliberate indifference where its response to the alleged harassment or the lack of any such response is clearly unreasonable in light of the known circumstances.'" *Fairfax*, 1 F.4th at 271 (quoting *Davis*, 526 U.S. at 648 (internal quotation marks omitted and cleaned up)). It is a high standard, requiring more than a showing of negligence. *Id.* However, a "half-hearted investigation or remedial action will [not] suffice to shield a school from liability." *Id.* (quoting *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cty.*, 819 F.3d 69, 77 (4th Cir. 2016)). Further, a school can be liable not only where its deliberate indifference effectively causes the harassment, but also where a school's deliberate indifference made a plaintiff more vulnerable to future harassment. *Id.* (citations omitted).

Here, accepting that there are sufficient allegations of actual notice to survive dismissal, Plaintiffs allege that the school did nothing at all in response: it did not investigate; it did not counsel; it did not confront; it did not intervene; it did not take the report seriously; it did not discipline; it did not contact Rollins' parents; it did not take meaningful action; it did not take any remedial action; it did not warn; it did not formulate a plan; it did not train; it did not take precautions; it did not implement protective measures; it did not follow its own policies and procedures; it did not take a single step to ensure Jaelynn's safety and wellbeing. Am. Compl. ¶¶ 86, 93, 106-107, 109, 111-20; 155, 225-26, 228-29, 231, 266-69. Plaintiffs also alleged that the school's inaction increased the danger and made Jaelynn more vulnerable to harassment. *Id.* at ¶¶ 174-76, 229. These allegations are abundantly sufficient to plead that the school acted with deliberate indifference.

In sum, assuming Plaintiffs' allegations are true, they have plausibly stated a Title IX claim against the Board, but as stated above, the Title IX claim against all the individual Defendants shall be dismissed with prejudice.

## II.     Section 1983 Claims (Counts I, II, III, V)

Section 1983 provides a remedy for individuals who have been deprived of their constitutional rights under color of state law. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999). The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *Bost v. Wexford Health Sources, Inc.*, No. 15-cv-3278-ELH, 2018 WL 3539819, at *19 (D. Md. July 23, 2018) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "Section 1983 also requires a showing of personal fault based upon a defendant's own conduct." *Id.* at *20 (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

Plaintiffs have asserted § 1983 claims (in Counts I, II, and III) against the Individual Board Members, GMHS Defendants, Central Office Defendants, and John/Jane Does, all in their individual capacities, and against Deputy Gaskill in his individual capacity and in his official capacity with the County.[10]   These Defendants argue, generally, that there is a lack of specific

---

[10]     GMHS Defendants noted in their motion that the § 1983 claims were necessarily brought against them in their individual capacities because when acting in their official capacities, they are not "persons" subject to suit for damages under § 1983. Mot. III Mem. at 4 n.1. In their Response

allegations against them as individuals sufficient to subject them to claims under § 1983.  Mot. II

Mem. at 3-5; Mot. III Mem. at 3-4.  The Individual Board Members also argue that they cannot be

sued under § 1983 because they lacked authority to act individually.  Mot. II Mem. at 6.

> Judge Chasanow addressed this issue in *Smith-Hosch v. Bramble*:

>> Surely no *individual* board member or board employee may
>> be held liable for the actions of a board as a whole. If, however, a
>> plaintiff can make 1) specific allegations regarding the *individual*
>> conduct of a member of board, and 2) that individual action is found
>> to have deprived the plaintiff of a federal right, then the individual
>> member of that board may be held liable for his or her actions under
>> § 1983.

Civil Action No. DKC 18-3659, 2019 WL 4060017, at *4 (D. Md. Aug. 28, 2019).  This case was

cited by both Plaintiffs and Defendants as support for their position.  And it certainly recognizes

the viability of a claim under § 1983 against individual board members for their *own* conduct while

a member of the board. *Id.* But, importantly, the plaintiff must do more than make conclusory

claims of individual member conduct; specific allegations of individual conduct are required. *Id.*

Here, none of the individual board members are mentioned in any factual allegations, and their

names appear only in the paragraphs identifying them as parties in the Amended Complaint or as

---

to the GMHS Defendants' motion, Plaintiffs indicate that their suit against Mr. Kroll and Dr.
Heibel should have been in their official capacities and seek leave to amend to assert Counts I, II,
and III against the GMHS Defendants solely in their official capacity.  Resp. III Mem. at 2 n.1.
Such an amendment would be futile, because "the law is clear that a State and 'official capacity'
defendants are not susceptible to suit under 42 U.S.C. § 1983 because they are not 'persons' within
that statute's meaning." *N.T. v. Baltimore City Bd. of School Comm'rs*, CIV. JKB-11-356, 2012
WL 3028371, at *2 (D. Md. Jul. 24, 2012) (citing *Will v. Michigan Dep't of State Police*, 491 U.S.
58, 64 (1989); *Rosenfeld v. Montgomery Cty. Public Schools*, 41 F. Supp. 2d 581, 585-86 (D. Md.
1999) ("Neither states nor state officials, sued in their official capacities, are considered 'persons'
for purposes of § 1983.").  Therefore, I will not allow the requested amendment and shall review
the § 1983 claims against the GMHS Defendants in their individual capacities only.  Although
Deputy Gaskill has joined in the GMHS Defendants' motion, his arguments related to the effect
of suing him in his official capacity as a deputy sheriff and County employee have not yet been
developed.  *See* ECF Nos. 32, 33.

listed under the claim being asserted.  There are a few allegations alleging that, *as a group*, they discriminated against females and voted against initiatives to protect females from sexual harassment based on discriminatory animus, but such allegations that refer generally to the group, without identifying specific individuals or conduct, are insufficient to state a claim against any individual board member.  *See Johnson v. Dore*, No. RWT–12–3394, 2013 WL 5335626, at \*4 (D. Md. Sept. 20, 2013) (granting Rule 12(b)(6) motion to dismiss claims as to two defendants because the "Complaint d[id] not include any allegations concerning [those defendants] to support a plausible claim against them" but rather "repeatedly refer generally to 'Defendants,' without identifying specific Defendants or conduct").

Similarly, there is a lack of specific allegations against the Central Office Defendants and GMHS Defendants.  Neither Dr. Heibel nor Mr. Wyant is mentioned in any factual allegations, and their names appear only in the paragraphs identifying them as a party in the Amended Complaint or as listed under the claim being asserted.  There are individualized allegations against Mr. Kroll, which relate either to him being advised by Jaelynn's parents about their concerns over Rollins' harassment and her safety, or that he was aware of the harassment because he overheard conversations about, or witnessed, harassing behavior.  *See, e.g.*, Am. Compl. ¶¶ 80-83, 85, 112, 202-204, 223.  Plaintiffs allege that Mr. Kroll relayed these concerns to his superiors, who included Deputy Gaskill and Dr. Smith.  *Id.* at ¶ 83.  There are no other allegations referring to Dr. Smith. Plaintiffs argue that they made multiple allegations about the Central Office Defendants' violations of the Equal Protections Clause of the Fourteenth Amendment, but each one of the referenced allegations refers only to Defendants generally.  *See* Resp. II Mem., ECF No. 26-1, at 7-9.   As

stated above, such allegations are insufficient to state a claim against Dr. Smith, Mr. Wyant, or Dr. Heibel.[11]

Plaintiffs argue, however, that they clearly allege that Mr. Kroll knew of the harassment and acted with deliberate indifference towards Jaelynn, resulting in a violation of the Equal Protection Clause of the Fourteenth Amendment.  Resp. III Mem. at 3.[12]  They contend that Mr. Kroll, as a government official, may be held liable under § 1983 based on deliberate indifference to student-on-student sexual harassment.  *Id.* at 2 (citing *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 702-703 (4th Cir. 2018)).

In *Feminist Majority*, the Fourth Circuit described such a claim, stating that the following elements must be pleaded:

> To state an equal protection claim for deliberate indifference to known student-on-student sexual harassment, a plaintiff must first allege that she "was subjected to discriminatory peer harassment." Secondly, the plaintiff must allege that the school administrator "responded to the discriminatory peer harassment with deliberate indifference, i.e. in a manner clearly unreasonable in light of known circumstances." In other words, the plaintiff must allege that the school administrator knew about harassment of the plaintiff "and acquiesced in that conduct by refusing to reasonably respond to it." Third, the plaintiff must allege that the school administrator's deliberate indifference was motivated by a discriminatory intent.

911 F.3d at 702-703 (internal citations omitted).  Plaintiffs do not allege that Mr. Kroll was a school administrator, and there are no allegations against him that show Mr. Kroll was "motivated

---

[11]     Additionally, Plaintiffs "decline to proceed further" with their claim under Count I against Dr. Smith and Mr. Wyant.  Resp. II Mem. at 9.

[12]     Plaintiffs acknowledged that there is no separate count labeled for this claim but argue that they have sufficiently pleaded the claim.  Resp. III Mem. at 2 n.1. Also, Plaintiffs argue that they have adequately pleaded a cause of action against Mr. Kroll based on supervisory liability, *id.* at 3, but Plaintiffs have not alleged that Mr. Kroll was a supervisory official, but rather, a classroom teacher and swim coach, Am. Compl. ¶¶ 17-18.  Therefore, no supervisory claim may be asserted against Mr. Kroll.  *See Shaw v. Stroud*, 13 F.3d 791, 798-99 (4th Cir. 1994).

by a discriminatory intent." *Id.* at 703.  Therefore, this claim against Mr. Kroll does not survive
and will be dismissed with prejudice.

Deputy Sheriff Gaskill has joined in his co-Defendants dismissal motions and argues that
Plaintiffs fail to sufficiently allege individual wrongdoing on his part, they fail to allege any of the
*DeShaney* exceptions, and he raises the affirmative defense of qualified immunity.  ECF No. 32 at
1. Plaintiffs allege that Deputy Gaskill was present at the school on the date of the shooting but
did not screen the students entering the school despite the previous day's threat of violence, and
he did not confront Rollins until "long after" the shooting.  *Id.* at ¶¶ 120, 124-25.  Plaintiffs also
allege that Deputy Gaskill was responsible for school security, keeping watch and safety over
GMHS students, and he acted under the color of state or local law.  *Id.* at ¶¶ 243, 341.  It is not
clear whether Plaintiffs seek to assert the Equal Protection claim against Deputy Gaskill, but to the
extent that they do, it will be dismissed because there are also no allegations that Deputy Gaskill
was motivated by discriminatory intent. And although there are allegations that he was responsible
for school security, there are no allegations that clearly state he held a supervisory position, so a
supervisory claim against him does not survive dismissal.

In *DeShaney v Winnebago County Department of Social Services*, the Supreme Court
stated that "[a]s a general matter, . . . a State's failure to protect an individual against private
violence simply does not constitute a violation of the Due Process Clause."  489 U.S. 189, 197
(1989).  However, if the state has a special relationship with an individual, it has an affirmative
duty to protect the individual from harm inflicted by third parties.  The Individual Board Members
and Central Office Defendants argued that there is no "special relationship" based on the Fourth
Circuit's holding that no special relationship exists between the student and the school because the
student is not in physical custody.  Mot. II Mem. at 8 (citing *Stevenson ex rel. Stevenson v. Martin*

*Cty. Bd. of Educ.*, 3 F. App'x 25, 31, 2001 WL 98358, at *5 (4th Cir. 2001)).  Plaintiffs concede that they did not properly plead such a relationship vis-à-vis the Central Office Defendants. *Id.* at 9.  It is not clear whether they intend to pursue this claim in Count I against Deputy Gaskill, but for purposes of this dismissal motion, I do not find that Plaintiffs have properly pleaded this claim against any of the individual Defendants. Therefore, Count I shall be dismissed with prejudice.

A second exception to the general rule occurs when the state itself creates the danger. *See DeShaney*, 489 U.S. at 201. Plaintiffs assert this exception in Count II (State-Created Danger).  To create such a danger, the state must take some affirmative action that gives rise to liability. *Id.* at 203. Standing by and doing nothing in the face of danger or failing to provide protection from danger does not implicate the state in the harm caused by third parties—a more active role is required.  *Pinder v. Johnson*, 54 F.3d 1169, 1175-76 (4th Cir. 1995); *Stevenson*, 2001 WL 98358, at *6.  Plaintiffs have not alleged that Deputy Gaskill took affirmative action to create the danger. Just the opposite, they allege that he did nothing and failed to protect Jaelynn from Rollins.  Thus, I shall also dismiss this claim against Deputy Gaskill without prejudice.

In Count III, Plaintiffs allege that Defendants' conduct was "arbitrary or conscious-shocking."  Am. Compl. ¶ 181.  Defendants argue that a necessary predicate for invoking the "shocks the conscience test" is an intent to cause harm. Mot. II Mem. at 9 (citing cases).  To rise to a conscience-shocking level, conduct must be intended to injure or result from deliberate decisions of a government official to deprive a person of life, liberty or property, or possibly, the conduct must show a high level of recklessness or gross negligence.  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (citations omitted).  Plaintiffs have not made such allegations against Deputy Gaskill, and this claim shall also be dismissed without prejudice.  Since I am dismissing these claims as to Deputy Gaskill, there is no need to review his defense of qualified immunity.

Finally, in Count V, Plaintiffs assert a "Failure to Train" claim under § 1983 against the County, Deputy Gaskill in his official capacity, and the John/Jane Does in their official capacities with the County.  The County and Deputy Gaskill joined their co-Defendants' motions, but their additional arguments have not yet been briefed.  *See* ECF Nos. 32, 33.  Certainly, the County, as a unit of local government, is a "person" subject to suit under 42 U.S.C. § 1983, to the extent allowed in *Monell*, 436 U.S. at 690-91.  *DiPino v. Davis*, 729 A.2d 354, 368 (Md. 1999).  But, "[u]nder *Monell*, a municipality's liability 'arises only where the constitutionally offensive actions of employees are taken in furtherance of some municipal 'policy or custom.'" *Walker v. Prince George's Cty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984)).  Since no claims survive against the individuals, the County's claim will also be dismissed, without prejudice.

## III.   State-law Tort Claims (Counts VI to X)

Plaintiffs have asserted state-law tort claims of Negligence, Premises Liability, Wrongful Death, Survival Action, and Respondeat Superior.  Except for Respondeat Superior, which appears to be asserted against only the Board and the County, Plaintiffs have asserted each of these claims against the Board, the County, and all the individual Defendants in their individual capacities.

The individual Defendants, sued in their individual capacity, generally argue that Plaintiffs' pleadings do not sufficiently allege any causes of action against them. Mot. II Mem. at 3-5; Mot. III Mem. at 3-4.  As discussed above under the § 1983 claims, Plaintiffs have failed to provide sufficient specific factual allegations that describes what any individual defendant did or failed to do.  Further, under Maryland law, state officials are "immune from suit . . . for a tortious act or omission that is within the scope of [their] public duties," so long as the officials did not act with malice or gross negligence. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). To survive a motion

to dismiss, a plaintiff must allege facts and circumstances showing that the state official acted with malice or gross negligence, and there are no such allegations here. *See Baltimore Police Dep't v. Cherkes*, 780 A.2d 410, 438 (Md. Ct. Spec. App. 2001). Thus, Plaintiffs have failed to make plausible allegations about the individual Defendants that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570.

I shall briefly address each claim against the Board[13] and County[14] in turn, although the parties' arguments relate only to the failure of the state-law tort claims generally.

## A.     Negligence (Count VI)

To state a claim for negligence, Plaintiffs must allege "(a) a duty owed by the defendant[s] to the plaintiff, (b) a breach of that duty, and (c) injury proximately resulting from that breach." *Barclay v. Briscoe*, 47 A.3d 560, 574 (Md. 2012).

The Board contends that all the Plaintiffs' state tort claims focus on failures to provide school security and failure to maintain good order and student discipline, and these negligence-based claims are not viable when asserted against educators because they are essentially educational malpractice claims that are barred under the *Hunter* line of cases. Mot. I Mem. at 12 (citing *Hunter v. Bd. of Educ. Of Montgomery Cty.*, 439 A.2d 582 (Md. 1982), and *Gurbani v. Johns Hopkins Health Sys. Corp.*, 185 A.3d 760 (Md. Ct. Spec. App. 2018)). Plaintiffs respond that the claims are not based in educational malpractice or educational negligence but are solidly rooted in the tort of negligence, specifically "Defendants breached their duty to exercise reasonable

---

[13]     The Board contends that Plaintiffs' state law tort claims cumulatively seek damages exceeding $400,000, which exceed the applicable sovereign immunity cap. Mot. I Mem. at 20 (citing Md. Code Ann. Educ. § 4-105(d), Md. Code Ann., Cts. & Jud. Proc. § 5-518(b)). Plaintiffs clarified that they do not seek damages exceeding the applicable sovereign immunity cap. Resp. I Mem. at 20.
[14]     The County has joined in the Board's motion. ECF No. 32. However, the County's additional arguments have not been briefed and are not considered.

care to protect a student from harm . . . ."  Resp. I Mem. at 13-14.  Plaintiffs attempt to distinguish

their claims from the claims in the *Hunter* line of cases by confirming that their allegations are not

questioning academic decisions.   *Id.* at 14.   Recently, in *Gambrill v. Board of Education of*

*Dorchester County*, the Maryland Court of Special Appeals held that although the *Hunter* line of

cases mostly consider academic decisions, the scope is broader and includes claims of negligent

school discipline and resulting physical injuries. No. 0886, Sept. Term, 2019, 2021 WL 2769810,

at *7 (Md. Ct. Spec. App. July 1, 2021) (unpublished).  The Court reasoned that the same obstacles

discussed in *Hunter* also applied in *Gambrill*: "There is no standard of care against which to

measure the adequacy of disciplinary procedures; there is no obvious measure of ascertaining

damages; and the entire exercise would place unwarranted stress on the already overburdened

resources of our schools, and the judiciary." 2021 WL 2769810, at *9.  The Board submits that

these issues, identified in *Hunter*, are present in this case; specifically, there is no measurable

standard of care in providing school security or imposing student discipline.  Reply I at 12.

 Here, Plaintiffs allege that the Defendants had a duty to use reasonable measures to protect

students and supervise them on school grounds, which includes enforcing rules and regulations

necessary for protection of students to ensure a safe school campus, but also includes taking

reasonable precautions to protect students from reasonably foreseeable criminal attacks on school

premises.  Am. Compl. ¶¶ 282-87.  Plaintiffs allege that Defendants were aware of shooting threats,

from a month prior and a day prior to the incident, and were warned specifically about Rollins'

violent behavior, and they failed to take reasonable measures to address a foreseeable risk.  *Id.* at

¶¶ 288-92.  And more specifically, Plaintiffs allege that Defendants failed to provide adequate

security, failed to warn, failed to implement proper procedures, failed to install and use security

measures such as metal detectors and security guards in visible areas, failed to provide an overall

security plan to meet industry standards and customs for safety in schools, failed to properly train and supervise security personnel, and failed to screen for presence of weapons. *Id.* at ¶ 295.

Plaintiffs have adequately pleaded that the Board owed a duty to Plaintiffs. "Although there is generally no duty to protect others from third parties' conduct, such a duty may arise in the presence of a special relationship." *Doe v. Bd. of Educ. of Prince George's Cty.*, 888 F. Supp. 2d 659, 669 (D. Md. 2012) (citing *Rhaney v. Univ. of Md. E. Shore*, 880 A.2d 357, 364 (Md. 2005)). The Court observed that "a special relationship exists between a school district and its students," largely because "as a general matter, school districts assume significant responsibility for the 'welfare and guidance' of children within their purview." *Id.* (citations omitted). Further, Maryland courts have recognized "the doctrine that the relation of a school vis à vis a pupil is analogous to one who stands in loco parentis, with the result that a school is under a special duty to exercise reasonable care to protect a pupil from harm." *Eisel v. Bd. of Educ. of Montgomery Cty.*, 597 A.2d 447, 451-52 (Md. 1991) (quoting *Lunsford v. Bd. of Educ.*, 374 A.2d 1162, 1168 (Md. 1977)). Plaintiffs also have alleged that the Board breached its duty by failing to implement reasonable security measures considering the threats and warnings about which it allegedly was aware, including specific examples. Am. Compl. ¶¶ 295-96. Plaintiffs have alleged that because of these failures, a student not only endured prolonged sexual harassment on school premises but was physically assaulted there, resulting in her death. *Id.* at ¶ 297. In sum, Plaintiffs have stated a facially plausible negligence claim against the Board.

As Plaintiffs note in their response to the Board's motion, under the circumstances alleged here, the court "is not called upon to act as an 'overseer' of the Defendants' classroom methodology, academic decisions, or discretionary student disciplinary decisions." Resp. I Mem. at 15 n.17. The standard of care to protect students is one of reasonableness and is not a matter of

educational policymaking to which courts have deferred to educational institutions' decisions.[15] The obstacles identified by the *Hunter* Court in educational negligence cases do not apply here. Plaintiffs' negligence claim against the Board shall survive dismissal.  I have not considered any County-specific arguments, so the negligence claim against the County also survives.

**B.    Premises Liability (Count VII)**

"Premises liability is based on common-law principles of negligence, so a plaintiff must establish the four elements required in any negligence action." *Macias v. Summit Mgmt., Inc.*, 220 A.3d 363, 375 (Md. Ct. Spec. App. 2019) (citing *Troxel v. Iguana Cantina, LLC*, 29 A.3d 1038, 1038 (Md. 2011)).  However, the duty that is owed by the property-owner is determined by the injured person's legal status at the time of the incident. *See id.* at 375-76 (describing the general common-law classifications of invitee, social guest, and trespasser).  While the alleged status is not clearly stated in the Amended Complaint, it refers to "students and invitees."  Am. Compl. ¶ 305. "A property owner will be liable to an invitee in negligence if (1) the owner 'controlled the dangerous or defective condition;' (2) the owner knew or should have known of the dangerous or defective condition; and (3) 'the harm suffered was a foreseeable result of that condition.'"  *Id.* (quoting *Hansberger v. Smith*, 142 A.3d 679, 691 (Md. Ct. Spec. App. 2016)).  If the injured person was a business invitee, the highest duty is owed; "one invited or permitted to enter another's property for purposes related to the landowner's business." *Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 561 (D. Md. 2014) (quoting *Norris v. Ross Stores, Inc.*, 859 A.2d 266, 273 (Md. Ct. Spec. App. 2004)).

---

[15]    I note the Board's reference to the Safe to Learn Act, Md. Code Ann., Educ. § 7-1501 *et seq.*  This Act took effect June 1, 2018, which was after the events at issue in this case.

Judge Bennett of this Court recently considered whether a premises liability claim related to sexual harassment at a school could survive a dismissal motion.  He determined that the dangerous conditions related to serious allegations of sexual harassment in the school environment, which, while serious and alarming, "are not suited for a premises liability claim."  *Buettner-Hartsoe v. Baltimore Lutheran High School Ass'n*, Civil Action No. RDB-20-3132, Civil Action No. RDB-20-3214, Civil Action No. RDB-20-3229, Civil Action No. RDB-20-3267, Civil Action No. RDB-21-0691, 2021 WL 2580385, at *18 (D. Md. June 23, 2021).  He reasoned that "[i]n Maryland, the tort of premises liability relates specifically to an injury as a result of a physical defect on property," and the plaintiff's allegations did not reflect a defective physical condition. *Id.* (citing *Rhaney v. Univ. of Md. Eastern Shore*, 388 Md. 585, 600 (2005)).  He further noted that "[w]hile there is a lack of case law in this Circuit addressing this particular issue, federal courts in other districts (applying their respective state laws) have consistently rejected premises liability claims against schools based on allegations of bullying or sexual harassment."  *Id.* at n.9.

However, I note that Plaintiffs' premises-liability allegations are not focused on the occurrence of sexual harassment on the school property but on the lack of security policies, measures, and procedures on the school property despite knowledge of prior threats of violence, prior acts of violence, and the foreseeability of an act of violence. *See* Am. Compl. ¶¶ 311-19.  In *Hansberger*, the Maryland Court of Special Appeals stated that "landowners who open their land to the public for business are required to use reasonable care in the supervision, maintenance, or control of the premises, and may even be required to protect against the criminal acts of third persons." 142 A.3d at 690-91.  Such property owners may be liable for an injury resulting from their failure to protect their patrons by taking reasonable measures to control the premises from known risks of criminal activity.  *Traxel*, 29 A.3d at 1048-49; *see also Corinaldi v. Columbia*

29

*Courtyard, Inc.*, 873 A.2d 483 (2005) (setting out three general theories under which a landowner may be held liable when someone is injured by third-party criminal activities on the premises).

Plaintiffs' allegations, accepted as true—that the school, owing a duty to its students as invitees, failed to take reasonable precautionary measures such as screening for weapons on their property despite a threat of violence a month earlier and a day earlier and despite specific notice about Rollins' threatening behavior, and the failure resulted in a student's assault and death—are distinct from the types of allegations that Judge Bennett found insufficient to state a premises liability claim in the *Buettner-Hartsoe* case discussed above. Therefore, although it remains to be seen whether this claim can survive summary judgment, at this stage of the proceedings, the allegations are sufficient for this claim to survive a motion to dismiss.

### C.      Wrongful Death and Survival Action (Counts VIII, IX)

Maryland's wrongful death statute created a new and independent cause of action, which can be distinguished from a decedent's own personal injury action during his or her lifetime, known as a survival action. *Spangler v. McQuitty*, 141 A.3d 156, 168-69 (Md. 2016). "The wrongful death statute allows the decedent's beneficiaries or relatives to recover damages for loss of support or other benefits that would have been provided, had the decedent not died as a result of another's negligence." *Id.* at 168 (citing 1852 Md. Laws ch. 299; Cts. & Jud. Proc. § 3–904(a)(1)–(b)). In a survival action, the personal representative of the victim may sue to recover, for the estate of the victim, damages for the economic and non-economic losses suffered by the victim prior to his or her death—the damages that the victim would have been able to recover had he or she survived. *Smith v. Borello*, 804 A.2d 1151, 1154 (Md. 2002). Thus, the wrongful death

statute confers a right of action to a decedent's beneficiaries, whereas a survival action is brought by a decedent's personal representatives. *Spangler*, 141 A.3d at 170.[16]

To plead a wrongful death claim under Maryland law, a plaintiff must allege: (1) the victim's death; (2) that the victim's death was proximately caused by the negligence of the defendant; (3) that the victim's death resulted in injury to the plaintiff, who falls within the category of beneficiaries defined by the statute; and (4) that the claim is brought within the applicable statutory period. *Osunde v. Lewis*, 281 F.R.D. 250, 260 (D. Md. 2012) (citing Paul Mark Sandler & James K. Archibald, Pleading Causes of Action in Maryland 396 (4th ed.2008)).

In a survival action,

> a personal representative "stands in the place of the decedent" and that recovery is limited to the loss actually caused to the deceased prior to that person's death. Thus, "[d]amages in Survival Statute actions are limited to compensation for pain and suffering sustained, expenses incurred, and loss of earnings, by the deceased from the time of the infliction of the injury to the time of death."

*Johnson v. Golden*, No. 939, Sept. Term, 2019, 2020 WL 3412935, at *7 (Md. Ct. Spec. App. June 22, 2020) (unpublished) (quoting *Jones v. Flood*, 702 A.2d 440, 442 (Md. Ct. Spec. App. 1997)).

Inasmuch as the Plaintiffs have adequately pleaded negligence claims that survive dismissal, Plaintiffs' wrongful death and survival action also may proceed.

**D.     Respondeat Superior (Count X)**

"Under the doctrine of respondeat superior, an employer is jointly and severally liable for the torts committed by an employee acting within the scope of his employment." *Jordan v. Western Distributing Co.*, 286 F. Supp.2 d 545, 548 (D. Md. 2003) (quoting *Baltimore Police Dep't v. Cherkes*, 780 A.2d 410, 439 (Md. Ct. Spec. App. 2001)).  Certainly, it is well established that the

---

[16]     Here, although not clearly alleged, the wrongful death action is necessarily brought by Melissa Willey and Daniel Willey, and the survival action is brought by the Estate.

doctrine of respondeat superior does not apply in § 1983 claims. *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (citing *Monell*, 436 U.S. at 691). But the Maryland Court of Appeals has held that, notwithstanding the inapplicability of respondeat superior liability in the § 1983 context, such a theory of liability is available for state constitutional violations. *DiPino v. Davis*, 729 A.2d 354, 372 (Md. 1999) ("[L]ocal governmental entities do, indeed, have respondeat superior liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of the employment.").

However, the respondeat superior theory of liability rests upon a plaintiff sufficiently alleging a tort or state constitutional violation by an employee, which I found Plaintiffs here have failed to do. Accordingly, the respondeat superior claim fails.

## IV.    Maryland Article 24 (Count XI) [17]

Article 24 of the Maryland Declaration of Rights is construed *in pari materia*, or in connection with, the Fourteenth Amendment of the United States Constitution and is generally interpreted and analyzed the same way. *Dua v. Comcast Cable of Maryland, Inc.*, 805 A.2d 1061, 1071 (Md. 2002). Because Plaintiffs § 1983 claims failed, the Article 24 claim also fails.

## V.    Leave to Amend

Under the circumstances, some of Plaintiffs' claims are dismissed with prejudice, and some without prejudice. Plaintiffs may file a motion seeking to request leave to amend those claims that were not dismissed with prejudice to the extent that the claims would not be futile. Pursuant to Rule 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But the Court should deny leave to amend if doing so "would prejudice the opposing

---

[17]    Plaintiffs voluntarily withdrew their claim under Article 26 of the Maryland Declaration of Rights. Resp. I Mem. at 17.

party, reward bad faith on the part of the moving party, or . . . amount to futility." *MTB Servs., Inc. v. Tuckman–Barbee Constr. Co.*, No. RDB–12–2109, 2013 WL 1819944, at *3 (D. Md. Apr.30, 2013); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that whether to grant a motion for leave to amend is within this Court's discretion, and failure to cure deficiencies in prior amendments is a reason to deny leave).

Plaintiffs shall be given this opportunity before scheduling any further briefing of dismissal arguments by the County and Deputy Gaskill.  Should Plaintiffs choose to file a motion for leave to amend, it must be filed on or before September 13, 2021; the memorandum in support of their motion shall not, unless otherwise allowed by the court, exceed 25 pages (exclusive of table of contents and list of cases cited, or exhibits); and they shall attach as an exhibit the proposed amended complaint and a redline complaint as required by Local Rule 103.6 (c).  The Defendants must respond by September 27, 2021, and the same page limits apply to their opposition memorandum, unless otherwise ordered by the court; and Plaintiffs may file a reply by October 11, 2021, the memorandum in support of which shall not exceed 12 pages.

With regard to the remaining counts, Defendants shall file an Answer on or before September 13, 2021, after which a Scheduling Order and Discovery Order will be entered.

## ORDER

For the foregoing reasons,

1.   The Motion to Dismiss or, in the Alternative, for Summary Judgment by the Board of Education of St. Mary's County ("Mot. I"), ECF No. 22, is GRANTED IN PART and DENIED IN PART;

    a.   The Board's motion to dismiss is GRANTED without prejudice with regards to Counts X and XI, but DENIED with regards to the remaining counts;

    b.   This case shall proceed against the Board on the Title IX claim (Count IV); the Negligence claim (Count VI); the Premises

        Liability claim (Count VII); and the Wrongful Death and Survival Actions (Counts VIII and IX);

    c.      The Respondeat Superior claim (Count X) and the Maryland Article 24 claim (Count XI) shall be dismissed without prejudice, but the Maryland Article 26 claim, which was voluntarily withdrawn, is dismissed with prejudice;

2.      The Motion to Dismiss by Karin Bailey, Cathy Allen, Mary Washington, James Davis, and Rita Weaver ("Individual Board Members"), and J. Scott Smith and F. Michael Wyant (Central Office Defendants") ("Mot. II"), ECF No. 23, is GRANTED.  All claims asserted against the Individual Board Members and Central Office Defendants are DISMISSED as follows:

    a.      Counts I and IV are dismissed with prejudice;

    b.      Counts II and III are dismissed without prejudice;

    c.      Counts VI through IX (state-law torts) are dismissed without prejudice;

3.      The Motion to Dismiss by Jake Heibel and Troy Kroll ("GMHS Defendants") ("Mot. III"), ECF No. 24, is GRANTED.  All claims asserted against the GMHS Defendants are dismissed without prejudice;

4.      Counts V, X, and XI against the Board of County Commissioners of St. Mary's County are dismissed without prejudice; all remaining counts asserted against the County (Counts VI, VII, VIII, and IX) may proceed;

5.      Counts I and IV against Blaine Gaskill are dismissed with prejudice; all remaining Counts asserted against Blaine Gaskill (II, III, V, VI, VII, VIII, IX, and XI) are dismissed without prejudice;

6.      If Plaintiffs choose to file a motion for leave to amend, it is due on or before September 13, 2021;

7.      The Board shall file its Answer to Counts IV, VI, VII, VIII, and IX on or before September 13, 2021; and

8.      The County shall file its Answer to Counts VI, VII, VIII, and IX on or before September 13, 2021.

Date:   August 30, 2021

                                  _____/S/_____

                                    Paul W. Grimm
                                    United States District Judge