**IN THE UNITED STATES DISTRICT COURT**
**<u>FOR THE DISTRICT OF MARYLAND</u>**

*MELISSA & DANIEL WILLEY, et al.*,          \*

      **Plaintiffs,**          \*

**v.**          \*          **Civ. No. DLB-20-161**

**BOARD OF EDUCATION OF**          \*
   **ST. MARY'S COUNTY, *et al.*,**
                     \*

      **Defendants.**          \*

**<u>MEMORANDUM OPINION</u>**

This case concerns the tragic death of a high school student, Jaelynn Willey, who was shot to death by another student, Austin Rollins, in the hallway of their St. Mary's County, Maryland high school.   Jaelynn's parents, Melissa and Daniel Willey, individually and as personal representatives of her estate, sued the Board of Education of St. Mary's County ("Board"), the Board of County Commissioners of St. Mary's County ("County"), several individual Board members, and various school administrators, teachers, and employees. ECF 1 & 15.  The plaintiffs claim the defendants, collectively and individually, knew that Rollins had threatened and harassed Jaelynn but failed to protect her.

This Court previously dismissed several of the plaintiffs' claims.  ECF 36.  The plaintiffs now move for leave to file a third amended complaint.  ECF 40 & ECF 40-1 (proposed complaint). The defendants oppose the motion, ECF 48 (County opposition) & 49 (Board opposition), and the plaintiffs have replied, ECF 56 & 57.  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, the motion for leave to amend is denied.

In a separate memorandum issued this same date, the Court granted the Board's motion for summary judgment on the plaintiffs' Title IX claim, which had survived a previous motion to

dismiss.  In light of the Court's rulings here and on that motion, there are no pending federal claims, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## I.    Background

The plaintiffs filed suit on January 17, 2020.  ECF 1.  They filed an amended complaint, ECF 7, and a second amended complaint, ECF 15, without opposition.  In the second amended complaint, the plaintiffs allege that Jaelynn entered a romantic relationship with Rollins in 2017, that the relationship soured due to Rollins' abusive behavior, and that Rollins began to stalk and harass Jaelynn at school.  ECF 15, ¶¶ 66–78.  The defendants allegedly were informed of and witnessed the harassment but ignored it and failed to prevent it.  *Id.* ¶¶ 79–94.  On March 20, 2018, Rollins "entered Great Mills High School with a 9mm handgun, proceeded all the way to Hallway F, and shot Jaelynn in the head outside classroom F06[,]" killing her.  *Id.* ¶ 122.

In the second amended complaint, the plaintiffs asserted 11 causes of action: (I) 42 U.S.C. § 1983 substantive due process – special relationship; (II) § 1983 substantive due process – state-created danger; (III) § 1983 substantive due process – arbitrary or conscience-shocking conduct; (IV) Title IX, 20 U.S.C. § 1681(a) – deliberate indifference or actual knowledge; (V) § 1983 equal protection – failure to train; (VI) negligence; (VII) premises liability; (VIII) wrongful death; (IX) survival action; (X) respondeat superior; and (XI) violation of Maryland Declaration of Rights Articles 24 and 26.  *See* ECF 36, at 5–6.  The Board, the individual Board members, and the school employees moved to dismiss in three separate motions.  ECF 22–24.  The County and Blaine Gaskill, a deputy sheriff and school resource officer, filed a letter request to join those motions. ECF 32.  The Court denied the motions as to Counts IV, VI, VII, VIII, and IX against the Board and Counts VI, VII, VIII, and IX against the County; dismissed with prejudice Count I, the Article 26 claim in Count XI, and Count IV against the individual defendants; and dismissed without

prejudice the remaining claims. *See* ECF 36, at 33–34. The Court also disposed of several other potential claims that had not been clearly identified in the second amended complaint. *Id.* at 21–22 (dismissing with prejudice a potential § 1983 equal protection claim).

The plaintiffs filed a motion for leave to file a third amended complaint that reasserts some of the claims dismissed without prejudice. ECF 40. While that motion was pending, the Court allowed discovery between the Board and the plaintiffs. ECF 59. Following that discovery, the Board moved for summary judgment on Count IV, the Title IX claim. ECF 72. Earlier today, the Court granted the Board's motion for summary judgment.

In the proposed third amended complaint, the plaintiffs seek leave to reassert claims that the Court dismissed without prejudice, as well as an additional § 1983 equal protection claim. The proposed third amended complaint names the following individual defendants: Jake Heibel, the school's principal; James Scott Smith, the superintendent; Troy Kroll, a teacher and coach; and F. Michael Wyant, the school's chief of safety and security, each of whom join the Board's opposition to amendment; and Blaine Gaskill, a deputy sheriff and school resource officer who joins the County's opposition to amendment. The numbering of the counts in the proposed third amended complaint is irregular. There is no Count I because it previously was dismissed with prejudice, and the plaintiffs have not replaced it with another Count I. Count II is the state-created danger claim under § 1983. Count III is the arbitrary or conscience-shocking conduct claim under § 1983. Both are against Heibel, Smith, Kroll, Wyant, and Gaskill in their individual capacities and Gaskill in his official capacity. Count IV is the Title IX claim against the Board, which survived the first motion to dismiss and on which the Court has granted summary judgment. Count V is the failure to train claim under § 1983 against the County and Gaskill in his official capacity. There is a second Count V, the negligence claim against all defendants. Counts VI through IX are,

3

respectively, claims for premises liability against all defendants; wrongful death against all defendants; a survival action against all defendants; and a respondeat superior claim against the County and the Board.  The plaintiffs did not include a Count X in the proposed complaint.  Count XI is the claim for violation of the Maryland Declaration of Rights Article 24 against all defendants.  Finally, Count XII is the equal protection claim under § 1983 against the County, Smith, Wyant, Heibel, and Gaskill.  All proposed claims are based on the same set of facts alleged in the prior complaints.

## II.    Standard of Review

The plaintiffs seek leave to amend under Federal Rule of Civil Procedure 15(a)(2), which provides that courts "should freely give leave [to amend] when justice so requires."  "A motion to amend should only be denied when 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'"  *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 217–18 (4th Cir. 2019) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that whether to grant a motion for leave to amend is within the court's discretion, and failure to cure deficiencies in prior amendments is a reason to deny leave).

The defendants' principal contention is that amendment would be futile.[1]  Denial of leave to amend on futility grounds should occur only "when the proposed amendment is clearly insufficient or frivolous on its face."  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).  In other words, "an amendment is futile if it would not survive a motion to dismiss."

---

[1] The Board defendants also contend the individual defendants are prejudiced because the plaintiffs are subjecting them to additional litigation costs.  The plaintiffs' proposed amendments are not prejudicial because, with limited exception, discovery has not commenced and the plaintiffs have not raised new legal theories.  *See Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc).

*Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 769 (D. Md. 2010) (citing *Perkins v. United States*, 55 F.3d 910, 916 (4th Cir. 1995)).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp.*, 917 F.3d at 212). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

III.   **Analysis**

**A. Section 1983 Claims**

Under 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009).  "To recover damages under 42 U.S.C. § 1983, a plaintiff must show (1) 'the conduct complained of was committed by a person acting under color of state law,' and (2) this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States."  *Martin v. Duffy*, 977 F.3d 294, 298–99 (4th Cir. 2020) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

When a § 1983 claim is asserted against a municipal government, such as the County, "two issues must be determined: '(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.'"  *Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 436 (4th Cir. 2007) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)).  Municipal liability "arises only where the constitutionally offensive actions  . . . are taken in furtherance of some municipal policy or custom."  *Walker v. Prince George's Cnty.*, 575 F.3d 426, 431 (4th Cir. 2009).

The plaintiffs seek leave to assert § 1983 claims under four theories: (1) a state-created danger theory (Count II); (2) an arbitrary or conscience-shocking conduct theory (Count III); (3) a failure to train theory (Count V); and (4) an equal protection theory (Count XII).

### 1. State-Created Danger

In Count II, the plaintiffs seek damages under § 1983 for an alleged violation of the due process right to be protected from a state-created danger.  The Fourth Circuit recently addressed the state-created danger doctrine in the public-school context in *Burns-Fisher v. Romero-Lehrer*, 57 F.4th 421 (4th Cir. 2023).  In that case, a teacher who was attacked by a special education student alleged that the school principal knew about the student's prior violent acts but nevertheless created a schedule requiring the teacher to teach the child without a second teacher in the classroom.  *Id.* at 423.  The principal's choices, the teacher alleged, created the danger that led to her injuries.  The Fourth Circuit rejected this argument.  It explained the state-created danger doctrine "is an exception to the general rule that 'the Due Process Clause of the Fourteenth Amendment does not require governmental actors to affirmatively protect life, liberty, or property against intrusion by private third parties.'"  *Id.* at 424–25 (quoting *Pinder v. Johnson*, 54 F.3d 1169, 1174 (4th Cir. 1995)).  The doctrine "applies only when the state affirmatively acts to create or increase the risk that resulted in the victim's injury."  *Id.* at 425 (quoting *Graves v. Lioi*, 930 F.3d 307, 319 (4th Cir. 2019)).  The Court held the principal's knowledge of the student's violent history and her failure to prevent the attack were "insufficient to constitute affirmative acts because 'the state must create the direct danger that causes the injury or death.'"  *Id.* (quoting *Callahan v. N.C. Dep't of Pub. Safety*, 18 F.4th 142, 148 (4th Cir. 2021)).  Because the principal's choices and inactions were "far removed from [the] physical attack" and "did not directly cause" the teacher's

injuries, the teacher did not sufficiently allege a due process violation based on the state-created danger doctrine. *Id.*

So too here.  The plaintiffs allege myriad choices and inactions they claim led to Jaelynn's death. *See, e.g.*, ECF 40-1, ¶¶ 140, 141, 143, 146–51.  But they do not allege that the defendants' conduct "directly cause[d]" her death.  *See Burns-Fisher*, 57 F.4th at 425.  It was Rollins' conduct, not the defendants', that harmed Jaelynn.  Knowledge of a risk and the failure to protect against it cannot be recast into affirmative acts.  *Id.*; *see also Callahan*, 18 F.4th at 147–48 ("It is not enough to reframe a failure to protect against a danger into an affirmative act.").  And the alleged affirmative conduct in this case—allowing Rollins to return to school after he acted violently towards Jaelynn and others, even though the defendants knew or reasonably should have known that Rollins would continue, increase, or escalate his behavior toward Jaelynn, ECF 40-1, ¶¶ 153–55—is insufficient to allege a state-created danger claim.  The defendants' conduct was "far removed from" Rollins' shooting of Jaelynn and did not create "the direct danger" that caused her death, just as the principal's scheduling decisions in *Burns-Fisher* did not create the danger that caused the student's violent acts against his teacher.  *See* 57 F.4th at 425.  The plaintiffs have not plausibly alleged a substantive due process violation in Count II.

Even if they had, the individual defendants would be entitled to qualified immunity. Qualified immunity is an affirmative defense to § 1983 claims that "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether a defendant is entitled to qualified immunity," courts ask two questions: "(1) Has the plaintiff alleged a violation of a federal right?  (2) Was the right at issue clearly

established at the time of the alleged violation?" *Burns-Fisher*, 57 F.4th at 424 (quoting *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019)). The Court may address either question first, and a "defendant official is entitled to qualified immunity if either prong is not satisfied." *Williamson v. Stirling*, 912 F.3d 154, 186 (4th Cir. 2018) (quoting *Pearson*, 555 U.S. at 236).

In *Burns-Fisher*, the Fourth Circuit found the principal was entitled to qualified immunity because "it was not clearly established at the time of the incident that a defendant's failure to act gives rise to a state-created danger claim." 57 F.4th at 426 (citing *Graves*, 930 F.3d at 327). The qualified immunity analysis in *Burns-Fisher* applies equally in this case because Jaelynn's death occurred one month before the student assault in *Burns-Fisher*. Thus, at the time of Jaelynn's death, as in *Burns-Fisher*, it was not clearly established that the individual defendants' conduct gave rise to a state-created danger claim. The individual defendants, therefore, would be entitled to qualified immunity on the proposed Count II.

The motion for leave to amend to add Count II is denied on futility grounds.

### 2.  Arbitrary or Conscience-Shocking Conduct

In Count III, the plaintiffs seek damages under 42 U.S.C. § 1983 for a substantive due process violation based on arbitrary or conscience-shocking conduct. The shocks-the-conscience standard requires a showing that the defendant's behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Washington v. Hous. Auth. of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (quoting *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407, 413 (4th Cir. 2020)). Courts have applied the shocks-the-conscience standard to a wide range of state actions that directly caused injuries. *See, e.g.*, *Collins*, 503 U.S. at 130 (holding city's failure to provide a reasonably safe work environment for employees did not shock the conscience so as to violate substantive due process); *Rochin v. California*, 342 U.S. 165, 172

(1952) (holding forced stomach pumping by police to recover swallowed evidence to be "conduct that shocks the conscience" and a violation of substantive due process); *Washington*, 58 F.4th at 181–82 (holding allegations of a housing authority's deliberate indifference to the risk of carbon monoxide poisoning plausibly stated a violation of the plaintiff's substantive due process rights).

But when a private individual, not a state actor, causes the injury, as is the case here, the Court's due process analysis begins with the bedrock principal that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).  This is because the Due Process Clause does not impose on the states an affirmative duty to "ensure that [life, liberty, and property] do not come to harm" from third parties.  *Id.* at 195; *see Burns-Fisher*, 57 F.4th at 424–25.  There are two recognized exceptions to this rule: when there is a special, custodial relationship between the state and the injured party and when the state creates the danger of harm to the victim.  *See Callahan*, 18 F.4th at 146 & n.4 (discussing the two *DeShaney* exceptions).[2]  The plaintiffs attempted to allege substantive due process claims based on the two *DeShaney* exceptions in Counts I and II, but they have not stated a claim under either theory.  *Supra; see* ECF 36, at 22–23 (dismissing special relationship claim in Count I with prejudice).

The arbitrary or conscience-shocking conduct theory in Count III is not another exception to *DeShaney*'s rule.  The Supreme Court in *DeShaney* "specifically rejected the 'shocks the conscience' test . . . as a basis for imposing § 1983 liability in the affirmative duty context[.]" *Pinder*, 54 F.3d at 1179.  In several cases addressing substantive due process claims arising from

---

[2] The state-created danger doctrine technically is not an exception to *DeShaney's* rule.  *Doe v. Rosa*, 795 F.3d 429, 438 n.6 (4th Cir. 2015).  The theory asserts that the state directly caused harm, not merely that it failed to protect against harm caused by a third party.

injuries caused by third parties, the Fourth Circuit has discussed one or both of the *DeShaney* exceptions without so much as intimating that arbitrary or conscience-shocking conduct alone could provide an alternative basis for liability in such cases. *See, e.g.*, *Callahan*, 18 F.4th 142; *Turner v. Thomas*, 930 F.3d 640 (4th Cir. 2019); *Graves*, 930 F.3d 307; *Fletcher v. Md. Transit Auth.*, 741 F. App'x 146 (4th Cir. 2018) (unpublished); *Doe*, 795 F.3d 429; *Robinson v. Lioi*, 536 F. App'x 340 (4th Cir. 2013) (unpublished); *Pinder*, 54 F.3d 1169. When the court has referred to the shocks-the-conscience standard in third-party harm cases, it has done so within its analysis of the state-created danger doctrine. *See Callahan*, 18 F.4th at 149 n.5 (noting a substantive due process claim must be supported by arbitrary or conscience-shocking conduct but declining to address that issue because "the absence of sufficient allegations that support [the plaintiff's] state created danger theory is fatal to the complaint"). The court in *Callahan* described the requirement that state officials' conduct be arbitrary or conscience-shocking as "another limit" on the state-created danger claim asserted by the plaintiffs in that case, not a separate path around *DeShaney*'s rule. *Id.*[3]

---

[3] Other circuits have incorporated the conscience-shocking standard into the elements of a state-created danger claim. *See, e.g.*, *Doe v. Jackson Local Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 932–33 (6th Cir. 2020); *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015); *Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006); *Smith v. Guilford Bd. of Educ.*, 226 F. App'x 58, 62 (2d Cir. 2007) (unpublished). That approach seems consistent with the Fourth Circuit's statement in *Callahan*. The Eleventh Circuit has taken a different approach and held that the "state-created danger exception has since been replaced by the [arbitrary or conscience-shocking] standard . . . ." *K.W. v. Lee Cnty. Sch. Bd.*, 67 F. Supp. 3d 1330, 1336 (M.D. Fla. 2014) (citing *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003)). For this reason, the parties' discussion of *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323 (11th Cir. 2020), is inapt. In that case, the Eleventh Circuit held that school officials' conduct during a mass shooting did not violate the plaintiffs' substantive due process rights. *Id.* at 1331. The court's analysis focused on whether there was a custodial relationship and whether school officials' affirmative conduct was arbitrary or conscience-shocking. *Id.* at 1329–31. In this circuit, the *Hernandez* plaintiffs' claim would have been analyzed under the state-created danger doctrine.

The Fourth Circuit's approach seems in line with the approach of the Fifth Circuit, which has explained why the conscience-shocking standard should not be read as a separate exception to *DeShaney*. In *Doe ex rel. Magee v. Covington County School District*, the plaintiffs alleged that school officials allowed an unauthorized person to leave with a nine-year-old student whom the individual later assaulted. 675 F.3d 849, 867 (5th Cir. 2012). The Fifth Circuit rejected the plaintiffs' contention that they had "alleged a constitutional violation because the school's conduct shocks the conscience." *Id.* The court stated:

> [W]e must be careful not to read the [] shocks the conscience standard as a separate exception to the *DeShaney* principle. The actual harm inflicted upon [the plaintiffs] in this case was caused by [a] private actor [], and after *DeShaney*, the state cannot be held constitutionally liable for its 'failure to protect an individual against private violence,' save for the special relationship theory and, in some circuits, the state-created danger theory. To allow the [plaintiffs] to proceed on a shocks the conscience theory without first demonstrating a constitutional duty to protect would be wholly inconsistent with *DeShaney*. In fact, the *DeShaney* Court itself rejected a similar argument.

*Id.* at 868–69.

Here, as in *Magee*, the plaintiffs have not alleged the defendants had a constitutional duty to protect Jaelynn from harm due to a special relationship. The Court previously dismissed that substantive due process theory with prejudice. And, as discussed above, the plaintiffs have not plausibly alleged the defendants' affirmative conduct created a danger that caused Jaelynn's death. So, under *DeShaney*, the defendants' alleged failure to protect Jaelynn from Rollins is not a violation of the Due Process Clause.

To the extent arbitrary or conscience-shocking conduct may give rise to a substantive due process claim for injuries inflicted on a student by another student when there is no special relationship or official conduct that directly caused the injury, such a right was not clearly

established at the time of the shooting, and the defendants would be entitled to qualified immunity. *See Burns-Fisher*, 57 F.4th at 426.

The plaintiffs' § 1983 claim based on arbitrary or conscience-shocking behavior is futile. The motion for leave to amend to add Count III is denied.

### 3.   Failure to Train

In Count V, the plaintiffs assert a § 1983 claim against the County and Gaskill in his official capacity based on a failure to train employees.[4]   The County argues that amendment to add this claim is futile because the plaintiffs make only boilerplate and conclusory allegations and do not allege a pattern of violations.

The County, as a unit of local government, is a "person" subject to suit under § 1983. *Monell*, 436 U.S. at 690–91; *see also Randall v. Prince George's Cnty.*, 302 F.3d 188, 210–11 (4th Cir. 2002); *Cain v. Rock*, 67 F. Supp. 2d 544, 548 (D. Md. 1999).   But "[u]nder *Monell*, a municipality's liability 'arises only where the constitutionally offensive actions of employees are taken in furtherance of some municipal 'policy or custom.'"   *Walker*, 575 F.3d at 431 (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984)).   Liability attaches "only where the municipality *itself* causes the constitutional violation at issue."   *City of Canton v. Harris*,

---

[4] The plaintiffs allege Gaskill was an employee of the Board and/or the County.   ECF 40-2, ¶¶ 22, 27.   If Gaskill was an employee of the Board, he may not be sued in his official capacity.   A local board of education is a state agency under Maryland law.   *See N.T. v. Baltimore City Bd. of School Comm'rs*, No. JKB-11-356, 2012 WL 3028371, at *2 (D. Md. 2012) (citing cases).   The state and state employees sued in their official capacities "are not susceptible to suit under 42 U.S.C. § 1983 because they are not 'persons' within that statute's meaning."   *Id.* (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).   Alternatively, if Gaskill is a County employee, the County, not Gaskill, is the proper defendant for a § 1983 claim.   *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (noting official capacity claims "represent only another way of pleading an action against an entity of which an officer is an agent").   Thus, the claim against Gaskill in Count V is duplicative of the same claim against the County.   *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 307 n.13 (4th Cir. 2006).

489 U.S. 378, 385 (1989).  In other words, "municipal liability under § 1983 may not be predicated solely upon a respondeat superior theory."  *Milligan*, 743 F.2d at 229.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To plead a failure-to-train *Monell* claim, the plaintiffs must plausibly allege that "(1) the nature of the training was insufficient in some particularized manner; (2) the insufficiency of the training was a deliberate or conscious choice; and (3) a causal relationship existed between the failure-to-train and the injuries suffered."  *Palma v. Montgomery Cnty.*, 598 F. Supp. 3d 288, 298 (D. Md. 2022) (citing *Washington v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 533 (D. Md. 2020)).  The first element requires the identification of "a specific deficiency" in the training "rather than a general laxness or ineffectiveness in training."  *Id.* (quoting *Washington*, 457 F. Supp. 3d at 533).  To satisfy the second element, the "failure to train must 'amount[] to deliberate indifference to the rights of persons with whom the [employees] come into contact.'"  *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 671–72 (4th Cir. 2020); *see Connick*, 563 U.S. at 61.   "[A] pattern of violations is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  *Connick*, 563 U.S. at 68–69 (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).   "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  *Id.* at 62.

In their proposed third amended complaint, the plaintiffs make general allegations, based upon information and belief, that the County failed to train its employees.  *See, e.g.*, ECF 40-1, ¶ 117 ("[U]pon information and belief, Defendant County exercised a complete failure to train its agents/servants and/or in any capacity protect victims. . . ."); ¶ 226 ("Defendants, through their

policymaker and decision-makers, enacted policies, both in the form of actual policy, and in the form of woefully inadequate training, that demonstrated deliberate indifference . . . ."); ¶ 254 ("At all times relevant hereto, Defendants, individually and jointly, had duties to train, but failed to properly or sufficiently train their officers . . . ."); ¶ 256 ("Defendant County failed to train officers, including Defendant Gaskill, despite the plainly obvious need for training . . . ."); ¶ 257 ("Defendant St. Mary's County failed to adequately train, supervise, and discipline County officers . . . ."); ¶ 267 ("Upon information and belief, Defendant County failed to adequately train and supervise its officers on domestic and dating violence, which manifested deliberate indifference to the rights of citizens."). But they do not allege that the County had notice of specific deficiencies in its training program that caused its employees to violate the plaintiffs' constitutional rights. Nor do they allege facts supporting a reasonable inference that, despite this knowledge, the County chose to retain the defective training system. While they allege in vague terms that the training deficiencies have led to "a string of violent assaults against students" and "violent acts against women[,]" they give no specifics about any similar violent incidents at the school or explain how the training deficiencies caused the violence in those instances. *Id.* ¶¶ 262–63. These missing allegations are fatal to the failure-to-train claim. *See Brent v. City of Cumberland Police Dep't*, No. JKB-22-1349, 2023 WL 2457591, at *10 (D. Md. Mar. 10, 2023) ("It is not enough to allege the instance at hand and infer that it is part of a broader practice."); *McDonnell*, 2012 WL 1378636 at *4 (holding "a total of three incidents of alleged police brutality over a period of two and half years" insufficient to support a failure-to-train claim). The plaintiffs do not adequately state a *Monell* claim against the County based on a failure to train.

The motion for leave to amend to add Count V is denied on futility grounds.

### 4.   Equal Protection

In Count XII, the plaintiffs bring an equal protection claim against the County, Smith, Wyant, Heibel, and Gaskill.  The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  It is concerned with disparate treatment "through the enactment, administration, or enforcement" of laws and regulations.  *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 818 (4th Cir. 1995).  It "is essentially a direction that all persons similarly situated should be treated alike" by the government.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).  However, the Equal Protection Clause "prohibits only intentional discrimination; it does not have a disparate-impact component."  *Ricci v. DeStefano*, 557 U.S. 557, 627 (2009) (Ginsburg, J., dissenting) (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976)).  "To succeed on an equal protection claim, a plaintiff must . . . demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination."  *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see also Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011).  "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny."  *Morrison*, 239 F.3d at 654.  Courts apply different levels of scrutiny depending on the type of classification.  *See id.* at 654–55.

The Equal Protection Clause protects a student's "right to be free from sexual harassment in an educational setting."  *Jennings v. Univ. of N.C.*, 482 F.3d 686, 701 (4th Cir. 2007).  In *Feminist Majority Foundation v. Hurley*, the Fourth Circuit noted that an equal protection claim may arise from a school official's "deliberate indifference to known student-on-student sexual harassment."  911 F.3d 674, 702 (4th Cir. 2018).  The court held that to state such a claim, a

plaintiff must allege (1) she "was subjected to discriminatory peer harassment"; (2) the school administrator "responded to the discriminatory peer harassment with deliberate indifference, i.e. in a manner clearly unreasonable in light of known circumstances"; and (3) "the school administrator's deliberate indifference was motivated by discriminatory intent." *Id.* at 702–03 (citations omitted). Discriminatory intent "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Sylvia Dev. Corp.*, 48 F.3d at 819 n.2 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

The plaintiffs allege that Smith, Wyant, Heibel, and Gaskill were aware Jaelynn was being harassed and subjected to sex-based discrimination, were in a supervisory position to take action to stop it, and deliberately took none. ECF 40-1, ¶¶ 376–400. As for discriminatory intent, they allege only their conclusions that the individual defendants' "decision making and failures were motivated by discriminatory intent" and harmful gender stereotypes. ECF 40-1, ¶ 391; *see id.* ¶¶ 88, 118–20, 254–56, 278. For example, they allege, upon information and belief and without supporting facts, that the defendants dismissed Rollins' harassment of Jaelynn because they believed Jaelynn, "like most female high school students, . . . was unreasonable, hysterical, hypersensitive, paranoid, overreacting to the situation, and not being truthful." *Id.* ¶ 119. But those generic allegations do not give rise to a reasonable inference that the defendants acted with discriminatory animus towards Jaelynn. The plaintiffs also allege statistics about the prevalence of teen dating violence, but they do not explain how these statistics support an inference of the defendants' discriminatory intent. *See id.* ¶¶ 30–44. These conclusory intent allegations do not

satisfy Rule 8's pleading standard.   The proposed § 1983 claim based on an equal protection violation is futile.[5]

Even if the plaintiffs had plausibly alleged an equal protection violation based on the individual defendants' deliberate indifference, qualified immunity would bar the claim.   In *Feminist Majority*, the Fourth Circuit considered whether the university president was entitled to qualified immunity against an equal protection claim arising from his alleged deliberate indifference to student-on-student sexual harassment.   911 F.3d at 674.   The court concluded that the right was not clearly established in 2015 and 2016, when the alleged conduct occurred.   *Id.* at 704–06.   It reasoned that while controlling authority at the time recognized a general right to be free from student-on-student sexual harassment at an educational institution, those cases did not clearly establish the equal protection right to be free from a university administrator's deliberate indifference to student-on-student sexual harassment.   *Id.* at 704–05.   And there was no robust consensus of persuasive authority clearly establishing such a right.   *Id.* at 705–06.   Although the court was focused on the 2015-to-2016 time frame, it did not identify any cases decided between then and December 2018, when it issued its decision, that clearly established the equal protection right to be free from a school administrator's deliberate indifference to student-on-student sexual harassment.   For their part, the plaintiffs do not identify any such precedent predating the alleged

---

[5] The plaintiffs cite several out-of-circuit employment discrimination cases discussing a "stereotyping" theory of gender discrimination.   *See Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 346–47 (7th Cir. 2017); *Medina v. Income Supp. Div., N.M.*, 413 F.3d 1131, 1134–35 (10th Cir. 2005); *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 119 (2d Cir. 2004).   None is remotely analogous.   In any event, a comparison to *Back* illustrates the deficiency in the plaintiffs' allegations.   In that case, the plaintiff offered evidence that her employer made comments about the plaintiff's childcare responsibilities and the inability of mothers to work hard enough to do the job.   365 F.3d at 115.   Here, in contrast, the plaintiffs provide only conclusory intent allegations.

misconduct in late 2017 and early 2018, and the Court has found none.  Thus, the individual defendants would be entitled to qualified immunity on Count XII, and the claim against them is futile for that additional reason.

The equal protection claim against the County fares no better.  "A plaintiff stating a [failure to prevent harassment] claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice."  *Feminist Majority*, 911 F.3d at 700–01 (quoting *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257–58 (2009)).  The requisite policy or custom can be shown

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).  It "can be inferred from a municipality's omissions as well as from its acts."  *Wellington v. Daniels*, 717 F.2d 932, 935–36 (4th Cir. 1983).  However, "omissions are actionable only if they constitute 'tacit authorization' of or 'deliberate indifference' to constitutional injuries."  *Id.* at 936.  "[A] municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees."  *Milligan*, 743 F.2d at 230.

The plaintiffs do not allege that Rollins' harassment of Jaelynn was the result of a municipal practice, policy, or custom of permitting student-on-student harassment.  Specific allegations against the County on this claim are virtually non-existent.  The few allegations against the County that are in the proposed complaint are conclusory and do not explain how any municipal policy or custom caused the harassment.  *See* ECF 401, ¶ 88 (alleging the defendants "treated women differently . . . fail[ed] to believe women who report . . . harassment . . . [and] fail[ed] to

implement appropriate policies and procedures intended to manage issues relating to . . .

harassment" and that the County "had an official custom or policy of same").  Any *Monell* claim

against the County that Rollins' harassment of Jaelynn was the result of a County custom or

practice would not survive a motion to dismiss.

The motion for leave to amend is denied as to Count XII on futility grounds.

## B.  Supplemental Jurisdiction over State Law Claims

Now that summary judgment has been entered in the Board's favor on the Title IX claim

and the Court has denied leave to amend the other federal claims, there are no pending federal

claims.  The only pending claims are the state law claims of negligence, premises liability,

wrongful death, and survival action against the Board and the County that survived the motion to

dismiss.  A federal court's supplemental jurisdiction is not extinguished as a matter of course when

all pending federal claims are dismissed.  *See* 28 U.S.C. § 1367; *Shanaghan v. Cahill*, 58 F.3d 106,

109 (4th Cir. 1995).  A court may, however, "decline to exercise supplemental jurisdiction over a

claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

1367(c)(3); *see ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012); *Carnegie-*

*Mellon Univ. v. Cohill*, 484 U.S. 343, 353–57 (1988).  Courts consider "the values of judicial

economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction

over . . . pendent state-law claims." *Carnegie-Mellon*, 484 U.S. at 350; *see also Hinson v. Norwest*

*Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (noting courts should consider the *Carnegie-*

*Mellon* factors although the case preceded the adoption of 28 U.S.C. § 1367(c)).  "[I]n the usual

case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point

toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*,

484 U.S. at 350 n.7.

This Court routinely declines to exercise jurisdiction over state law claims if all federal claims have been dismissed.  *See, e.g.*, *Conkel v. Family & Children's Servs.*, No. JKB-13-331, 2013 WL 2105854, at *1 (D. Md. May 13, 2013); *NRT Mid-Atl., LLC v. D'Ambrosia*, No. DKC-08-166, 2008 WL 11367473, at *1 (D. Md. Dec. 22, 2008).  There is no reason to depart from that approach here.  All federal claims have been eliminated before trial, and only limited discovery has taken place.  The remaining claims raise only questions of state law, and "[n]eedless decisions of state law [by federal courts] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  *Medina v. L & M Constr., Inc.*, RWT-14-0329, 2014 WL 1658874, at *2  (D. Md. Apr. 23, 2014) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)) (alteration in *Medina*).  Principles of judicial economy, efficiency, and comity support dismissal.  Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

As for the state law claims against the individual defendants in the proposed third amended complaint, the Court denies leave to amend.  Even if those claims are not futile and could survive a motion to dismiss—a ruling the Court need not make here—the Court would decline to exercise supplemental jurisdiction over the state law claims against the individual defendants for the same reasons it declined to do so over the same state law claims against the Board and the County.  The plaintiffs may, of course, pursue their state law claims in state court.

## IV.    Conclusion

The plaintiffs' motion for leave to amend is denied.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims.  A separate order follows.

Date:  June 5, 2023       _____

_____
Deborah L. Boardman
United States District Judge